# EXHIBIT A

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

BRIAN GALLAGHER, )
)
)
Plaintiff, )
vs. ) No.: 17 CH 03707
)
THOMAS J. DART, SHERIFF OF COOK )
COUNTY ILLINOIS; THE COOK COUNTY )
MERIT BOARD; JAMES P. NALLY, )
CHAIRMAN; VINCENT T. WINTERS, )
BOARDMEMBER; PATRICK BRADY, )
BOARDMEMBER; BRAY MATEO-HARRIS, )
KIM R. WIDUP, BOARDMEMBER; BRYON )
T. BRAZTER, BOARDMEMBER; JENNIFER )
E. BAE, BOARDMEMBER and JOHN J. )
DALICANDRO, BOARDMEMBER, )
Defendant. )

## NOTICE OF FILING

To:   John E. Murray
      State's Attorney of Cook County
      Labor & Employment Section
      50 W. Washington St. S-500
      Chicago, IL 60602
      *Sent via email to*

PLEASE TAKE NOTICE that we have this 9th day of October, 2017, filed with the clerk of the Circuit Court, certain Plaintiff's Amended Complaint at Law, in accordance with the Rules and Provisions of the Supreme Court.

By: _____

STEPHEN C. DEBBOLI
One of the Attorneys for the Plaintiff
218 N. Jefferson Str/Suite 101
Chicago, IL. 60661
Phone No.: 312-207-0000
Attorney No.: 25009

## CERTIFICATE OF SERVICE

The undersigned, being first duly sworn on oath, deposes and says that she served a copy of the above and foregoing notice, together with a copy of the aforementioned documents, therein referred to, upon the above-named attorney(s) via email transmission to: john.murray@cookcountyil.gov and by placing a copy of the same in a duly addressed and stamped envelope addressed to the said attorney(s) and depositing same in the U.S. mail chute located at 218 N. Jefferson Street/Suite 101, Chicago, Illinois 60661, on _____, 2017

**EXHIBIT**

**A**

## IN THE CIRCIUT COURT OF COOK COUNTY, ILLINOIS COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| BRIAN GALLAGHER,<br><br>             Plaintiff,<br><br>   vs.<br><br>THOMAS J. DART, SHERIFF OF COOK<br>COUNTY ILLINOIS; THE COOK<br>COUNTY MERIT BOARD; JAMES P.<br>NALLY, CHAIRMAN; VINCENT T.<br>WINTERS, BOARDMEMBER; PATRICK<br>BRADY, BOARDMEMBER; BRAY<br>MATEO-HARRIS, BOARDMEMBER;<br>KIM R. WIDUP, BOARDMEMBER;<br>BRYON T. BRAZTER,<br>BOARDMEMBER; JENNIFER E. BAE,<br>BOARDMEMBER and JOHN J.<br>DALICANDRO, BOARDMEMBER,<br><br>             Defendant. | No.: 17 CH 03707 |

## AMENDED COMPLAINT

NOW COMES the Plaintiff, Brian Gallagher, by and through his attorney, Stephen C.

Debboli, and pursuant to the Administrative Review Act, 735 ILCS 5/3-101, et seq, complaining

of the Defendants, THOMAS J. DART, THE COOK COUNTY MERIT BOARD, JAMES P.

NALLY, VINCENT T. WINTERS, PATRICK BRADY, BRAY MATEO-HARRIS, KIM R.

WIDUP, BYRON T. BRAZTER, JENNIFER E. BAE and JOHN J. DALICANDRO, alleges and

says as follows:

### COUNT I
### PETITION FOR ADMINISTRATIVE REVIEW

1.     Brian Gallagher was appointed a Cook County Court Services Deputy Sheriff on

April 19, 1995.

1

2.      Since 2005, Brian Gallagher has been assigned to the George N. Leighton
Criminal Court Building located at 2650 S. California Avenue, Chicago, IL 60608.

3.      In 2003, Brian Gallagher underwent gastric bypass surgery which resulted in
continuing medical problems necessitating his taking time off of work.

4.      In 2003, Brian Gallagher applied for and was granted leave under the Family
Medical Leave Act (29 U.S.C. Section 2601 *et seq.*).

5.      Brian Gallagher has applied for and been granted status under the Family Medical
Leave Act every year since 2003 up until his suspension in March of 2016.

6.      In 2014, Brian Gallagher underwent a full left adrenalectomy which left him with
additional continuing medical problems necessitating his taking time off of work.

7.      The Sheriff, Thomas J. Dart filed a complaint with the Cook County Sheriff's
Merit Board seeking termination of Brian Gallagher for alleged violations of the Rules and
Regulations and the General Orders of the Cook County Sheriff's Department.

8.      The Complaint alleged that Brian Gallagher had unauthorized absences from
schedule shift from August 31, 2012 through October 30, 2014.

9.      Brian Gallagher was suspended without pay from the Sheriff's office pending
resolution of a Complaint filed with the Sheriff's Merit Board. Allegedly arising out of an
incident that occurred on February 9, 2015 wherein he allegedly observed another deputy Sheriff
use excessive force on a detainer and failed to inference and/or report the incident.

10.     Brian Gallagher contested the allegations in the Complaints.

11.     An Evidentiary Hearing on this matter was held on September 20, 2016 wherein
Brian Gallagher testified that he had applied and been granted FMLA Status since 2003 and that
he had used FMLA days for the alleged unauthorized absences in accordance with the policies
and procedures of the Sheriff's office and the FMLA.

2.

12. On February 7, 2017 the Cook County Sheriff's Merit Board issued its ruling and order that Brian Gallagher be separated from his employment effective October 16, 2015. A copy is attached hereto as Exhibit "A".

13. The findings of the Merit Board lack a sufficient factual basis for the imposition of the sanction of termination and was against the manifest weight of the evidence and the imposition of the sanction of termination is arbitrary and not reasonable in light of all the evidence.

WHEREFORE, the Petitioner, Brian Gallagher, respectfully requests that this Honorable Court order the Merit Board to vacate its Order of February 7, 2017 and reinstate Brian Gallagher as an employee of the Cook County Sheriff's Department; to order the Sheriff's Office to pay Brian Gallagher for his lost wages while in suspension and for costs of this suit and for such other relief as this Court deems just and equitable.

## COUNT II
## AMERICANS WITH DISABILITIES ACT

1. - 13 The Plaintiff repeats, reasserts and realleges Paragraphs 1 through 13 as and for Paragraphs 1 through 13 of this Count.

14. There was in full force and effect at all times relevant hereto a Federal Statute entitled The Americans with Disabilities Act of 1990 (hereinafter ADA) which prohibits employment discrimination against qualified individuals with disability with respect to hiring, compensation, promotion, termination, and other terms and conditions of employment. (42 U.S. C. Section 12101, et sec.).

15. That statute was applicable to the Plaintiff's employment with the Sheriff of Cook County.

3

16.     Brian Gallagher had a "disability" as defined in the Act in that he had a physical or mental impairment that substantially limits one or more of the major life activities; has a record of such impairment; and/or is regarding as having such an impairment. (42 U.S.C. Section 12111 et sec; 42 U.S.C. Section 12102(2)).

17.     Pursuant to 42 U.S.C. Section 12203(a), is unlawful for an employer to "discriminate against any individual because such individual has opposed any act or practice made unlawful by this Chapter or because such individual may be charged… under this Chapter".

18.     At all times relevant hereto, the Plaintiff was qualified for the position he performed, and performed his duties and responsibilities in a satisfactory manner with or without a reasonable accommodation.

19.     The Defendant, Thomas Dart, Sheriff of Cook County, has discriminated against Plaintiff with respect to the terms and conditions of his employment and was terminated on February 7, 2017.

20.     In conjunction with his disability, Plaintiff applied for and was granted Family Medical Leave pursuant to the provisions of the Family Medical Leave Act (29 U.S.C. Section 2601 et sec) in 2003 and every year thereafter until his suspension in March of 2016.

21.     That Plaintiff, Brian Gallagher had been employed as a Cook County Court Services Deputy Sheriff for over 20 years and had never been subjected to any significant disciplinary action prior to the complaints filed against him as alleged herein.

22.     On or about October 14, 2015 the Sheriff's Office of Cook County Office of Professional Review filed a Complaint against Brian Gallagher alleging that on October 13, 2015 he was charged with inattention to duty in allowing   detainee to escape, seeking termination (MB 1887).

4

23. On or about August 7, 2016 a Complaint was filed in the Cook County Sheriff's Merit Board alleging that Brian Gallagher violated certain Sheriff's orders in failing to report an incident of alleged actual excessive force that occurred on February 9, 2015 wherein the Sheriff sought termination of the Plaintiff, (MB 1917). That matter went to hearing on September 8, 2016 and October 6, 2016. No decision has been rendered.

24. On or about October 16, 2015 a complaint was filed by the Offices of Professional Standards alleging that the Plaintiff had taken unauthorized absences (MB 1841). That matter went to a Evidentiary Hearing before the Sheriff's Merit Board on September 20, 2016 whereupon the Merit Board terminated the Plaintiff's employment with the Cook County Sheriff's office. This termination gave rise to the filing of this Complaint and the allegations in Count I thereof.

25. On or about December 28, 2015 the Office of Professional Standards filed a complaint against the Plaintiff, Brian Gallagher alleging that he violated certain rules and order of the Sheriff's department with regard to secondary employment, again seeking termination (OPR 2015-332). This matter went to a Laudermill hearing on December 1, 2016. No decision has yet been rendered.

26. That the facts of each and every complaint filed against the Plaintiff do not warrant any discipline, especially termination.

27. These complaint were brought for the purposes of intimidating, harassing and terminating the Plaintiff because of the absences he took : a result of his physical disabilities and in violation of the Americans with Disabilities Act.

WHEREFORE the Plaintiff, Brian Gallagher, requests that this Honorable Court enter judgment in his favor and against the Defendant, Thomas Dart for all remedies and damages

available pursuant to:

    a.      A determination that the ADA has been violated by the Defendant;

    b.      Issuance of an injunction requiring Defendant to cease all legal contact violative of the ADA;

    c.      Award of actual damages for injury and loss suffered including wages, salary, employment benefits and any and all other compensation lost as result of the violations of ADA by the Defendant;

    d.      An award of Compensatory Damages for injury and loss suffered by the Plaintiff, including physical and emotional damages suffered by the Plaintiff as a result of the Defendants' wrongful conduct;

    e.      An award of other remedies available under the ADA to make the Complainant whole;

    f.      Interest on the amounts described above calculated at the statutory rates;

    g.      Such equitable relief as made appropriate including employment and promotion;

    h.      Reinstatement; and

    i.      An award of reasonable Attorneys' Fees, reasonable expert witness fees and other costs of the action incurred by Plaintiff.

<div align="center">

**COUNT III**
**FAMILY MEDICAL LEAVE ACT**

</div>

1.-13.  Plaintiff repeats, reasserts and realleges the allegations contained in Paragraphs 1-13 as and for Paragraphs 1-13 of this Count.

14.    There was in full force and effect at all times relevant hereto a federal statute entitled Family and Medical Leave Act (FMLA), which provides that employees must be provided with up to 12 weeks of unpaid leave for the birth or adoption of a child, to care for immediate family member (spouse, child, or parent) with serious health conditions, or to take

medical leave when the employee is unable to work because of a serious health condition. (29 U.S.C.A. §2601, *et seq*).

15. That statute was applicable to the Plaintiff's employment with the Sheriff of Cook County.

16. Brian Gallagher had a reoccurring serious health condition which results in his inability to work.

17. Pursuant to the Family and Medical Leave Act, it is "unlawful for any employer to interfere with, restrain, or deny the exercise of, or the attempt to exercise any right provided under this subchapter" and it is "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter" 29 U.S.C. §2615(a).

18. At all times relevant hereto, the Plaintiff was qualified for the position he performed, and performed his duties and responsibilities in a satisfactory manner with or without a reasonable accommodation.

19. The Defendant, Thomas Dart, Sheriff of Cook County, has discriminated against Plaintiff with respect to the terms and conditions of his employment and was improperly terminated on February 7, 2017.

20. In conjunction with his disability, Plaintiff applied for and was granted Family Medical Leave pursuant to the provisions of the Family Medical Leave Act (29 U.S.C. Section 2601, *et sec*) in 2003 and every year thereafter until his suspension in March of 2016.

21. That Plaintiff, Brian Gallagher had been employed as a Cook County Court Services Deputy Sheriff for over 20 years and had never been subjected to any significant disciplinary action prior to the complaints filed against him as alleged herein.

7

On or about October 14, 2015 the Sheriff's Office of Cook County Office of
Professional Review filed a Complaint against Brian Gallagher alleging that on October 13, 2015
he was charged with inattention to duty in allowing a detainee to escape, seeking termination
(MB 1887).

23. On or about August 7, 2016 a Complaint was filed in the Cook County Sheriff's
Merit Board alleging that Brian Gallagher violated certain Sheriff's orders in failing to report an
incident of alleged actual excessive force that occurred on February 9, 2015 wherein the Sheriff
sought termination of the Plaintiff, (MB 1917). That matter went to hearing on September 8,
2016 and October 6, 2016. No decision has been rendered.

24. On or about October 16, 2015 a complaint was filed by the Offices of
Professional Standards alleging that the Plaintiff had taken unauthorized absences (MB 1841).
That matter went to an Evidentiary Hearing before the Sheriff's Merit Board on September 20,
2016 whereupon the Merit Board terminated the Plaintiff's employment with the Cook County
Sheriff's office. This termination gave rise to the filing of this Complaint and the allegations in
Count I thereof.

25. On or about December 28, 2015 the Office of Professional Standards filed a
complaint against the Plaintiff, Brian Gallagher alleging that he violated certain rules and order
of the Sheriff's department with regard to secondary employment, again seeking termination
(OPR 2015-332). This matter went to a Laudermill hearing on December 1, 2016. No decision
has yet been rendered.

26. That the facts of each and every complaint filed against the Plaintiff do not
warrant any discipline, especially termination.

27. These complaints were brought for the purposes of intimidating, harassing and
terminating the Plaintiff because of the absences he took    a result of his serious medical

condition and in violation of the Family and Medical Leave Act.

WHEREFORE the Plaintiff, Brian Gallagher, requests that this Honorable Court enter judgment in his favor and against the Defendant, Thomas Dart for all remedies and damages available pursuant to:

a.   A determination that the FMLA has been violated by the Defendant;

b.   Issuance of an injunction requiring Defendant to cease all legal contact violative of the FMLA;

c.   Award of actual damages for injury and loss suffered including wages, salary, employment benefits and any and all other compensation lost as result of the violations of FMLA by the Defendant;

d.   An award of Compensatory Damages for injury and loss suffered by the Plaintiff, including physical and emotional damages suffered by the Plaintiff as a result of the Defendants' wrongful conduct;

e.   An award of other remedies available pursuant to 29 U.S.C.A. §2601 *et seq* to make the Complainant whole;

f.   Interest on the amounts described above calculated at the statutory rates; Such equitable relief as made appropriate including employment and promotion;

h.   Reinstatement; and

i.   An award of reasonable Attorneys' Fees, reasonable expert witness fees and other costs of the action incurred by Plaintiff.

## COUNT IV
## COBRA VIOLATION

1      Brian Gallagher was appointed a Cook County Court          Deputy Sheriff on April 19, 1995.

2. Since 2005, Brian Gallagher has been assigned to the George N. Leighton Criminal Court Building located at 2650 S. California Avenue, Chicago, IL 60608.

3. The Sheriff, Thomas J. Dart filed a complaint with the Cook County Sheriff's Merit Board seeking termination of Brian Gallagher for alleged violations of the Rules and Regulations and the General Orders of the Cook County Sheriff's Department.

4. The Complaint alleged that Brian Gallagher had unauthorized absences from schedule shift from August 31, 2012 through October 30, 2014.

5. An Evidentiary Hearing on this matter was held on September 20, 2016 wherein Brian Gallagher testified that he had applied and been granted FMLA Status since 2003 and that he had used FMLA days for the alleged unauthorized absences in accordance with the policies and procedures of the Sheriff's office and the FMLA.

6. On February 7, 2017 the Cook County Sheriff's Merit Board issued its ruling and order that Brian Gallagher be separated from his employment effective October 16, 2015. A copy is attached hereto as Exhibit "A".

7. There was in full force and effect, at all times relevant hereto, a federal statute commonly known as Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA) 29 U.S.C. §1161 *et seq.* which requires employers who provide a group health insurance plan to offer employees who lose coverage because of termination of employment the option to continue their health insurance coverage for up to 18 months and to notify such terminated employee of the option to continue coverage.

8. The Defendant, Thomas Dart, Sheriff of Cook County, failed to properly advise the Plaintiff of his COBRA option in violation of the statute.

9. As a result of Defendant, Thomas Dart's failure to comply with the provisions of COBRA, the Plaintiff was denied the option of continuing his medical insurance coverage.

10

10.     The Plaintiff has continuing serious medical conditions which require continuous and expensive medical treatment.

WHEREFORE, the Plaintiff, Brian Gallagher, asks this Honorable Court to enter Judgment against the Defendant, Thomas Dart for:

A.      The amount of the Plaintiff's medical treatment since the termination of his insurance coverage for a period of 18 months after his termination on February 7, 2017;

B       The cost of the medical insurance coverage obtained by the Plaintiff as a result of the Defendant, Thomas Dart's, failure to provide the option of continued medical insurance coverage pursuant to COBRA;

C.      To pay the Plaintiff, Brian Gallagher the sum of $100.00 per day and attorneys' fees and costs in connection with this matter pursuant to 29 U.S.C. §1132(c)(1); and

D.      For such other and further relief as this Court deems appropriate.

Respectfully submitted,

Brian Gallagher


By: _____
One of his attorneys


Stephen C. Debboli
218 N. Jefferson Street  S-101
Chicago, IL 60661
Attorney No.  25009
(312) 207-0000

11

## COOK COUNTY SHERIFF'S MERIT BOARD

| | |
|---|---|
| **Sheriff of Cook County** | ) |
| | ) |
| vs. | ) **Docket # 1841** |
| | ) |
| **Brian Gallagher** | ) |
| **Deputy Sheriff** | ) |

## DECISION

THIS MATTER COMING ON to be heard before Merit Board Member John J. Dalicandro pursuant to notice, the Cook County Sheriff's Merit Board finds as follows

**Jurisdiction**

The Respondent, Brian Gallagher, hereinafter "Respondent". Respondent's position as a Cook County Deputy Sheriff involves duties and responsibilities to the public; and

Each member of the Cook County Sheriff's Merit Board, hereinafter "Board," has

been duly appointed to serve as a member of the Board pursuant to confirmation by the Cook County Board of Commissioners, State of Illinois, to sit for a stated term; and

The Board has jurisdiction of the subject matter of the parties in accordance with Chapter 55 of the Illinois Compiled Statutes; and

The Respondent was personally served with a copy of the Complaint and Notice of Hearing and did appear before the Board to contest the charges contained in the complaint; and

The Board has heard the evidence presented by the Sheriff and the Respondent, and evaluated the credibility of the witnesses and supporting evidence. After considering the evidence, the Board finds as follows:

**Background**

By complaint dated October 16, 2015. Sheriff Thomas J. Dart, sought the termination of Brian Gallagher. the Respondent. The Sheriff is seeking termination from the Cook County Sheriff's Office for the alleged violations of the Rules and Regulations of the General Orders of the Cook County Sheriff's Department.

In support, thereof, the Sheriff states as follows:

1. That on April 19, 1995, the Respondent was appointed a Deputy Sheriff.
2. That as of 2005, Respondent was assigned to the George N. Leighton Criminal Court Building, located at 2650 South California Avenue, Chicago, Illinois 60608.
3. That Respondent was absent from scheduled work shifts and the absences were unauthorized for at least six (6) occurrences between August 31, 2012 and October 30, 2014, in violation of Sheriff's Order 11.4.1.1 as set forth below:
    a. That Respondent's first occurrence of unauthorized absences occurred on August 31, 2012, consisting of eight (8) hours of No Vacation Time ("NVT").
    b. That Respondent's second occurrence of unauthorized absences occurred on September 10, 2012, consisting of eight (8) hours of NVT.



That Respondent's third occurrence of unauthorized absences occurred on January 28, 2013, consisting of eight (8) hours of No Sick Time ("NST").

    d. That Respondent's fourth occurrence of unauthorized absences occurred on June 7, 2013, consisting of two (2) hours of NST.

    e. That Respondent's fifth occurrence of unauthorized absences occurred on August 18, 19, 20 and 21, 2014, consisting of thirty-two (32) hours of NST.

    f. That Respondent's sixth occurrence of unauthorized absences occurred on October 29 and 30, 2014, consisting of sixteen (16) hours of NST.

    g. That Respondent continued to incur unauthorized absences and was absent from scheduled work shifts a total of two (2) additional occurrences, as set forth below:
      a. That Respondent was absent NVT on December 3 and 4, 2014 (16 hours).
      b. That Respondent was absent NST on December 8, 2014 (8 hours).

4. That on September 14, 2012, Respondent attended a counseling session after his first occurrence of unauthorized absences, which occurred on August 31, 2012. At this counseling session, Respondent was counseled on Sheriff's Order 11.4.1.1, Unauthorized Absence Policy, as well as the steps in the levels of progressive discipline and available leave options.

5. That on September 25, 2012, Respondent received an Unauthorized Absence Disciplinary Action Form ("DAF"), SPR12-2130, recommending a written reprimand for the unauthorized absence that occurred on September 10, 2012.

6. That on March 22, 2013, Respondent's grievance #12-U-086 related to SPR12-2130 for the unauthorized absence that occurred on September 10, 2012 was denied after a 3rd Step Grievance hearing.

7. That on February 13, 2013, Respondent received an Unauthorized Absence DAF, SPR13-0350, recommending a 1-day suspension for the unauthorized absence that occurred on January 28, 2013.

8. That on March 22, 2013, Respondent's grievance #13-U-042 related to SPR13-0350 for the unauthorized absence that occurred on January 28, 2013 was denied after a 3rd Step Grievance hearing.

9. That on April 2, 2014, Respondent received an Unauthorized Absence DAF, SPR13-1357, recommending a 3-day suspension for the unauthorized absence that occurred on June 7, 2013.

10. That on May 21, 2014, Respondent's grievance #14-U-049 related to SPR13-1357 for the unauthorized absence that occurred on June 7, 2013 was denied after a 3rd Step Grievance hearing.

11. That on September 10, 2014, Respondent received an Unauthorized Absence DAF, SPR14-2108, recommending a 5-day suspension for the unauthorized absences that occurred on August 18, 19, 20 and 21, 2014.

12. That on January 14, 2015, Respondent's grievance #14-D1-14910-NYLB related to SPR14-2108 for the unauthorized absences that occurred on August 18, 19, 20 and 21, 2014 was denied after a 3rd Step Grievance hearing.

13. That by his actions, Respondent violated the Rules and Regulations and General Orders of the Cook County Sheriff's Court Services Department, specifically:

SHERIFF'S ORDER 11.4.1.1 (effective date July 1, 2012)
UNAUTHORIZED ABSENCE, in its entirety, including but not limited to, the following subparts:

    II.    POLICY

        It is the policy of the Cook County Sheriff's Office (CCSO) to prohibit CCSO employees from incurring Unauthorized Absences. Unauthorized Absences exacerbate absenteeism problems and strain the operations and employees of the CCSO. CCSO

employees receive benefit time and have a variety of leave options available to cover the need for short-term and long-term absences. Therefore, even if an employee is legitimately ill or has some other reasonable excuse for being absent, the employee must obtain an appropriate Authorized Status(es) prior to or immediately after the need for the absence(s).

V.    DEFINITIONS

    C.    Occurrence – For purposes of determining progressive discipline, an Occurrence as used in this Order is either:

        1. An Unauthorized Absence that lasts from one (1) hour to one (1) single work day and where the employee returns to work the next working day; or

        2. An Unauthorized Absence that lasts between two (2) and five (5) consecutive work days.

        For instance, if an employee has one (1) Unauthorized Absence day and returns to work the next work day, then that will be considered one (1) Occurrence; if an employee has five (5) consecutive Unauthorized Absences in a row, that will be considered one (1) Occurrence; if an employee has thirteen (13) consecutive Unauthorized Absences, that will be considered three (3) occurrences.

VII.    DISCIPLINARY PROCEDURES FOR EMPLOYEES WITH UNAUTHORIZED ABSENCE(S)

    A.    Disciplinary procedure for employees without a Rolling Calendar clause in their applicable CBA will be progressive and will be in accordance with the applicable CBA.

GENERAL ORDER 3401.1 (effective date March 15, 2001)
RULES OF CONDUCT, in its entirety, including but not limited to, the following subparts:

V.    RESPONSIBILITY

It is the responsibility of every member of the C.S.D. to conform to the rules of conduct.

U.    Tour of Duty: Attendance, Availability and Reporting

    1.    Members will report for duty at the time and place required or report their inability to do so by notifying their supervisor or the appropriate office one hour prior to the beginning of their tour of duty. No member shall be absent without leave. Absent without leave shall mean either a failure to report for duty or leaving their assigned duty post during a tour of duty without being properly relieved, except when authorized by proper authority. Members shall be punctual in reporting for duty; habitual failure to report promptly shall be deemed neglect of duty. Members will be physically and mentally fit to perform their duties. They will be properly equipped and cognizant of information required for the proper performance of duty so that they may immediately assume their duties. Judicial subpoenas will constitute an order to report for duty under this section.

SHERIFF'S ORDER 11.2.20.0 (effective date January 25, 2013)
RULES OF CONDUCT, in its entirety, including but not limited to, the following subparts:

    VI.    RULES AND REGULATIONS FOR ALL SWORN AND CIVILIAN EMPLOYEES

    A. Compliance with Laws, Ordinances, and Regulations

2. Employees shall comply with lawful rules, Sheriff's Office written directives, verbal orders, SEAM articles, and political prohibitions issued by the proper authorities.

E. Duty functions.

CCSO employees shall:

1. Maintain sufficient competence to properly perform the duties and responsibilities of their positions. Unsatisfactory performance shall not be allowed.

b. Unsatisfactory performance may be demonstrated by:
vi. Absence without leave.

SHERIFF'S ORDER 11.2.20.1 (effective date March 12, 2015)
CONDUCT POLICY, in its entirety, including but not limited to, the following subparts:

IV. COMPLIANCE WITH ALL LAWS, ORDINANCES AND REGULATIONS

Members shall respect and protect the civil and legal rights of all individuals; uphold the constitutions of the United States and the State of Illinois; obey all applicable federal, state and local laws; comply with court decisions and orders of courts having jurisdiction; and comply with lawful rules, written or verbal orders, SEAM articles, policies and procedures issued by the CCSO or by any supervisor.

VI. CONDUCT WHICH MAY RESULT IN DISCIPLINE

The following list of causes for disciplinary action constitutes a portion of the disciplinary standards of the CCSO. This list is not intended to cover every possible type of misconduct and does not preclude the recommendation of disciplinary action for specific action or inaction that is detrimental to efficient service. Conduct which may result in discipline includes but is not limited to the following:

A. Attendance.

b. Unexcused or unauthorized absence or tardiness on scheduled day(s) of work.

Furthermore, the Respondent's actions violated the Rules and Regulations of the County Sheriff's Merit Board, specifically:

COOK COUNTY SHERIFF'S DEPARTMENT MERIT BOARD RULES AND REGULATIONS, in its entirety, including but not limited to, the following subparts:

Article X, Paragraph B

No Police Officer of the Cook County Sheriff's Police Department, Correctional Officer of the Cook County Department of Corrections or any Deputy Sheriff of the Cook County Sheriff's Court Services Department shall:

3. violate any of the general orders, special orders, directives, or rules and regulations of the Cook County Sheriff's Office.

WHEREFORE, THOMAS J. DART, Sheriff of Cook County, maintains that the Respondent, by his conduct, has violated the Rules and Regulations of the Cook County Sheriff's Merit Board, and respectfully requests this Board to hold a hearing on the charges as set forth in the complaint, pursuant to statute, and on proof of said charges, or any part thereof, the Board shall make a finding of guilty and order the Respondent removed from the Cook County Sheriff's Office.

Findings of Fact: Evidentiary hearing on this matter was held on September 20, 2016. Present were Assistant State's Attorneys John Murray, Mark Hara on behalf of the Sheriff and Miriam Santiago, Assistant General Counsel for the Sheriff of Cook County. Daniel Mahoney and Stephen Debboli appeared on behalf of Respondent Brian Gallagher.

Three witnesses testified for the Sheriff, Helen Cohn, John Harrington and Georgia Garcia Respondent Brian Gallagher testified.

Direct Examination Helen Cohn testified, she is employed at the Cook County Sheriff's Department. She is the Director of the Payroll Department. Employees are only allowed to call in for medical as well as FMLA time. They cannot call in for personal or vacation time. Non- medical time must be called in or requested 72 hours in advance based on their CBA.
In her review of Deputy Brian Gallagher's time card.
August 31, 2012, 8 hours of No Vacation Time 0.
September 10, 2012, 8 hours of No Vacation Time 0.
January 28, 2013, 8 hours of No Sick Time 0.
June 7, 2013, 2 hours of No Sick
August 18, 2014, 8 hours of No Sick Time 0.
August 21, 2014, 8 hours of No Sick Time 0.
October 29, 2014, 8 hours of No Sick Time 0.
October 30, 2014, 8 hours of No Sick Time 0.
December 3, 2014, 8 hours of No Vacation Time 0.
December 4, 2014, 8 hours of No Vacation Time 0.
December 8, 2014, 8 hours of No Sick Time 0.

Family Medical Leave Act, FMLA for an employee to qualify for FMLA, they need 1250 hours working hours. If an employee runs out of FMLA time, they can recertify once they work the 1250 hours. None of the dates above reference FMLA. He was granted FMLA September 22, 2012 to September 22, 2013 for intermittent use, five days a month and it must be used in an eight-hour block of time.

Cross Examination Helen Cohn testified, that Mr. Gallagher was also approved for FMLA from December 15, 2014. The records show that each year he applies for FMLA, and then he is approved for FMLA.
September 11, 2012, 8 hours of FMLA
September 17, 2012, 8 hours of FMLA- 0, these are excused absences.

June 7th, 2013, NST 2, which meant no sick time for two hours. The day before Mr. Gallagher went on an ordinary disability. It is the policy of the Sheriff's Department that before an employee can go on a disability they need to exhaust all their benefit time.

Direct Examination John Harrington testified. He is employed by the Cook County Sheriff's Office, Director of Attendance Review. He informs employees of infractions that violate the General Order of Unauthorized Absences.
There are unauthorized absences when a Cook County Sheriff's employee is absent from work and does not have the requested benefit time to support that absence. If an employee has a legitimate medical excuse, they do have options available to correct their unauthorized status. There's an administrative process available to an employee who has violated the General Order attendance policy. Mr. Gallagher was issued a Disciplinary Action Form. He was given counseling by Sean Hefferman in September of 2012. Mr. Gallagher went through the grievance procedure for his unauthorized absences. It is the

responsibility of the employee to ensure that they have enough time before they end up in unauthorized status.

**Cross Examination** John Harrington testified that on February 24 to 28, 2014 the time card reflects a 5th Occurrence, and then the 5th Occurrence also becomes August 18 to 21, 2014. After the 6th Occurrence, "A complaint register shall be submitted to the Office of Professional Review seeking termination." The Collective Bargaining Agreement for the Illinois FOP Labor Council and the Sheriff's Office allows another step after the 3rd step for arbitration. There is not a final decision made until the case goes before an arbitrator.

**Direct Examination** Georgia Garcia testified, she is employed by the Cook County Sheriff's Office, Office of Professional Review as an Investigator. She was assigned to investigate Officer Brian Gallagher. She interviewed Officer Gallagher and during his interview there was no dispute whether he was ill, the issue was he didn't have enough accrued benefit time to cover his absences.

**Cross Examination** Investigator Garcia testified, that Mr. Harrington, was the complainant in this case. He submitted a memorandum, a signed affidavit seeking the termination of Mr. Gallagher.

**Direct Examination** Brian Gallagher the respondent testified, he is employed by the Cook County Sheriff's Department as a Deputy Sheriff. He started on April 19, 1995. He has used FMLA time since 2003. He is familiar with all the documents necessary to be completed for the use of FMLA time. In 2013 he had surgery and was not approved for FMLA leave until December 15, 2014. He would call in to the call center and use whatever fringe time that was available including FMLA time. His time card would be corrected to change the status of the time taken.

August 31, 2012 NVT, no vacation time. Counseling given.

September 10, 2012 NVT no vacation time may have been FMLA and not properly marked by Sheriff's Department

September 11, 2012 FMLA-A

September 17, 2012, FMLA 0.

Mr. Gallagher was authorized to use 5 days per month for FMLA time.

January 28, 2013 NST-0 no sick time

January 29, 2013 FMLA-0

January 30, 2013 FMLA-0

There are no allegations of unauthorized absences for February, March, April, and May of 2013.

June 7, 2013 NST-2/6. He was using his time before going on disability. He was disability for 10 months. He returned to work on March 4, 2014. He was unable to apply for FMLA leave at this time. He did not work the 1250 hours' requirement.

August 18, 19, 20, 21, 2014 were entered as NST no sick time. He took those days off due to his FMLA condition. He used regular vacation days for August 12 and 13, 2014.

October 29 and 30, 2014 NST no sick time. Those days were also related to his FMLA condition.

December 3 and 4, 2014 NVT, no vacation time.

December 8, 2014 NST no sick time.

Mr. Gallagher testified that these days were due to his FMLA condition. On December 5, 2014, he was granted FMLA leave time.

Cross Examination Brain Gallagher Respondent testified, he has worked for 21 years and he has used FMLA since 2003. He is familiar with the FMLA application process and re-certification process. In August 2012, he exceeded 5 FMLA days. He used 6 total which relates to the August 31, No Vacation Time.

September 10, 2012, NVT no vacation time, he was not approved for FMLA until September 22, 2012. August 18-21, 2014, October 29 and 30, 2014, December 3-4, 2014, and December 8, 2014. These dates he did not have FMLA approval.

He did file grievances related to his unauthorized absences. All of his grievances were denied.

**Findings of Fact:** Officer Brian Gallagher did violate the Cook County Sheriff's Rules and Regulations stated in the complaint. The evidence clearly sustains the charges filed against him. The mitigating factor in this decision is concerning his use of FMLA leave. The dispute is not whether he was ill at the time of his absences. He has taken absences that he didn't have enough accrued benefit time to cover. The fact that the grievance procedure was also followed and all of them were denied, also shows that clearly, he was giving an opportunity to contest the unexcused absences.

**Conclusions of Law:** Based on the evidence presented, and after assessing the credibility of witnesses and the weight given by the evidence in the record, the Merit Board finds that the Respondent did violate the Cook County Sheriff's Department Rules and Regulations.

**Order:** Wherefore, based on the foregoing, it is hereby ordered that the Sheriff's request to terminate and remove Brian Gallagher, respondent, from the Cook County Sheriff's Office is granted effective October 16, 2015.

James P. Nally, Chairman

Vincent T. Winters, **Board Member**

Patrick Brady, **Board Member**

Gray Mateo-Harris, **Board Member**

Kim R. Widup, **Board Member**

Byron T. Brazier, **Board Member**

Jennifer E. Rae, **Board Member**

John J. Dalicandro, **Board Member**

Dated: February 7, 2017

COOK COUNTY SHERIFF'S MERIT BOARD

SHERIFF OF COOK COUNTY )
)
vs. ) Docket No. 1841
)
BRIAN GALLAGHER, )
Deputy Sheriff )

### DISSENT ON DECISION

I write in dissent of the decision issued by the Board regarding Respondent Brian Gallagher ("Respondent") as to the discipline issued. The Sheriff requested that Respondent be terminated for incurring an excess of six unauthorized absences in violation of Sheriff's Order 11.4.1.1 and related rules. Such absences allegedly include: August 31, 2012 (#1); September 10, 2012 (#2); January 28, 2013 (#3); June 7, 2013 (#4); August 18-21, 2014 (#5); October 29-30, 2014 (#6); December 3-4, 2014 (#7); and December 8, 2014 (# 8). However, for the following reasons, it does not appear that the Sheriff met its burden of proof in this matter:

1. The September 10, 2012 (#2) absence may have been an FMLA-covered absence given that the very next day, September 11, 2012, Respondent had an FMLA-covered absence.

2. The June 7, 2013 (#4) two-hour absence may be unsubstantiated given that Respondent went on disability starting June 8, 2013. The record does not establish why the requirement that Respondent exhaust existing benefit time resulted in a two-hour unauthorized absence on June 7th under the applicable circumstances.

3. The record is unclear as to precisely when Respondent became eligible for FMLA in early December 2014. Given that FMLA leave can be applied retroactively to the first date the employee becomes eligible for such leave, there is uncertainty as to Respondent's actual first date of FMLA eligibility in December 2014. Accordingly, it is possible that the December 3-4, 2014 (#7) and December 8, 2014 (#8) absences may have been FMLA-covered absences.

Given that the employer bears the burden of proof in this matter, I would err in favor of finding that there is no evidence of 6 unauthorized absences. Indeed, the record supports a finding of only 4 unauthorized absences. The Complaint should therefore be denied.

Gray I. Mateo-Harris, Board Member

01.12.17

Date

28316831.1

ELECTRONICALLY FILED
10/10/2017 8:30 AM
2017-CH-03707
CALENDAR: 09
PAGE 1 of 11
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

### IN THE CIRCIUT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| BRIAN GALLAGHER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No.: 17 CH 03707 |
| | ) | |
| THOMAS J. DART, SHERIFF OF COOK | ) | |
| COUNTY ILLINOIS; THE COOK | ) | |
| COUNTY MERIT BOARD; JAMES P. | ) | |
| NALLY, CHAIRMAN; VINCENT T. | ) | |
| WINTERS, BOARDMEMBER; PATRICK | ) | |
| BRADY, BOARDMEMBER; BRAY | ) | |
| MATEO-HARRIS, BOARDMEMBER; | ) | |
| KIM R. WIDUP, BOARDMEMBER; | ) | |
| BRYON T. BRAZTER, | ) | |
| BOARDMEMBER; JENNIFER E. BAE, | ) | |
| BOARDMEMBER and JOHN J. | ) | |
| DALICANDRO, BOARDMEMBER, | ) | |
| | ) | |
| Defendant. | ) | |

## AMENDED COMPLAINT

NOW COMES the Plaintiff, Brian Gallagher, by and through his attorney, Stephen C.

Debboli, and pursuant to the Administrative Review Act, 735 ILCS 5/3-101, et seq, complaining

of the Defendants, THOMAS J. DART, THE COOK COUNTY MERIT BOARD, JAMES P.

NALLY, VINCENT T. WINTERS, PATRICK BRADY, BRAY MATEO-HARRIS, KIM R.

WIDUP, BYRON T. BRAZTER, JENNIFER E. BAE and JOHN J. DALICANDRO, alleges and

says as follows:

### COUNT I
### PETITION FOR ADMINISTRATIVE REVIEW

1.     Brian Gallagher was appointed a Cook County Court Services Deputy Sheriff on

April 19, 1995.

1

2. Since 2005, Brian Gallagher has been assigned to the George N. Leighton Criminal Court Building located at 2650 S. California Avenue, Chicago, IL 60608.

3. In 2003, Brian Gallagher underwent gastric bypass surgery which resulted in continuing medical problems necessitating his taking time off of work.

4. In 2003, Brian Gallagher applied for and was granted leave under the Family Medical Leave Act (29 U.S.C. Section 2601 *et seq.*).

5. Brian Gallagher has applied for and been granted status under the Family Medical Leave Act every year since 2003 up until his suspension in March of 2016.

6. In 2014, Brian Gallagher underwent a full left adrenalectomy which left him with additional continuing medical problems necessitating his taking time off of work.

7. The Sheriff, Thomas J. Dart filed a complaint with the Cook County Sheriff's Merit Board seeking termination of Brian Gallagher for alleged violations of the Rules and Regulations and the General Orders of the Cook County Sheriff's Department.

8. The Complaint alleged that Brian Gallagher had unauthorized absences from schedule shift from August 31, 2012 through October 30, 2014.

9. Brian Gallagher was suspended without pay from the Sheriff's office pending resolution of a Complaint filed with the Sheriff's Merit Board. Allegedly arising out of an incident that occurred on February 9, 2015 wherein he allegedly observed another deputy Sheriff use excessive force on a detainer and failed to inference and/or report the incident.

10. Brian Gallagher contested the allegations in the Complaints.

11. An Evidentiary Hearing on this matter was held on September 20, 2016 wherein Brian Gallagher testified that he had applied and been granted FMLA Status since 2003 and that he had used FMLA days for the alleged unauthorized absences in accordance with the policies and procedures of the Sheriff's office and the FMLA.

ELECTRONICALLY FILED
10/10/2017 8:30 AM
2017-CH-03707
PAGE 2 of 11

2

12.    On February 7, 2017 the Cook County Sheriff's Merit Board issued its ruling and order that Brian Gallagher be separated from his employment effective October 16, 2015. A copy is attached hereto as Exhibit "A".

13.    The findings of the Merit Board lack a sufficient factual basis for the imposition of the sanction of termination and was against the manifest weight of the evidence and the imposition of the sanction of termination is arbitrary and not reasonable in light of all the evidence.

WHEREFORE, the Petitioner, Brian Gallagher, respectfully requests that this Honorable Court order the Merit Board to vacate its Order of February 7, 2017 and reinstate Brian Gallagher as an employee of the Cook County Sheriff's Department; to order the Sheriff's Office to pay Brian Gallagher for his lost wages while in suspension and for costs of this suit and for such other relief as this Court deems just and equitable.

## COUNT II
## AMERICANS WITH DISABILITIES ACT

ELECTRONICALLY FILED
10/10/2017 8:30 AM
2017-CH-03707
PAGE 3 of 11

1. – 13    The Plaintiff repeats, reasserts and realleges Paragraphs 1 through 13 as and for Paragraphs 1 through 13 of this Count.

14.    There was in full force and effect at all times relevant hereto a Federal Statute entitled The Americans with Disabilities Act of 1990 (hereinafter ADA) which prohibits employment discrimination against qualified individuals with disability with respect to hiring, compensation, promotion, termination, and other terms and conditions of employment. (42 U.S. C. Section 12101, et sec.).

15.    That statute was applicable to the Plaintiff's employment with the Sheriff of Cook County.

3

16.     Brian Gallagher had a "disability" as defined in the Act in that he had a physical or mental impairment that substantially limits one or more of the major life activities; has a record of such impairment; and/or is regarding as having such an impairment. (42 U.S.C. Section 12111 et sec; 42 U.S.C. Section 12102(2)).

17.     Pursuant to 42 U.S.C. Section 12203(a), is unlawful for an employer to "discriminate against any individual because such individual has opposed any act or practice made unlawful by this Chapter or because such individual may be charged… under this Chapter".

18.     At all times relevant hereto, the Plaintiff was qualified for the position he performed, and performed his duties and responsibilities in a satisfactory manner with or without a reasonable accommodation.

19.     The Defendant, Thomas Dart, Sheriff of Cook County, has discriminated against Plaintiff with respect to the terms and conditions of his employment and was terminated on February 7, 2017.

20.     In conjunction with his disability, Plaintiff applied for and was granted Family Medical Leave pursuant to the provisions of the Family Medical Leave Act (29 U.S.C. Section 2601 et sec) in 2003 and every year thereafter until his suspension in March of 2016.

21.     That Plaintiff, Brian Gallagher had been employed as a Cook County Court Services Deputy Sheriff for over 20 years and had never been subjected to any significant disciplinary action prior to the complaints filed against him as alleged herein.

22.     On or about October 14, 2015 the Sheriff's Office of Cook County Office of Professional Review filed a Complaint against Brian Gallagher alleging that on October 13, 2015 he was charged with inattention to duty in allowing a detainee to escape, seeking termination (MB 1887).

4

ELECTRONICALLY FILED
10/10/2017 8:30 AM
2017-CH-03707
PAGE 4 of 11

23. On or about August 7, 2016 a Complaint was filed in the Cook County Sheriff's Merit Board alleging that Brian Gallagher violated certain Sheriff's orders in failing to report an incident of alleged actual excessive force that occurred on February 9, 2015 wherein the Sheriff sought termination of the Plaintiff, (MB 1917). That matter went to hearing on September 8, 2016 and October 6, 2016. No decision has been rendered.

24. On or about October 16, 2015 a complaint was filed by the Offices of Professional Standards alleging that the Plaintiff had taken unauthorized absences (MB 1841). That matter went to a Evidentiary Hearing before the Sheriff's Merit Board on September 20, 2016 whereupon the Merit Board terminated the Plaintiff's employment with the Cook County Sheriff's office. This termination gave rise to the filing of this Complaint and the allegations in Count I thereof.

25. On or about December 28, 2015 the Office of Professional Standards filed a complaint against the Plaintiff, Brian Gallagher alleging that he violated certain rules and order of the Sheriff's department with regard to secondary employment, again seeking termination (OPR 2015-332). This matter went to a Laudermill hearing on December 1, 2016. No decision has yet been rendered.

26. That the facts of each and every complaint filed against the Plaintiff do not warrant any discipline, especially termination.

27. These complaint were brought for the purposes of intimidating, harassing and terminating the Plaintiff because of the absences he took as a result of his physical disabilities and in violation of the Americans with Disabilities Act.

WHEREFORE the Plaintiff, Brian Gallagher, requests that this Honorable Court enter judgment in his favor and against the Defendant, Thomas Dart for all remedies and damages

ELECTRONICALLY FILED
10/10/2017 8:30 AM
2017-CH-03707
PAGE 5 of 11

5

available pursuant to:

    a.    A determination that the ADA has been violated by the Defendant;

    b.    Issuance of an injunction requiring Defendant to cease all legal contact violative of the ADA;

    c.    Award of actual damages for injury and loss suffered including wages, salary, employment benefits and any and all other compensation lost as result of the violations of ADA by the Defendant;

    d.    An award of Compensatory Damages for injury and loss suffered by the Plaintiff, including physical and emotional damages suffered by the Plaintiff as a result of the Defendants' wrongful conduct;

    e.    An award of other remedies available under the ADA to make the Complainant whole;

    f.    Interest on the amounts described above calculated at the statutory rates;

    g.    Such equitable relief as made appropriate including employment and promotion;

    h.    Reinstatement; and

    i.    An award of reasonable Attorneys' Fees, reasonable expert witness fees and other costs of the action incurred by Plaintiff.

ELECTRONICALLY FILED
10/10/2017 8:30 AM
2017-CH-03707
PAGE 6 of 11

## COUNT III
## FAMILY MEDICAL LEAVE ACT

1.-13.    Plaintiff repeats, reasserts and realleges the allegations contained in Paragraphs 1-13 as and for Paragraphs 1-13 of this Count.

14.    There was in full force and effect at all times relevant hereto a federal statute entitled Family and Medical Leave Act (FMLA), which provides that employees must be provided with up to 12 weeks of unpaid leave for the birth or adoption of a child, to care for an immediate family member (spouse, child, or parent) with serious health conditions, or to take

6

medical leave when the employee is unable to work because of a serious health condition. (29 U.S.C.A. §2601, *et seq*).

15.     That statute was applicable to the Plaintiff's employment with the Sheriff of Cook County.

16.     Brian Gallagher had a reoccurring serious health condition which results in his inability to work.

17.     Pursuant to the Family and Medical Leave Act, it is "unlawful for any employer to interfere with, restrain, or deny the exercise of, or the attempt to exercise any right provided under this subchapter" and it is "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter" 29 U.S.C. §2615(a).

18.     At all times relevant hereto, the Plaintiff was qualified for the position he performed, and performed his duties and responsibilities in a satisfactory manner with or without a reasonable accommodation.

19.     The Defendant, Thomas Dart, Sheriff of Cook County, has discriminated against Plaintiff with respect to the terms and conditions of his employment and was improperly terminated on February 7, 2017.

20.     In conjunction with his disability, Plaintiff applied for and was granted Family Medical Leave pursuant to the provisions of the Family Medical Leave Act (29 U.S.C. Section 2601, *et sec*) in 2003 and every year thereafter until his suspension in March of 2016.

21.     That Plaintiff, Brian Gallagher had been employed as a Cook County Court Services Deputy Sheriff for over 20 years and had never been subjected to any significant disciplinary action prior to the complaints filed against him as alleged herein.

ELECTRONICALLY FILED
10/10/2017 8:30 AM
2017-CH-03707
PAGE 7 of 11

7

22. On or about October 14, 2015 the Sheriff's Office of Cook County Office of Professional Review filed a Complaint against Brian Gallagher alleging that on October 13, 2015 he was charged with inattention to duty in allowing a detainee to escape, seeking termination (MB 1887).

23. On or about August 7, 2016 a Complaint was filed in the Cook County Sheriff's Merit Board alleging that Brian Gallagher violated certain Sheriff's orders in failing to report an incident of alleged actual excessive force that occurred on February 9, 2015 wherein the Sheriff sought termination of the Plaintiff, (MB 1917). That matter went to hearing on September 8, 2016 and October 6, 2016. No decision has been rendered.

24. On or about October 16, 2015 a complaint was filed by the Offices of Professional Standards alleging that the Plaintiff had taken unauthorized absences (MB 1841). That matter went to an Evidentiary Hearing before the Sheriff's Merit Board on September 20, 2016 whereupon the Merit Board terminated the Plaintiff's employment with the Cook County Sheriff's office. This termination gave rise to the filing of this Complaint and the allegations in Count I thereof.

25. On or about December 28, 2015 the Office of Professional Standards filed a complaint against the Plaintiff, Brian Gallagher alleging that he violated certain rules and order of the Sheriff's department with regard to secondary employment, again seeking termination (OPR 2015-332). This matter went to a Laudermill hearing on December 1, 2016. No decision has yet been rendered.

26. That the facts of each and every complaint filed against the Plaintiff do not warrant any discipline, especially termination.

27. These complaints were brought for the purposes of intimidating, harassing and terminating the Plaintiff because of the absences he took as a result of his serious medical

ELECTRONICALLY FILED
10/10/2017 8:30 AM
2017-CH-03707
PAGE 8 of 11

8

condition and in violation of the Family and Medical Leave Act.

WHEREFORE the Plaintiff, Brian Gallagher, requests that this Honorable Court enter judgment in his favor and against the Defendant, Thomas Dart for all remedies and damages available pursuant to:

    a.    A determination that the FMLA has been violated by the Defendant;

    b.    Issuance of an injunction requiring Defendant to cease all legal contact violative of the FMLA;

    c.    Award of actual damages for injury and loss suffered including wages, salary, employment benefits and any and all other compensation lost as result of the violations of FMLA by the Defendant;

    d.    An award of Compensatory Damages for injury and loss suffered by the Plaintiff, including physical and emotional damages suffered by the Plaintiff as a result of the Defendants' wrongful conduct;

    e.    An award of other remedies available pursuant to 29 U.S.C.A. §2601 *et seq* to make the Complainant whole;

    f.    Interest on the amounts described above calculated at the statutory rates;

    g.    Such equitable relief as made appropriate including employment and promotion;

    h.    Reinstatement; and

    i.    An award of reasonable Attorneys' Fees, reasonable expert witness fees and other costs of the action incurred by Plaintiff.

## COUNT IV
## COBRA VIOLATION

1.    Brian Gallagher was appointed a Cook County Court Services Deputy Sheriff on April 19, 1995.

ELECTRONICALLY FILED
10/10/2017 8:30 AM
2017-CH-03707
PAGE 9 of 11

9

2. Since 2005, Brian Gallagher has been assigned to the George N. Leighton Criminal Court Building located at 2650 S. California Avenue, Chicago, IL 60608.

3. The Sheriff, Thomas J. Dart filed a complaint with the Cook County Sheriff's Merit Board seeking termination of Brian Gallagher for alleged violations of the Rules and Regulations and the General Orders of the Cook County Sheriff's Department.

4. The Complaint alleged that Brian Gallagher had unauthorized absences from schedule shift from August 31, 2012 through October 30, 2014.

5. An Evidentiary Hearing on this matter was held on September 20, 2016 wherein Brian Gallagher testified that he had applied and been granted FMLA Status since 2003 and that he had used FMLA days for the alleged unauthorized absences in accordance with the policies and procedures of the Sheriff's office and the FMLA.

6. On February 7, 2017 the Cook County Sheriff's Merit Board issued its ruling and order that Brian Gallagher be separated from his employment effective October 16, 2015. A copy is attached hereto as Exhibit "A".

7. There was in full force and effect, at all times relevant hereto, a federal statute commonly known as Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA) 29 U.S.C. §1161 *et seq.* which requires employers who provide a group health insurance plan to offer employees who lose coverage because of termination of employment the option to continue their health insurance coverage for up to 18 months and to notify such terminated employee of the option to continue coverage.

8. The Defendant, Thomas Dart, Sheriff of Cook County, failed to properly advise the Plaintiff of his COBRA option in violation of the statute.

9. As a result of Defendant, Thomas Dart's failure to comply with the provisions of COBRA, the Plaintiff was denied the option of continuing his medical insurance coverage.

ELECTRONICALLY FILED
10/10/2017 8:30 AM
2017-CH-03707
PAGE 10 of 11

10

10.    The Plaintiff has continuing serious medical conditions which require continuous

and expensive medical treatment.

WHEREFORE, the Plaintiff, Brian Gallagher, asks this Honorable Court to enter

Judgment against the Defendant, Thomas Dart for:

A.    The amount of the Plaintiff's medical treatment since the termination of his

insurance coverage for a period of 18 months after his termination on February 7, 2017;

B    The cost of the medical insurance coverage obtained by the Plaintiff as a result of

the Defendant, Thomas Dart's, failure to provide the option of continued medical insurance

coverage pursuant to COBRA;

C.    To pay the Plaintiff, Brian Gallagher the sum of $100.00 per day and attorneys'

fees and costs in connection with this matter pursuant to 29 U.S.C. §1132(c)(1); and

D.    For such other and further relief as this Court deems appropriate.

<div style="margin-left:4em">

Respectfully submitted,

Brian Gallagher

/s/ Stephen C. Debboli

By:_____

One of his attorneys

</div>

<div style="position:absolute;left:0;">
ELECTRONICALLY FILED
10/10/2017 8:30 AM
2017-CH-03707
PAGE 11 of 11
</div>

Stephen C. Debboli
218 N. Jefferson Street S-101
Chicago, IL 60661
Attorney No. 25009
(312) 207-0000

11

ELECTRONICALLY FILED
10/10/2017 8:30 AM
2017-CH-03707
CALENDAR: 09
PAGE 1 of 8
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

## COOK COUNTY SHERIFF'S MERIT BOARD

Sheriff of Cook County )
)
vs. )        Docket # 1841
)
Brian Gallagher )
Deputy Sheriff )

### DECISION

THIS MATTER COMING ON to be heard before Merit Board Member John J. Dalicandro pursuant to notice, the Cook County Sheriff's Merit Board finds as follows

**Jurisdiction**

The Respondent, Brian Gallagher, hereinafter "Respondent". Respondent's position as a Cook County Deputy Sheriff involves duties and responsibilities to the public; and
Each member of the Cook County Sheriff's Merit Board, hereinafter "Board," has
been duly appointed to serve as a member of the Board pursuant to confirmation by the Cook County Board of Commissioners, State of Illinois, to sit for a stated term; and
The Board has jurisdiction of the subject matter of the parties in accordance with Chapter 55 of the Illinois Compiled Statutes; and
The Respondent was personally served with a copy of the Complaint and Notice of Hearing and did appear before the Board to contest the charges contained in the complaint; and
The Board has heard the evidence presented by the Sheriff and the Respondent, and evaluated the credibility of the witnesses and supporting evidence. After considering the evidence, the Board finds as follows:

**Background**

By complaint dated October 16, 2015. Sheriff Thomas J. Dart, sought the termination of Brian Gallagher, the Respondent. The Sheriff is seeking termination from the Cook County Sheriff's Office for the alleged violations of the Rules and Regulations of the General Orders of the Cook County Sheriff's Department.

In support, thereof, the Sheriff states as follows:

1. That on April 19, 1995, the Respondent was appointed a Deputy Sheriff.
2. That as of 2005, Respondent was assigned to the George N. Leighton Criminal Court Building, located at 2650 South California Avenue, Chicago, Illinois 60608.
3. That Respondent was absent from scheduled work shifts and the absences were unauthorized for at least six (6) occurrences between August 31, 2012 and October 30, 2014, in violation of Sheriff's Order 11.4.1.1 as set forth below:
   a. That Respondent's first occurrence of unauthorized absences occurred on August 31, 2012, consisting of eight (8) hours of No Vacation Time ("NVT").
   b. That Respondent's second occurrence of unauthorized absences occurred on September 10, 2012, consisting of eight (8) hours of NVT.



ELECTRONICALLY FILED
10/10/2017 8:30 AM
2017-CH-03707
PAGE 2 of 8

    c.   That Respondent's third occurrence of unauthorized absences occurred on January 28, 2013, consisting of eight (8) hours of No Sick Time ("NST").

    d.   That Respondent's fourth occurrence of unauthorized absences occurred on June 7, 2013, consisting of two (2) hours of NST.

    e.   That Respondent's fifth occurrence of unauthorized absences occurred on August 18, 19, 20 and 21, 2014, consisting of thirty-two (32) hours of NST.

    f.   That Respondent's sixth occurrence of unauthorized absences occurred on October 29 and 30, 2014, consisting of sixteen (16) hours of NST.

    g.   That Respondent continued to incur unauthorized absences and was absent from scheduled work shifts a total of two (2) additional occurrences, as set forth below:

       a.   That Respondent was absent NVT on December 3 and 4, 2014 (16 hours).

       b.   That Respondent was absent NST on December 8, 2014 (8 hours).

4.   That on September 14, 2012, Respondent attended a counseling session after his first occurrence of unauthorized absences, which occurred on August 31, 2012. At this counseling session, Respondent was counseled on Sheriff's Order 11.4.1.1, Unauthorized Absence Policy, as well as the steps in the levels of progressive discipline and available leave options.

5.   That on September 25, 2012, Respondent received an Unauthorized Absence Disciplinary Action Form ("DAF"), SPR12-2130, recommending a written reprimand for the unauthorized absence that occurred on September 10, 2012.

6.   That on March 22, 2013, Respondent's grievance #12-U-086 related to SPR12-2130 for the unauthorized absence that occurred on September 10, 2012 was denied after a 3rd Step Grievance hearing.

7.   That on February 13, 2013, Respondent received an Unauthorized Absence DAF, SPR13-0350, recommending a 1-day suspension for the unauthorized absence that occurred on January 28, 2013.

8.   That on March 22, 2013, Respondent's grievance #13-U-042 related to SPR13-0350 for the unauthorized absence that occurred on January 28, 2013 was denied after a 3rd Step Grievance hearing.

9.   That on April 2, 2014, Respondent received an Unauthorized Absence DAF, SPR13-1357, recommending a 3-day suspension for the unauthorized absence that occurred on June 7, 2013.

10.   That on May 21, 2014, Respondent's grievance #14-U-049 related to SPR13-1357 for the unauthorized absence that occurred on June 7, 2013 was denied after a 3rd Step Grievance hearing.

11.   That on September 10, 2014, Respondent received an Unauthorized Absence DAF, SPR14-2108, recommending a 5-day suspension for the unauthorized absences that occurred on August 18, 19, 20 and 21, 2014.

12.   That on January 14, 2015, Respondent's grievance #14-DI-14910-NYLB related to SPR14-2108 for the unauthorized absences that occurred on August 18, 19, 20 and 21, 2014 was denied after a 3rd Step Grievance hearing.

13.   That by his actions, Respondent violated the Rules and Regulations and General Orders of the Cook County Sheriff's Court Services Department, specifically:

SHERIFF'S ORDER 11.4.1.1 (effective date July 1, 2012)
UNAUTHORIZED ABSENCE, in its entirety, including but not limited to, the following subparts:

        II.    POLICY

        It is the policy of the Cook County Sheriff's Office (CCSO) to prohibit CCSO employees from incurring Unauthorized Absences. Unauthorized Absences exacerbate absenteeism problems and strain the operations and employees of the CCSO. CCSO

employees receive benefit time and have a variety of leave options available to cover the need for short-term and long-term absences. Therefore, even if an employee is legitimately ill or has some other reasonable excuse for being absent, the employee must obtain an appropriate Authorized Status(es) prior to or immediately after the need for the absence(s).

V.    DEFINITIONS

    C.    Occurrence – For purposes of determining progressive discipline, an Occurrence as used in this Order is either:

        1. An Unauthorized Absence that lasts from one (1) hour to one (1) single work day and where the employee returns to work the next working day; or

        2. An Unauthorized Absence that lasts between two (2) and five (5) consecutive work days.

        For instance, if an employee has one (1) Unauthorized Absence day and returns to work the next work day, then that will be considered one (1) Occurrence; if an employee has five (5) consecutive Unauthorized Absences in a row, that will be considered one (1) Occurrence; if an employee has thirteen (13) consecutive Unauthorized Absences, that will be considered three (3) occurrences.

VII.    DISCIPLINARY PROCEDURES FOR EMPLOYEES WITH UNAUTHORIZED ABSENCE(S)

    A.    Disciplinary procedure for employees without a Rolling Calendar clause in their applicable CBA will be progressive and will be in accordance with the applicable CBA.

GENERAL ORDER 3401.1 (effective date March 15, 2001)
RULES OF CONDUCT, in its entirety, including but not limited to, the following subparts:

V.    RESPONSIBILITY

It is the responsibility of every member of the C.S.D. to conform to the rules of conduct.

U.    Tour of Duty: Attendance, Availability and Reporting

    1.    Members will report for duty at the time and place required or report their inability to do so by notifying their supervisor or the appropriate office one hour prior to the beginning of their tour of duty. No member shall be absent without leave. Absent without leave shall mean either a failure to report for duty or leaving their assigned duty post during a tour of duty without being properly relieved, except when authorized by proper authority. Members shall be punctual in reporting for duty; habitual failure to report promptly shall be deemed neglect of duty. Members will be physically and mentally fit to perform their duties. They will be properly equipped and cognizant of information required for the proper performance of duty so that they may immediately assume their duties. Judicial subpoenas will constitute an order to report for duty under this section.

SHERIFF'S ORDER 11.2.20.0 (effective date January 25, 2013)
RULES OF CONDUCT, in its entirety, including but not limited to, the following subparts:

    VI.    RULES AND REGULATIONS FOR ALL SWORN AND CIVILIAN CCSO EMPLOYEES
    A. Compliance with Laws, Ordinances, and Regulations

ELECTRONICALLY FILED
10/10/2017 8:30 AM
2017-CH-03707
PAGE 3 of 8

2. Employees shall comply with lawful rules, Sheriff's Office written directives, verbal orders, SEAM articles, and political prohibitions issued by the proper authorities.

E. Duty functions.

CCSO employees shall:

1. Maintain sufficient competence to properly perform the duties and responsibilities of their positions. Unsatisfactory performance shall not be allowed.

b. Unsatisfactory performance may be demonstrated by:

vi. Absence without leave.

SHERIFF'S ORDER 11.2.20.1 (effective date March 12, 2015)
CONDUCT POLICY, in its entirety, including but not limited to, the following subparts:

## IV. COMPLIANCE WITH ALL LAWS, ORDINANCES AND REGULATIONS

Members shall respect and protect the civil and legal rights of all individuals; uphold the constitutions of the United States and the State of Illinois; obey all applicable federal, state and local laws; comply with court decisions and orders of courts having jurisdiction; and comply with lawful rules, written or verbal orders, SEAM articles, policies and procedures issued by the CCSO or by any supervisor.

## VI. CONDUCT WHICH MAY RESULT IN DISCIPLINE

The following list of causes for disciplinary action constitutes a portion of the disciplinary standards of the CCSO. This list is not intended to cover every possible type of misconduct and does not preclude the recommendation of disciplinary action for specific action or inaction that is detrimental to efficient service. Conduct which may result in discipline includes but is not limited to the following:

A. Attendance.

b. Unexcused or unauthorized absence or tardiness on scheduled day(s) of work.

Furthermore, the Respondent's actions violated the Rules and Regulations of the County Sheriff's Merit Board, specifically:

COOK COUNTY SHERIFF'S DEPARTMENT MERIT BOARD RULES AND REGULATIONS, in its entirety, including but not limited to, the following subparts:

Article X, Paragraph B

No Police Officer of the Cook County Sheriff's Police Department, Correctional Officer of the Cook County Department of Corrections or any Deputy Sheriff of the Cook County Sheriff's Court Services Department shall:

3. violates any of the general orders, special orders, directives, or rules and regulations of the Cook County Sheriff's Office.

WHEREFORE, THOMAS J. DART, Sheriff of Cook County, maintains that the Respondent, by his conduct, has violated the Rules and Regulations of the Cook County Sheriff's Merit Board, and respectfully requests this Board to hold a hearing on the charges as set forth in the complaint, pursuant to statute, and on proof of said charges, or any part thereof, the Board shall make a finding of guilty and order the Respondent removed from the Cook County Sheriff's Office.

ELECTRONICALLY FILED
10/10/2017 8:30 AM
2017-CH-03707
PAGE 4 of 8

**Findings of Fact:** Evidentiary hearing on this matter was held on September 20, 2016. Present were Assistant State's Attorneys John Murray, Mark Hara on behalf of the Sheriff and Miriam Santiago, Assistant General Counsel for the Sheriff of Cook County. Daniel Mahoney and Stephen Debboli appeared on behalf of Respondent Brian Gallagher.

Three witnesses testified for the Sheriff, Helen Cohn, John Harrington and Georgia Garcia Respondent Brian Gallagher testified.

**Direct Examination** Helen Cohn testified, she is employed at the Cook County Sheriff's Department. She is the Director of the Payroll Department. Employees are only allowed to call in for medical as well as FMLA time. They cannot call in for personal or vacation time. Non- medical time must be called in or requested 72 hours in advance based on their CBA.
In her review of Deputy Brian Gallagher's time card.
August 31, 2012, 8 hours of No Vacation Time 0.
September 10, 2012, 8 hours of No Vacation Time 0.
January 28, 2013, 8 hours of No Sick Time 0.
June 7, 2013, 2 hours of No Sick
August 18, 2014, 8 hours of No Sick Time 0.
August 21, 2014, 8 hours of No Sick Time 0.
October 29, 2014, 8 hours of No Sick Time 0.
October 30, 2014, 8 hours of No Sick Time 0.
December 3, 2014, 8 hours of No Vacation Time 0.
December 4, 2014, 8 hours of No Vacation Time 0.
December 8, 2014, 8 hours of No Sick Time 0.

Family Medical Leave Act, FMLA for an employee to qualify for FMLA, they need 1250 hours working hours. If an employee runs out of FMLA time, they can recertify once they work the 1250 hours. None of the dates above reference FMLA. He was granted FMLA September 22, 2012 to September 22, 2013 for intermittent use, five days a month and it must be used in an eight-hour block of time.

**Cross Examination** Helen Cohn testified, that Mr. Gallagher was also approved for FMLA from December 15, 2014. The records show that each year he applies for FMLA, and then he is approved for FMLA.
September 11, 2012, 8 hours of FMLA
September 17, 2012, 8 hours of FMLA- 0, these are excused absences.

June 7th, 2013, NST 2, which meant no sick time for two hours. The day before Mr. Gallagher went on an ordinary disability. It is the policy of the Sheriff's Department that before an employee can go on a disability they need to exhaust all their benefit time.

**Direct Examination** John Harrington testified. He is employed by the Cook County Sheriff's Office, Director of Attendance Review. He informs employees of infractions that violate the General Order of Unauthorized Absences.
There are unauthorized absences when a Cook County Sheriff's employee is absent from work and does not have the requested benefit time to support that absence. If an employee has a legitimate medical excuse, they do have options available to correct their unauthorized status. There's an administrative process available to an employee who has violated the General Order attendance policy. Mr. Gallagher was issued a Disciplinary Action Form. He was given counseling by Sean Heffernan in September of 2012. Mr. Gallagher went through the grievance procedure for his unauthorized absences. It is the

ELECTRONICALLY FILED
10/10/2017 8:30 AM
2017-CH-03707
PAGE 5 of 8

responsibility of the employee to ensure that they have enough time before they end up in unauthorized status.

Cross Examination John Harrington testified that on February 24 to 28, 2014 the time card reflects a 5th Occurrence, and then the 5th Occurrence also becomes August 18 to 21, 2014. After the 6th Occurrence, "A complaint register shall be submitted to the Office of Professional Review seeking termination." The Collective Bargaining Agreement for the Illinois FOP Labor Council and the Sheriff's Office allows another step after the 3rd step for arbitration. There is not a final decision made until the case goes before an arbitrator.

Direct Examination Georgia Garcia testified, she is employed by the Cook County Sheriff's Office, Office of Professional Review as an Investigator. She was assigned to investigate Officer Brian Gallagher. She interviewed Officer Gallagher and during his interview there was no dispute whether he was ill, the issue was he didn't have enough accrued benefit time to cover his absences.

Cross Examination Investigator Garcia testified, that Mr. Harrington, was the complainant in this case. He submitted a memorandum, a signed affidavit seeking the termination of Mr. Gallagher.

ELECTRONICALLY FILED
10/10/2017 8:30 AM
2017-CH-03707
PAGE 6 of 8

Direct Examination Brian Gallagher the respondent testified, he is employed by the Cook County Sheriff's Department as a Deputy Sheriff. He started on April 19, 1995. He has used FMLA time since 2003. He is familiar with all the documents necessary to be completed for the use of FMLA time. In 2013 he had surgery and was not approved for FMLA leave until December 15, 2014. He would call in to the call center and use whatever fringe time that was available including FMLA time. His time card would be corrected to change the status of the time taken.
August 31, 2012 NVT, no vacation time. Counseling given.
September 10, 2012 NVT no vacation time may have been FMLA and not properly marked by Sheriff's Department
September 11, 2012 FMLA-A
September 17, 2012, FMLA 0.
Mr. Gallagher was authorized to use 5 days per month for FMLA time.
January 28, 2013 NST-0 no sick time
January 29, 2013 FMLA-0
January 30, 2013 FMLA-0

There are no allegations of unauthorized absences for February, March, April, and May of 2013,

June 7, 2013 NST-2/6. He was using his time before going on disability. He was disability for 10 months. He returned to work on March 4, 2014. He was unable to apply for FMLA leave at this time. He did not work the 1250 hours' requirement.
August 18, 19, 20, 21, 2014 were entered as NST no sick time. He took those days off due to his FMLA condition. He used regular vacation days for August 12 and 13, 2014.
October 29 and 30, 2014 NST no sick time. Those days were also related to his FMLA condition.
December 3 and 4, 2014 NVT, no vacation time.
December 8, 2014 NST no sick time.
Mr. Gallagher testified that these days were due to his FMLA condition. On December 5, 2014, he was granted FMLA leave time.

Cross Examination Brain Gallagher Respondent testified, he has worked for 21 years and he has used FMLA since 2003. He is familiar with the FMLA application process and re-certification process. In August 2012, he exceeded 5 FMLA days. He used 6 total which relates to the August 31, No Vacation Time,
September 10, 2012, NVT no vacation time, he was not approved for FMLA until September 22, 2012, August 18-21, 2014, October 29 and 30, 2014, December 3-4, 2014, and December 8, 2014. These dates he did not have FMLA approval.
He did file grievances related to his unauthorized absences. All of his grievances were denied.

Findings of Fact: Officer Brian Gallagher did violate the Cook County Sheriff's Rules and Regulations stated in the complaint. The evidence clearly sustains the charges filed against him. The mitigating factor in this decision is concerning his use of FMLA leave. The dispute is not whether he was ill at the time of his absences. He has taken absences that he didn't have enough accrued benefit time to cover. The fact that the grievance procedure was also followed and all of them were denied, also shows that clearly, he was giving an opportunity to contest the unexcused absences.

Conclusions of Law: Based on the evidence presented, and after assessing the credibility of witnesses and the weight given by the evidence in the record, the Merit Board finds that the Respondent did violate the Cook County Sheriff's Department Rules and Regulations.

Order: Wherefore, based on the foregoing, it is hereby ordered that the Sheriff's request to terminate and remove Brian Gallagher, respondent, from the Cook County Sheriff's Office is granted effective October 16, 2015.

ELECTRONICALLY FILED
10/10/2017 8:30 AM
2017-CH-03707
PAGE 7 of 8

James P. Nally, Chairman

Kim R. Widup, Board Member

Vincent T. Winters, Board Member

Byron T. Brazier, Board Member

Patrick Brady, Board Member

Jennifer E. Bae, Board Member

Gray Mateo-Harris, Board Member _dissenting_

John J. Dalicandro, Board Member

Dated: February 7, 2017

## COOK COUNTY SHERIFF'S MERIT BOARD

SHERIFF OF COOK COUNTY )
)
vs. )        Docket No. 1841
)
BRIAN GALLAGHER, )
Deputy Sheriff )

### DISSENT ON DECISION

I write in dissent of the decision issued by the Board regarding Respondent Brian Gallagher ("Respondent") as to the discipline issued. The Sheriff requested that Respondent be terminated for incurring an excess of six unauthorized absences in violation of Sheriff's Order 11.4.1.1 and related rules. Such absences allegedly include: August 31, 2012 (#1); September 10, 2012 (#2); January 28, 2013 (#3); June 7, 2013 (#4); August 18-21, 2014 (#5); October 29-30, 2014 (#6); December 3-4, 2014 (#7); and December 8, 2014 (# 8). However, for the following reasons, it does not appear that the Sheriff met its burden of proof in this matter:

1. The September 10, 2012 (#2) absence may have been an FMLA-covered absence given that the very next day, September 11, 2012, Respondent had an FMLA-covered absence.

2. The June 7, 2013 (#4) two-hour absence may be unsubstantiated given that Respondent went on disability starting June 8, 2013. The record does not establish why the requirement that Respondent exhaust existing benefit time resulted in a two-hour unauthorized absence on June 7th under the applicable circumstances.

3. The record is unclear as to precisely when Respondent became eligible for FMLA in early December 2014. Given that FMLA leave can be applied retroactively to the first date the employee becomes eligible for such leave, there is uncertainty as to Respondent's actual first date of FMLA eligibility in December 2014. Accordingly, it is possible that the December 3-4, 2014 (#7) and December 8, 2014 (#8) absences may have been FMLA-covered absences.

Given that the employer bears the burden of proof in this matter, I would err in favor of finding that there is no evidence of 6 unauthorized absences. Indeed, the record supports a finding of only 4 unauthorized absences. The Complaint should therefore be denied.

ELECTRONICALLY FILED
10/10/2017 8:30 AM
2017-CH-03707
PAGE 8 of 8

_____          01.12.17
                                    _____
Gray I. Mateo-Harris, Board Member  Date

28316831.1

ATTORNEY NO. 10295

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| BRIAN GALLAGHER, | ) |
| | ) |
| Petitioner, | ) |
| | ) 17 CH 3707 |
| vs. | ) |
| | ) Hon. Sanjay T. Tailor |
| THOMAS J. DART, SHERIFF OF COOK | ) |
| COUNTY, *et al.*, | ) Calendar 9 |
| | ) |
| Respondents. | ) |

## NOTICE OF FILING

To:     Stephen C. Debboli
        218 N. Jefferson Street, Suite 101
        Chicago, Illinois 60661

        Donald J. Pechous
        CCSAO – CONFLICTS COUNSEL UNIT
        69 W. Washington Street, Suite 2030
        Chicago, Illinois 60602

**PLEASE TAKE NOTICE** that on May 1, 2017, undersigned counsel filed with the Clerk of the Circuit Court of Cook County, County Department, Chancery Division, the attached *Appearance*, a copy of which are attached hereto and herewith served upon you.

                                        **KIMBERLY M. FOXX**
                                        State's Attorney of Cook County

                                        John E. Murray
                                        Assistant State's Attorney
                                        Cook County State's Attorney's Office
                                        Labor and Employment Section
                                        50 W. Washington Street, Suite 500
                                        Chicago, Illinois 60602
                                        w (312) 603-2381
                                        f (312) 603-3000
                                        John.Murray@cookcountyil.gov

ATTORNEY NO. 10295

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| BRIAN GALLAGHER, | ) |
| | ) |
| Petitioner, | ) |
| | ) 17 CH 3707 |
| vs. | ) |
| | ) Hon. Sanjay T. Tailor |
| THOMAS J. DART, SHERIFF OF COOK | ) |
| COUNTY, *et al.*, | ) Calendar 9 |
| | ) |
| Respondents. | ) |

## APPEARANCE

The undersigned, as attorney, enters the appearance of Respondent, Cook County Sheriff.

John E. Murray
Assistant State's Attorney

| | |
|---|---|
| KIMBERLY M. FOXX, | State's Attorney of Cook County |
| By: | John E. Murray, A.S.A. |
| Attorney for: | Cook County |
| Address: | 50 West Washington, Suite 500 |
| City: | Chicago, Illinois 60602 |
| Telephone: | (312) 603-2381 |

I certify that a copy of the within instrument was served on all parties who have appeared and have not heretofore been found by the Court to be in default to plead.

John E. Murray

ATTORNEY NO. 10295

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| BRIAN GALLAGHER, | ) |
| | ) |
| Petitioner, | ) |
| | ) 17 CH 3707 |
| vs. | ) |
| | ) Hon. Sanjay T. Tailor |
| THOMAS J. DART, SHERIFF OF COOK | ) |
| COUNTY, *et al.*, | ) Calendar 9 |
| | ) |
| Respondents. | ) |

## NOTICE OF FILING

To:     Stephen C. Debboli
        218 N. Jefferson Street, Suite 101
        Chicago, Illinois 60661

        Donald J. Pechous
        CCSAO – CONFLICTS COUNSEL UNIT
        69 W. Washington Street, Suite 2030
        Chicago, Illinois 60602

**PLEASE TAKE NOTICE** that on May 1, 2017, undersigned counsel filed with the Clerk of the Circuit Court of Cook County, County Department, Chancery Division, the attached *Appearance*, a copy of which are attached hereto and herewith served upon you.

                    **KIMBERLY M. FOXX**
                    State's Attorney of Cook County

                    John E. Murray
                    Assistant State's Attorney
                    Cook County State's Attorney's Office
                    Labor and Employment Section
                    50 W. Washington Street, Suite 500
                    Chicago, Illinois 60602
                    w (312) 603-2381
                    f (312) 603-3000
                    John.Murray@cookcountyil.gov

ATTORNEY NO. 10295

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

BRIAN GALLAGHER,  )
  )
      Petitioner,  )
  )   17 CH 3707
   vs.  )
  )   Hon. Sanjay T. Tailor
THOMAS J. DART, SHERIFF OF COOK  )
COUNTY, *et al.*,  )   Calendar 9
  )
      Respondents.  )

### APPEARANCE

The undersigned, as attorney, enters the appearance of Respondent, Cook County Sheriff.

_____
John E. Murray
Assistant State's Attorney

KIMBERLY M. FOXX,    State's Attorney of Cook County
By:    John E. Murray, A.S.A.
Attorney for:    Cook County
Address:    50 West Washington, Suite 500
City:    Chicago, Illinois 60602
Telephone:    (312) 603-2381

    I certify that a copy of the within instrument was served on all parties who have appeared and have not heretofore been found by the Court to be in default to plead.

_____
John E. Murray

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS,
COUNTY DEPARTMENT – CHANCERY DIVISION FILED-3

BRIAN GALLAGHER,                          )
                                          )        2017 MAR 28 ⊃ 1: 38
                    Plaintiff,            )
                                          )              DOROTHY BROWN
          v.                              )        No. 2017 CH 3707 CIRCUIT COU
                                          )                      DEPARTMEN
THOMAS J. DART, SHERIFF OF COOK COUNTY    )
COUNTY ILLINOIS; THE COOK COUNTY          )
MERIT BOARD; JAMES P. NALLY, CHAIRMAN;    )
VINCENT T. WINTERS, BOARDMEMBER;          )
PATRICK BRADY, BOARDMEMBER;               )
BRAY MATEO-HARRIS, BOARDMEMBER;           )
KIM R. WIDUP, BOARDMEMBER;                )
BRYON T. BRAZIER, BOARDMEMBER;            )
JENNIFER E. BAE, BOARDMEMBER and          )
JOHN J. DALICANDRO, BOARDMEMBER,          )
                    Defendants.           )

## NOTICE OF FILING

TO:   SEE ATTACHED SERVICE LIST

   PLEASE TAKE NOTICE that on *March 28*, 2017, on behalf of the Cook
County Sheriff's Merit Board, I filed the **Answer to Complaint, comprised of the Certification
of Record and the Record of Proceedings**, with the Circuit Court of Cook County, Chancery
Division, Richard J. Daley Center, 8th Floor, Chicago, Illinois. A copy is included herewith.

                                   Respectfully submitted,

                                   KIMBERLY M. FOXX
                                   State's Attorney of Cook County

                    By:            _____

                                   Donald J. Pechous
                                   Assistant State's Attorney
                                   69 West Washington, Suite 2030
                                   Chicago, IL 60602
                                   (312) 603-1424

## CERTIFICATE OF SERVICE

   I, Donald J. Pechous, an attorney, hereby certify that I caused copies of this Notice of
Filing and the Answer to Complaint (Certification of Record) to be served upon the person(s)
listed above by placing it in the United States Mail, with postage pre-paid, at 69 W. Washington,
Suite 2030, Chicago, Illinois, 60602 on or before 5:00 p.m. on *March 28*, 2017.

                                   _____

**Brian Gallagher v. Thomas J. Dart and The Cook County Sheriff's Merit Board, et al.,**
**17 CH 3707**

## SERVICE LIST

### Attorney for Plaintiff Brian Gallagher:

Stephen C. Debboli
Attorney at Law
218 N. Jefferson Street, Suite 101
Chicago, IL 60661
Tel: (312) 207-0000
Fax: (312) 207-0755
Email: sdebboli@snnlaw.com

### Attorney for Thomas J. Dart:

Patricia Fallon, A.S.A.
Labor and Employment Section
Cook County State's Attorney's Office
500 Richard J. Daley Center
Chicago, IL 60602
Tel: (312) 603-7202
Fax: (312) 603-3000
Email: patricia.fallon@cookcountyil.gov

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT – CHANCERY DIVISION

FILED-3
2011 MAR 28 ⊃ 1: 38

DOROTHY BROWN
THE CIRCUIT COUR
Y DEPARTMEN

BRIAN GALLAGHER,

      Plaintiff,

v.

THOMAS J. DART, SHERIFF OF COOK COUNTY
COUNTY ILLINOIS; THE COOK COUNTY
MERIT BOARD; JAMES P. NALLY, CHAIRMAN;
VINCENT T. WINTERS, BOARDMEMBER;
PATRICK BRADY, BOARDMEMBER;
BRAY MATEO-HARRIS, BOARDMEMBER;
KIM R. WIDUP, BOARDMEMBER;
BRYON T. BRAZIER, BOARDMEMBER;
JENNIFER E. BAE, BOARDMEMBER and
JOHN J. DALICANDRO, BOARDMEMBER,

      Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 2017 CH 3707

## CERTIFICATION OF THE RECORD

I, Rosemarie Nolan, am the Executive Director of the Cook County Sheriff's Merit
Board. In that capacity I am in charge of the records contained in the Merit Board files.

I have examined the record for the case of **Brian Gallagher, Merit Board Docket
Number 1841,** and verify that the copy of the record bates stamp no. **MB 1 – MB 248** contained
herein is a complete, true and accurate copy of the record before the Cook County Sheriff's
Merit Board.

Rosemarie Nolan
Rosemarie Nolan

SUBSCRIBED AND SWORN TO

Before me this 24th day of

Mauch , 2017.

May Ann Nashsen

NOTARY PUBLIC

"OFFICIAL SEAL"
Mary Anne Nash Sebby
Notary Public, State of Illinois
My Commission Expires 10/22/2018'

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS $FILED \cdot 3$
COUNTY DEPARTMENT – CHANCERY DIVISION $2017$ MAR $28$ ⊃ $1: 38$

BRIAN GALLAGHER,                                      )
                                                      )                    DOROTHY BROWN
                                                      )                    THE CIRCUIT COU
                           Plaintiff,                 )                    ERY DEPARTMENT
                                                      )
              v.                                      )        No. 2017 CH 3707
                                                      )
THOMAS J. DART, SHERIFF OF COOK COUNTY                )
COUNTY ILLINOIS; THE COOK COUNTY                      )
MERIT BOARD; JAMES P. NALLY, CHAIRMAN;                )
VINCENT T. WINTERS, BOARDMEMBER;                      )
PATRICK BRADY, BOARDMEMBER;                           )
BRAY MATEO-HARRIS, BOARDMEMBER;                       )
KIM R. WIDUP, BOARDMEMBER;                            )
BRYON T. BRAZIER, BOARDMEMBER;                        )
JENNIFER E. BAE, BOARDMEMBER and                      )
JOHN J. DALICANDRO, BOARDMEMBER,                      )
                                                      )
                           Defendants.                )

## INDEX OF THE RECORD

NOW COMES, the COOK COUNTY SHERIFF'S MERIT BOARD, by their attorney
KIMBERLY M. FOXX, through Assistant State's Attorney Donald J. Pechous, and pursuant to
735 ILCS 5/3-108(b) and in answer to the Complaint files a certified copy of the record of
proceedings under review in this cause as follows:

| Page | Document |
|------|----------|
| MB 1 | Merit Board Docket Hearing Record (Docket Number 1841) |
| MB 2 | Copy of Certified Mail Receipt dated 2/2/17, and Return Receipt |
| MB 3-10 | Sheriff's Complaint in the Merit Board Case No. 1841, dated 10/19/15 |
| MB 11 | Letter to Brian Gallagher from John Koch, dated 10/19/15 |
| MB 12 | Certified Mail Receipt dated 10/19/15 |
| MB 13-15 | Notice of Filing and Motion for Discovery, dated 11/20/15 |
| MB 16 | Letter to Brian Gallagher from John Koch, dated 1/5/16 |

1

| MB 17-25 | Notice of Filing, Petitioner's Motion for Discovery, and Petitioner's Response to Respondent's Motion for Discovery, dated 4/18/16 |
| MB 26-27 | Notice of Filing and Motion for Continuance, dated 8/24/16 |
| MB 28 | Appearance of Stephen C. Debboli on behalf of Brian Gallagher, dated 9/8/16 |
| MB 29 | Copy of Certified Mail Receipt dated 12/5/16 |
| MB 30-153 | Report of Proceedings taken on September 20, 2016 |
| MB 154-234 | Sheriff's Exhibits 1 - 11 |
| MB 235-240 | Respondent's Exhibits R1 - R2 |
| ·MB 241 | Dissent on Decision dated 1/12/17 |
| MB 242-248 | Decision of the Cook County Sheriff's Merit Board, entered on February 7, 2017 |

DVD: OPR #2014-1036, Gallagher, Exhibit E
(Hand Deliver to Judge)

KIMBERLY M. FOXX
State's Attorney of Cook County

By:

Donald J. Pechous
Assistant State's Attorney

Attorney No. 10295
KIMBERLY M. FOXX
State's Attorney of Cook County
CONFLICTS COUNSEL UNIT
Donald J. Pechous, A.S.A
69 W. Washington St., Suite 2030
Chicago, IL 60602
Tel. (312) 603-1424

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| BRIAN GALLAGHER, | ) |
| | ) |
| Petitioner, | ) |
| | ) 17 CH 3707 |
| vs. | ) |
| | ) Hon. Sanjay T. Tailor |
| THOMAS J. DART, SHERIFF OF COOK | ) |
| COUNTY, *et al.*, | ) Calendar 9 |
| | ) |
| Respondents. | ) |

## APPEARANCE

The undersigned, as attorney, enters the appearance of Respondent, Cook County Sheriff.

John E. Murray
Assistant State's Attorney

KIMBERLY M. FOXX,  State's Attorney of Cook County
By:  John E. Murray, A.S.A.
Attorney for:  Cook County
Address:  50 West Washington, Suite 500
City:  Chicago, Illinois 60602
Telephone:  (312) 603-2381

I certify that a copy of the within instrument was served on all parties who have appeared and have not heretofore been found by the Court to be in default to plead.

John E. Murray

3331

ATTORNEY NO. 10295

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, CHANCERY DIVISION

BRIAN GALLAGHER,                         )
                                         )
     Petitioner,                    )
                                         )        17 CH 3707
    vs.                              )
                                         )        Hon. Sanjay T. Tailor
THOMAS J. DART, SHERIFF OF COOK          )
COUNTY, *et al.*,                        )        Calendar 9
                                         )
     Respondents.                   )

## NOTICE OF FILING

To:    Stephen C. Debboli
       218 N. Jefferson Street, Suite 101
       Chicago, Illinois 60661

       Donald J. Pechous
       CCSAO – CONFLICTS COUNSEL UNIT
       69 W. Washington Street, Suite 2030
       Chicago, Illinois 60602

     **PLEASE TAKE NOTICE** that on May 1, 2017, undersigned counsel filed with the Clerk of the Circuit Court of Cook County, County Department, Chancery Division, the attached *Appearance*, a copy of which are attached hereto and herewith served upon you

                **KIMBERLY M. FOXX**
                State's Attorney of Cook County

                John E. Murray
                Assistant State's Attorney
                Cook County State's Attorney's Office
                Labor and Employment Section
                50 W. Washington Street, Suite 500
                Chicago, Illinois 60602
                w (312) 603-2381
                f (312) 603-3000
                John.Murray@cookcountyil.gov

FILED
2017 MAY -1 AM 8:16
DOROTHY BROWN
CLERK

Chancery Division Civil Cover Sheet - General Chancery Section                    (Rev. 6/15/09) CCCH 0623

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

Brian Gallagher

**Plaintiff**

v.

Thomas F. Dart

**Defendant**

2017CH03707
CALENDAR/ROOM 09
TIME 00:00
NoAdmin Review

## CHANCERY DIVISION CIVIL COVER SHEET
## GENERAL CHANCERY SECTION

A Chancery Division Civil Cover Sheet - General Chancery Section shall be filed with the initial complaint in all actions filed in the General Chancery Section of Chancery Division. The information contained herein is for administrative purposes only. Please check the line in front of the appropriate category which best characterizes your action being filed.

| | | | | |
|---|---|---|---|---|
| 0005 ✓ | Administrative Review | | | |
| 0001 | Class Action | | | |
| 0002 | Declaratory Judgment | | | |
| 0004 | Injunction | | | |
| | | | | |
| 0007 | General Chancery | | | |
| 0010 | Accounting | 0019 | Partition | |
| 0011 | Arbitration | 0020 | Quiet Title | |
| 0012 | Certiorari | 0021 | Quo Warranto | |
| 0013 | Dissolution of Corporation | 0022 | Redemption Rights | |
| 0014 | Dissolution of Partnership | 0023 | Reformation of a Contract | |
| 0015 | Equitable Lien | 0024 | Rescission of a Contract | |
| 0016 | Interpleader | 0025 | Specific Performance | |
| 0017 | Mandamus | 0026 | Trust Construction | |
| 0018 | Ne Exeat | | Other (specify) | |

By: _____

Attorney                    Pro Se

Atty. No.: 25007
Name: SC DobGole
Atty. for: Petitioren
Address: 218 N. Jefferson
City/State/Zip: Ch fo IC 60661
Telephone: 312 207 0000

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

2129 - Served
2229 - Not Served
2329 - Served by Mail (This form replaces CCCH 0060)

(Rev. 8/23/01) CCG N600

## IN THE NAME OF THE PEOPLE OF THE STATE OF ILLINOIS
## COUNTY DEPARTMENT/ ___CHANCERY___ DISTRICT/DIVISION

BRIAN GALLAGHER

v.

THOMAS J. DART, SHERIFF OF COOK COUNTY, ET AL

Court Case No. 2017CH03707

CALENDAR/ROOM 09

Court Date: TIME 00:00

Admin Review

Court Time: _____ Room No.: _____

### SUMMONS IN ADMINISTRATIVE REVIEW

To each defendant:

YOU ARE SUMMONED and required to file an answer in this case or otherwise file your appearance in the office of the Clerk of this Court located at ☒ Chancery Division, Room 802 ☐ County Division, Room 1202, Richard J. Daley Center, 50 W. Washington Street, Chicago, Illinois 60602, within 35 days after the date of this summons.

This summons is served upon you by registered or certified mail pursuant to the provisions of 735 ILCS 5/3-101, et seq.

Atty. No.: ~~25009~~ 25009

Name: Stephen C. Debboli

Atty. for: Brian Gallagher

Address: 218 N. Jefferson Street S-101

City/State/Zip: Chicago, IL. 60661

Telephone: (312) 207-0000

WITNESS DOROTHY BROWN MAR 1 4 2017

_____

Clerk of Court

### CERTIFICATE OF MAILING

On _____, _____, I sent by registered mail a copy of this summons to each defendant addressed as follows:

| Defendant | Address |
|---|---|
| | Sheriff of Cook County |
| Thomas Dart | Rm. 704, Daley Ctr., Chgo, IL |
| Kim R. Widup Boardmember | Cook County Merit Board 69 W. Washington, Chgo, IL 60602 |
| Byron T. Brazier Boardmember | Cook County Merit Board 69 W. Washington, Chgo, Il 60602 |
| Jennifer E. Bae Boardmember | Cook County Merit Board 69 W. Washington, Chgo, IL 60602 |
| John J. Dalicandro Boardmember | Cook County Merit Board 69 W. Washington, Chgo, IL 60602 |

Dated: DOROTHY BROWN MAR 1 4 2017

_____

Clerk of Court

## DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

2129 - Served
2229 - Not Served
2329 - Served by Mail (This form replaces CCCH 0060)                    (Rev. 8/23/01) CCG N600

IN THE NAME OF THE PEOPLE OF THE STATE OF ILLINOIS
COUNTY DEPARTMENT/ CHANCERY          DISTRICT 2017L003707
                                              CALENDAR/ROOM 09
                                              TIME 00:00
BRIAN GALLAGHER                       Court Case No.: Admin Review

               v.                     Court Date: _____

THOMAS J. DART, SHERIFF OF COOK COUNTY, ET AL    Court Time:_____ Room No.: _____

## SUMMONS IN ADMINISTRATIVE REVIEW

To each defendant:

YOU ARE SUMMONED and required to file an answer in this case or otherwise file your appearance in the office of the Clerk of this Court located at ☒ Chancery Division, Room 802   ☐ County Division, Room 1202, Richard J. Daley Center, 50 W. Washington Street, Chicago, Illinois 60602, within 35 days after the date of this summons.

This summons is served upon you by registered or certified mail pursuant to the provisions of 735 ILCS 5/3-101, et seq.

Atty. No.: ~~25809~~ 25009              WITNESS: DOROTHY BROWN MAR 1 4 2017

Name: Stephen C. Debboli

Atty. for: Brian Gallagher

Address: 218 N. Jefferson Street  S-101              Clerk of Court

City/State/Zip: Chicago, IL 60661

Telephone: 312  207-0000

## CERTIFICATE OF MAILING

On _____, _____, I sent by registered mail a copy of this summons to each defendant addressed as follows:

| Defendant | Address |
|---|---|
| Cook County Merit Board | 69 W. Washington, Chicago, IL 60602 |
| James P. Nally - Chairman | Cook County Merit Board 69 W. Washington St., Chgo, IL 60602 |
| Vincent T. Winters - Boardmember | Cook County Merit Board 69 West Washington, Chgo, IL 60602 |
| Patrick Brady - Boardmember | Cook County Merit Board 69 W. Washington, Chgo, IL 60602 |
| Bray Mateo-Harris - Boardmember | Merit Board 69 W. Washington, Chgo, IL 60602 |

Dated: DOROTHY BROWN MAR 1 4 2017

_____
Clerk of Court

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

IN THE CIRCIUT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

BRIAN GALLAGHER,                          )
                                          )
                    Plaintiff,            )
                                          )
            vs.                           )    No.: ~~1~~
                                          )
THOMAS J. DART, SHERIFF OF COOK           )
COUNTY ILLINOIS; THE COOK                 )
COUNTY MERIT BOARD; JAMES P.              )
NALLY, CHAIRMAN; VINCENT T.               )          2017CH03707
WINTERS, BOARDMEMBER; PATRICK             )          CALENDAR/ROOM 09
BRADY, BOARDMEMBER; BRAY                  )          TIME 00:00
MATEO-HARRIS, BOARDMEMBER;                )          Admin Review
KIM R. WIDUP, BOARDMEMBER;                )
BRYON T. BRAZTER,                         )
BOARDMEMBER; JENNIFER E. BAE,             )
BOARDMEMBER and JOHN J.                   )
DALICANDRO, BOARDMEMBER,                  )
                                          )
                    Defendant.            )

## COUNT I
### PETITION FOR ADMINISTRATIVE REVIEW

NOW COMES the Plaintiff, Brian Gallagher, by and through his attorney, Stephen C.

Debboli, and pursuant to the Administrative Review Act, 735 ILCS 5/3-101, et seq, complaining

of the Defendants, THOMAS J. DART, THE COOK COUNTY MERIT BOARD, JAMES P.

NALLY, VINCENT T. WINTERS, PATRICK BRADY, BRAY MATEO-HARRIS, KIM R.

WIDUP, BYRON T. BRAZTER, JENNIFER E. BAE AND JOHN J. DALICANDRO, alleges

and says as follows:

1.      Brian Gallagher was appointed a Cook County Court Services Deputy Sheriff on

April 19, 1995.

2.      Since 2005, Brian Gallagher has been assigned to the George N. Leighton

Criminal Court Building located at 2650 S. California Avenue, Chicago, IL 60608.

1

3.     In 2003, Brian Gallagher underwent gastric bypass surgery which resulted in continuing medical problems. Necessitating his taking time off of work.

4.     In 2003, Brian Gallagher applied for and was granted leave under the Family Medical Leave Act (29 U.S.C. Section 2601 et seq.).

5.     Brian Gallagher has applied for and been granted status under the Family Medical Leave Act every year since 2003 up until his suspension in March of 2016.

6.     In 2014, Brian Gallagher underwent a full left adrenalectomy which left him with additional continuing medical problems necessitating his taking time off of work.

7.     The Sheriff, Thomas J. Dart filed a complaint with the Cook County Sheriff's Merit Board seeking termination of Brian Gallagher for alleged violations of the Rules and Regulations and the General Orders of the Cook County Sheriff's Department.

8.     The Complaint alleged that Brian Gallagher had unauthorized absences from schedule shift from August 31, 2012 through October 30, 2014.

9.     Brian Gallagher was suspended without pay from the Sheriff's office pending resolution of the Complaint filed with the Sheriff's Merit Board.

10.    Brian Gallagher contested the allegations in the Complaint.

11.    An Evidentiary Hearing on this matter was held on September 20, 2016 wherein Brian Gallagher testified that he had applied and been granted FMLA Status since 2003 and that he had used FMLA days for the alleged unauthorized absences in accordance with the policies and procedures of the Sheriff's office.

12.    On February 7, 2017 the Cook County Sheriff's Merit Board issued its ruling and order that Brian Gallagher be separated from his employment effective October 16, 2015. A copy is attached hereto as Exhibit "A".

2

13.     The findings of the Merit Board lack a sufficient factual basis for the imposition

of the sanction of termination and was against the manifest weight of the evidence and the

imposition of the sanction of termination is arbitrary and not reasonable in light of all the

evidence.

WHEREFORE, the Petitioner, Brian Gallagher, respectfully requests that this Honorable

Court order the Merit Board to vacate its Order of February 7, 2017 and reinstate Brian

Gallagher as an employee of the Cook County Sheriff's Department; to order the Sheriff's Office

to pay Brian Gallagher for his lost wages while in suspension and for costs of this suit and for

such other relief as this Court deems just and equitable.

Respectfully submitted,

Brian Gallagher

By: _____
                One of his attorneys

Stephen C. Debboli
218 N. Jefferson Street S-101
Chicago, IL 60661
Attorney No. 25009
(312) 207-0000

3

# COOK COUNTY SHERIFF'S MERIT BOARD

Sheriff of Cook County        )
                              )
vs.                           )        Docket # 1841
                              )
Brian Gallagher               )
Deputy Sheriff                )

## DECISION

THIS MATTER COMING ON to be heard before Merit Board Member John J. Dalicandro pursuant to notice, the Cook County Sheriff's Merit Board finds as follows

**Jurisdiction**
The Respondent, Brian Gallagher, hereinafter "Respondent". Respondent's position as a Cook County Deputy Sheriff involves duties and responsibilities to the public; and
Each member of the Cook County Sheriff's Merit Board, hereinafter "Board," has
been duly appointed to serve as a member of the Board pursuant to confirmation by the Cook County Board of Commissioners, State of Illinois, to sit for a stated term; and
The Board has jurisdiction of the subject matter of the parties in accordance with Chapter 55 of the Illinois Compiled Statutes; and
The Respondent was personally served with a copy of the Complaint and Notice of Hearing and did appear before the Board to contest the charges contained in the complaint; and
The Board has heard the evidence presented by the Sheriff and the Respondent, and evaluated the credibility of the witnesses and supporting evidence. After considering the evidence, the Board finds as follows:

**Background**
By complaint dated October 16, 2015. Sheriff Thomas J. Dart, sought the termination of Brian Gallagher, the Respondent. The Sheriff is seeking termination from the Cook County Sheriff's Office for the alleged violations of the Rules and Regulations of the General Orders of the Cook County Sheriff's Department.

In support, thereof, the Sheriff states as follows:

1. That on April 19, 1995, the Respondent was appointed a Deputy Sheriff.
2. That as of 2005, Respondent was assigned to the George N. Leighton Criminal Court Building, located at 2650 South California Avenue, Chicago, Illinois 60608.
3. That Respondent was absent from scheduled work shifts and the absences were unauthorized for at least six (6) occurrences between August 31, 2012 and October 30, 2014, in violation of Sheriff's Order 11.4.1.1 as set forth below:
    a. That Respondent's first occurrence of unauthorized absences occurred on August 31, 2012, consisting of eight (8) hours of No Vacation Time ("NVT").
    b. That Respondent's second occurrence of unauthorized absences occurred on September 10, 2012, consisting of eight (8) hours of NVT.



    c.   That Respondent's third occurrence of unauthorized absences occurred on January 28, 2013, consisting of eight (8) hours of No Sick Time ("NST").

    d.   That Respondent's fourth occurrence of unauthorized absences occurred on June 7, 2013, consisting of two (2) hours of NST.

    e.   That Respondent's fifth occurrence of unauthorized absences occurred on August 18, 19, 20 and 21, 2014, consisting of thirty-two (32) hours of NST.

    f.   That Respondent's sixth occurrence of unauthorized absences occurred on October 29 and 30, 2014, consisting of sixteen (16) hours of NST.

    g.   That Respondent continued to incur unauthorized absences and was absent from scheduled work shifts a total of two (2) additional occurrences, as set forth below:

        a.   That Respondent was absent NVT on December 3 and 4, 2014 (16 hours).

        b.   That Respondent was absent NST on December 8, 2014 (8 hours).

4.   That on September 14, 2012, Respondent attended a counseling session after his first occurrence of unauthorized absences, which occurred on August 31, 2012. At this counseling session, Respondent was counseled on Sheriff's Order 11.4.1.1, Unauthorized Absence Policy, as well as the steps in the levels of progressive discipline and available leave options.

5.   That on September 25, 2012, Respondent received an Unauthorized Absence Disciplinary Action Form ("DAF"), SPR12-2130, recommending a written reprimand for the unauthorized absence that occurred on September 10, 2012.

6.   That on March 22, 2013, Respondent's grievance #12-U-086 related to SPR12-2130 for the unauthorized absence that occurred on September 10, 2012 was denied after a 3rd Step Grievance hearing.

7.   That on February 13, 2013, Respondent received an Unauthorized Absence DAF, SPR13-0350, recommending a 1-day suspension for the unauthorized absence that occurred on January 28, 2013.

8.   That on March 22, 2013, Respondent's grievance #13-U-042 related to SPR13-0350 for the unauthorized absence that occurred on January 28, 2013 was denied after a 3rd Step Grievance hearing.

9.   That on April 2, 2014, Respondent received an Unauthorized Absence DAF, SPR13-1357, recommending a 3-day suspension for the unauthorized absence that occurred on June 7, 2013,

10.   That on May 21, 2014, Respondent's grievance #14-U-049 related to SPR13-1357 for the unauthorized absence that occurred on June 7, 2013 was denied after a 3rd Step Grievance hearing.

11.   That on September 10, 2014, Respondent received an Unauthorized Absence DAF, SPR14-2108, recommending a 5-day suspension for the unauthorized absences that occurred on August 18, 19, 20 and 21, 2014.

12.   That on January 14, 2015, Respondent's grievance #14-DI-14910-NYLB related to SPR14-2108 for the unauthorized absences that occurred on August 18, 19, 20 and 21, 2014 was denied after a 3rd Step Grievance hearing.

13.   That by his actions, Respondent violated the Rules and Regulations and General Orders of the Cook County Sheriff's Court Services Department, specifically:

SHERIFF'S ORDER 11.4.1.1 (effective date July 1, 2012)
UNAUTHORIZED ABSENCE, in its entirety, including but not limited to, the following subparts:

        II.   POLICY

        It is the policy of the Cook County Sheriff's Office (CCSO) to prohibit CCSO employees from incurring Unauthorized Absences. Unauthorized Absences exacerbate absenteeism problems and strain the operations and employees of the CCSO. CCSO

employees receive benefit time and have a variety of leave options available to cover the need for short-term and long-term absences. Therefore, even if an employee is legitimately ill or has some other reasonable excuse for being absent, the employee must obtain an appropriate Authorized Status(es) prior to or immediately after the need for the absence(s).

V.    DEFINITIONS
      C.    Occurrence – For purposes of determining progressive discipline, an Occurrence as used in this Order is either:
            1. An Unauthorized Absence that lasts from one (1) hour to one (1) single work day and where the employee returns to work the next working day; or
            2. An Unauthorized Absence that lasts between two (2) and five (5) consecutive work days.
            For instance, if an employee has one (1) Unauthorized Absence day and returns to work the next work day, then that will be considered one (1) Occurrence; if an employee has five (5) consecutive Unauthorized Absences in a row, that will be considered one (1) Occurrence; if an employee has thirteen (13) consecutive Unauthorized Absences, that will be considered three (3) occurrences.

VII.    DISCIPLINARY PROCEDURES FOR EMPLOYEES WITH UNAUTHORIZED ABSENCE(S)

      A.    Disciplinary procedure for employees without a Rolling Calendar clause in their applicable CBA will be progressive and will be in accordance with the applicable CBA.

GENERAL ORDER 3401.1 (effective date March 15, 2001)
RULES OF CONDUCT, in its entirety, including but not limited to, the following subparts:

V.    RESPONSIBILITY
      It is the responsibility of every member of the C.S.D. to conform to the rules of conduct.
U.    Tour of Duty: Attendance, Availability and Reporting
      1.    Members will report for duty at the time and place required or report their inability to do so by notifying their supervisor or the appropriate office one hour prior to the beginning of their tour of duty. No member shall be absent without leave. Absent without leave shall mean either a failure to report for duty or leaving their assigned duty post during a tour of duty without being properly relieved, except when authorized by proper authority. Members shall be punctual in reporting for duty; habitual failure to report promptly shall be deemed neglect of duty. Members will be physically and mentally fit to perform their duties. They will be properly equipped and cognizant of information required for the proper performance of duty so that they may immediately assume their duties. Judicial subpoenas will constitute an order to report for duty under this section.

SHERIFF'S ORDER 11.2.20.0 (effective date January 25, 2013)
RULES OF CONDUCT, in its entirety, including but not limited to, the following subparts:

      VI.    RULES AND REGULATIONS FOR ALL SWORN AND CIVILIAN CCSO EMPLOYEES
      A. Compliance with Laws, Ordinances, and Regulations

2, Employees shall comply with lawful rules, Sheriff's Office written directives, verbal orders, SEAM articles, and political prohibitions issued by the proper authorities.

E. Duty functions.

CCSO employees shall:

1. Maintain sufficient competence to properly perform the duties and responsibilities of their positions. Unsatisfactory performance shall not be allowed.

b. Unsatisfactory performance may be demonstrated by:
vi. Absence without leave.

SHERIFF'S ORDER 11.2.20.1 (effective date March 12, 2015)
CONDUCT POLICY, in its entirety, including but not limited to, the following subparts:

IV. COMPLIANCE WITH ALL LAWS, ORDINANCES AND REGULATIONS

Members shall respect and protect the civil and legal rights of all individuals; uphold the constitutions of the United States and the State of Illinois; obey all applicable federal, state and local laws; comply with court decisions and orders of courts having jurisdiction; and comply with lawful rules, written or verbal orders, SEAM articles, policies and procedures issued by the CCSO or by any supervisor.

VI. CONDUCT WHICH MAY RESULT IN DISCIPLINE

The following list of causes for disciplinary action constitutes a portion of the disciplinary standards of the CCSO. This list is not intended to cover every possible type of misconduct and does not preclude the recommendation of disciplinary action for specific action or inaction that is detrimental to efficient service. Conduct which may result in discipline includes but is not limited to the following:

A. Attendance.

b. Unexcused or unauthorized absence or tardiness on scheduled day(s) of work.

Furthermore, the Respondent's actions violated the Rules and Regulations of the County Sheriff's Merit Board, specifically:

COOK COUNTY SHERIFF'S DEPARTMENT MERIT BOARD RULES AND REGULATIONS, in its entirety, including but not limited to, the following subparts:

Article X, Paragraph B

No Police Officer of the Cook County Sheriff's Police Department, Correctional Officer of the Cook County Department of Corrections or any Deputy Sheriff of the Cook County Sheriff's Court Services Department shall:

3. violate any of the general orders, special orders, directives, or rules and regulations of the Cook County Sheriff's Office.

WHEREFORE, THOMAS J. DART, Sheriff of Cook County, maintains that the Respondent, by his conduct, has violated the Rules and Regulations of the Cook County Sheriff's Merit Board, and respectfully requests this Board to hold a hearing on the charges as set forth in the complaint, pursuant to statute, and on proof of said charges, or any part thereof, the Board shall make a finding of guilty and order the Respondent removed from the Cook County Sheriff's Office.

**Findings of Fact:** Evidentiary hearing on this matter was held on September 20, 2016. Present were Assistant State's Attorneys John Murray, Mark Hara on behalf of the Sheriff and Miriam Santiago, Assistant General Counsel for the Sheriff of Cook County. Daniel Mahoney and Stephen Debboli appeared on behalf of Respondent Brian Gallagher.

Three witnesses testified for the Sheriff, Helen Cohn, John Harrington and Georgia Garcia. Respondent Brian Gallagher testified.

**Direct Examination** Helen Cohn testified, she is employed at the Cook County Sheriff's Department. She is the Director of the Payroll Department. Employees are only allowed to call in for medical as well as FMLA time. They cannot call in for personal or vacation time. Non- medical time must be called in or requested 72 hours in advance based on their CBA.
In her review of Deputy Brian Gallagher's time card.
August 31, 2012, 8 hours of No Vacation Time 0.
September 10, 2012, 8 hours of No Vacation Time 0.
January 28, 2013, 8 hours of No Sick Time 0.
June 7, 2013, 2 hours of No Sick
August 18, 2014, 8 hours of No Sick Time 0.
August 21, 2014, 8 hours of No Sick Time 0.
October 29, 2014, 8 hours of No Sick Time 0.
October 30, 2014, 8 hours of No Sick Time 0.
December 3, 2014, 8 hours of No Vacation Time 0.
December 4, 2014, 8 hours of No Vacation Time 0.
December 8, 2014, 8 hours of No Sick Time 0.

Family Medical Leave Act, FMLA for an employee to qualify for FMLA, they need 1250 hours working hours. If an employee runs out of FMLA time, they can recertify once they work the 1250 hours. None of the dates above reference FMLA. He was granted FMLA September 22, 2012 to September 22, 2013 for intermittent use, five days a month and it must be used in an eight-hour block of time.

**Cross Examination** Helen Cohn testified, that Mr. Gallagher was also approved for FMLA from December 15, 2014. The records show that each year he applies for FMLA, and then he is approved for FMLA.
September 11, 2012, 8 hours of FMLA
September 17, 2012, 8 hours of FMLA- 0, these are excused absences.

June 7th, 2013, NST 2, which meant no sick time for two hours. The day before Mr. Gallagher went on an ordinary disability. It is the policy of the Sheriff's Department that before an employee can go on a disability they need to exhaust all their benefit time.

**Direct Examination** John Harrington testified. He is employed by the Cook County Sheriff's Office, Director of Attendance Review. He informs employees of infractions that violate the General Order of Unauthorized Absences.
There are unauthorized absences when a Cook County Sheriff's employee is absent from work and does not have the requested benefit time to support that absence. If an employee has a legitimate medical excuse, they do have options available to correct their unauthorized status. There's an administrative process available to an employee who has violated the General Order attendance policy. Mr. Gallagher was issued a Disciplinary Action Form. He was given counseling by Sean Heffernan in September of 2012. Mr. Gallagher went through the grievance procedure for his unauthorized absences. It is the

responsibility of the employee to ensure that they have enough time before they end up in unauthorized status.

**Cross Examination** John Harrington testified that on February 24 to 28, 2014 the time card reflects a 5th Occurrence, and then the 5th Occurrence also becomes August 18 to 21, 2014. After the 6th Occurrence, "A complaint register shall be submitted to the Office of Professional Review seeking termination." The Collective Bargaining Agreement for the Illinois FOP Labor Council and the Sheriff's Office allows another step after the 3rd step for arbitration. There is not a final decision made until the case goes before an arbitrator.

**Direct Examination** Georgia Garcia testified, she is employed by the Cook County Sheriff's Office, Office of Professional Review as an Investigator. She was assigned to investigate Officer Brian Gallagher. She interviewed Officer Gallagher and during his interview there was no dispute whether he was ill, the issue was he didn't have enough accrued benefit time to cover his absences.

**Cross Examination** Investigator Garcia testified, that Mr. Harrington, was the complainant in this case. He submitted a memorandum, a signed affidavit seeking the termination of Mr. Gallagher.

**Direct Examination** Brian Gallagher the respondent testified, he is employed by the Cook County Sheriff's Department as a Deputy Sheriff. He started on April 19, 1995. He has used FMLA time since 2003. He is familiar with all the documents necessary to be completed for the use of FMLA time. In 2013 he had surgery and was not approved for FMLA leave until December 15, 2014. He would call in to the call center and use whatever fringe time that was available including FMLA time. His time card would be corrected to change the status of the time taken.

August 31, 2012 NVT, no vacation time. Counseling given.

September 10, 2012 NVT no vacation time may have been FMLA and not properly marked by Sheriff's Department

September 11, 2012 FMLA-A

September 17, 2012, FMLA 0. .

Mr. Gallagher was authorized to use 5 days per month for FMLA time.

January 28, 2013 NST-0 no sick time

January 29, 2013 FMLA-0

January 30, 2013 FMLA-0

There are no allegations of unauthorized absences for February, March, April, and May of 2013.

June 7, 2013 NST-2/6. He was using his time before going on disability. He was disability for 10 months. He returned to work on March 4, 2014. He was unable to apply for FMLA leave at this time. He did not work the 1250 hours' requirement.

August 18, 19, 20, 21, 2014 were entered as NST no sick time. He took those days off due to his FMLA condition. He used regular vacation days for August 12 and 13, 2014.

October 29 and 30, 2014 NST no sick time. Those days were also related to his FMLA condition.

December 3 and 4, 2014 NVT, no vacation time.

December 8, 2014 NST no sick time.

Mr. Gallagher testified that these days were due to his FMLA condition. On December 5, 2014, he was granted FMLA leave time.

Cross Examination Brian Gallagher Respondent testified, he has worked for 21 years and he has used FMLA since 2003. He is familiar with the FMLA application process and re-certification process. In August 2012, he exceeded 5 FMLA days. He used 6 total which relates to the August 31, No Vacation Time.

September 10, 2012, NVT no vacation time, he was not approved for FMLA until September 22, 2012. August 18-21, 2014, October 29 and 30, 2014, December 3-4, 2014, and December 8, 2014. These dates he did not have FMLA approval.

He did file grievances related to his unauthorized absences. All of his grievances were denied.

Findings of Fact: Officer Brian Gallagher did violate the Cook County Sheriff's Rules and Regulations stated in the complaint. The evidence clearly sustains the charges filed against him. The mitigating factor in this decision is concerning his use of FMLA leave. The dispute is not whether he was ill at the time of his absences. He has taken absences that he didn't have enough accrued benefit time to cover. The fact that the grievance procedure was also followed and all of them were denied, also shows that clearly, he was giving an opportunity to contest the unexcused absences.

Conclusions of Law: Based on the evidence presented, and after assessing the credibility of witnesses and the weight given by the evidence in the record, the Merit Board finds that the Respondent did violate the Cook County Sheriff's Department Rules and Regulations.

Order: Wherefore, based on the foregoing, it is hereby ordered that the Sheriff's request to terminate and remove Brian Gallagher, respondent, from the Cook County Sheriff's Office is granted effective October 16, 2015.

James P. Nally, Chairman

Vincent T. Winters, Board Member

Patrick Brady, Board Member

Gray Mateo-Harris, Board Member   _dissenting_

Kim R. Widup, Board Member

Byron T. Brazier, Board Member

Jennifer E. Bae, Board Member

John J. Dalicandro, Board Member

Dated: February 7, 2017

## COOK COUNTY SHERIFF'S MERIT BOARD

SHERIFF OF COOK COUNTY )
)
vs. ) Docket No. 1841
)
BRIAN GALLAGHER, )
Deputy Sheriff )

### DISSENT ON DECISION

I write in dissent of the decision issued by the Board regarding Respondent Brian Gallagher ("Respondent") as to the discipline issued. The Sheriff requested that Respondent be terminated for incurring an excess of six unauthorized absences in violation of Sheriff's Order 11.4.1.1 and related rules. Such absences allegedly include: August 31, 2012 (#1); September 10, 2012 (#2); January 28, 2013 (#3); June 7, 2013 (#4); August 18-21, 2014 (#5); October 29-30, 2014 (#6); December 3-4, 2014 (#7); and December 8, 2014 (# 8). However, for the following reasons, it does not appear that the Sheriff met its burden of proof in this matter:

1. The September 10, 2012 (#2) absence may have been an FMLA-covered absence given that the very next day, September 11, 2012, Respondent had an FMLA-covered absence.

2. The June 7, 2013 (#4) two-hour absence may be unsubstantiated given that Respondent went on disability starting June 8, 2013. The record does not establish why the requirement that Respondent exhaust existing benefit time resulted in a two-hour unauthorized absence on June 7th under the applicable circumstances.

3. The record is unclear as to precisely when Respondent became eligible for FMLA in early December 2014. Given that FMLA leave can be applied retroactively to the first date the employee becomes eligible for such leave, there is uncertainty as to Respondent's actual first date of FMLA eligibility in December 2014. Accordingly, it is possible that the December 3-4, 2014 (#7) and December 8, 2014 (#8) absences may have been FMLA-covered absences.

Given that the employer bears the burden of proof in this matter, I would err in favor of finding that there is no evidence of 6 unauthorized absences. Indeed, the record supports a finding of only 4 unauthorized absences. The Complaint should therefore be denied.

Gray I. Mateo-Harris, Board Member

01.12.17

Date

28316831.1

Order                                                              (Rev. 02/24/05) CCG N002

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

GALLAGHER

v.

No. 17 CH 3707

DART, etal.

### ORDER

This cause coming to be heard on Status, with Counsel for the Parties present IT IS HEREBY ORDERED:

(1) Status regarding Defendants Responsive Pleading to occur on November 16, 2017 at 9:30AM

(2) Defendants to answer or otherwise plead on or before November 7, 207.

Attorney No.: 10095
Name: ASA Jon E. MURRAY
Atty. for: Dart
Address: 50 W. Washington 500
City/State/Zip: Chicago IL 60602
Telephone: (312) 603-2387

**ENTERED:**

Dated: ENTERED
JUDGE SANJAY TAILOR-1870
OCT 10 2017
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

Judge                                              Judge's No.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Order                                                              (Rev. 02/24/05) CCG N002

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

GALLAGHER
       v.

No. 17-CH 3707

DART, et al.

ORDER

This cause coming to be heard for Status, with
Counsel for Sheriff Dart and Merit Board present, IT IS HEREBY
ORDERED:

(1) Petitioner shall file his amended
complaint on or September 14, 2017;

(2) Status hearing To be held on September
21, 2017, at 9:30 AM.

(Dates) —

Attorney No.: 10295

Name: ASA John MURPHY

Atty. for: Sheriff Dart

Address: 50 W. Washington #500

City/State/Zip: Chicago, IL 60602

Telephone: (312) 603-2381

ENTERED:

Dated:

**ENTERED**
JUDGE SANJAY TAILOR-1870

AUG 24 2017

DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

Judge                                     Judge's No.

## IN THE CIRCIUT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

BRIAN GALLAGHER, )
)
Plaintiff, )
)
vs. ) No.: 17 CH 03707
)
THOMAS J. DART, SHERIFF OF COOK )
COUNTY ILLINOIS; THE COOK COUNTY )
MERIT BOARD; JAMES P. NALLY, )
CHAIRMAN; VINCENT T. WINTERS, )
BOARDMEMBER; PATRICK BRADY, )
BOARDMEMBER; BRAY MATEO-HARRIS, )
KIM R. WIDUP, BOARDMEMBER; BRYON )
T. BRAZTER, BOARDMEMBER; JENNIFER )
E. BAE, BOARDMEMBER and JOHN J. )
DALICANDRO, BOARDMEMBER, )
Defendant. )

## *Agreed* AMENDED ORDER

THIS CAUSE coming to be heard on Status with counsel for the Parties present.

IT IS HEREBY ORDERED:

1. Petitioner/Plaintiff to file his Amended Complaint on or before July 27, 2017; and

2. Status Hearing to be held on August 24, 2017, at 9:30 am.

3. Status Hearing set for July 12, 2017, at 9:30 am is stricken.

Attorney No.: 25009
Stephen C. Debboli                    ENTERED:
Attorney for Brian Gallagher
218 N. Jefferson Street S-101          DATE:
Chicago, IL 60661
(312) 207-0000                         JUDGE SANJAY TAILOR

ENTERED
JUDGE SANJAY TAILOR - 1870
JUL 07 2017
DOROTHY BROWN
CLERK OF THE CIRCUIT COUR
OF COOK COUNTY, IL
DEPUTY CLERK

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Order                                            (Rev. 02/24/05) CCG N002

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

GALLAGHER

v.

MART, et al.                                No. 17 C# 3707

### ORDER

This cause coming to be heard on status, with Counsel for the Parties present. IT IS HEREBY ORDERED:

(1) Petitioner/Plaintiff to file his Amended Complaint on or before July 27, 2017; and

(2) Status hearing to be held on August 24, 2017, at 9:30 AM.

Attorney No.: 10295

Name: ASA John E. MURRAY

Atty. for: Sheriff Tom hart

Address: 50 W. Washington #500

City/State/Zip: Chicago, IL 60602

Telephone: (312) 603-2389

ENTERED:

Dated:

ENTERED
JUDGE SANJAY TAILOR-1870

JUL 06 2017

DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

Judge                    Judge's No.

Order                                                           (Rev. 02/24/05) **CCG N002**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Diana Gallagher

v.

No. 17 CH 3707

Thomas Dust

**ORDER**

This matter coming to be heard for Status
and the plaintiff requesting leave to file an
Amended Complaint and the Court being fully
Advised in the premises ordered that the
plaintiff is given leave to file his Amended Complaint
will do so on or by 4/1 2017, defendants
Are given a 8 day character to the Amended Complaint
Pleading on or by 6/29/17 the cause is
set for Status on July 6, 2017 at 9:30 am

Attorney No.: __5609__
Name: __S. Dobbali__
Atty. for: __S. Dill__
Address: __10 W Jefferson__
City/State/Zip: __Chicago Il 60661__
Telephone: __312 -207 0000__

**ENTERED:**

Dated: _____

JUDGE SANJAY TAILOR-1870

MAY 0 4 2017

Judge _____ Judge's No.

ENTERED
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Order  (Rev. 02/24/05) CCG N002

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

_Ban Hallahan_

v.

No. _17 M 3763_

_Thomas J Dant_

**ORDER**

_This matter coming to be heard on the Plaintiffs
motion to reinstate Natural Mortgage and th court being fully
advised the motion is withdrawn and the matter is
continued to May 4, 2017 at 930_

Attorney No.: _25 647_

Name: _N E Lebkke_

Atty. for: _Plaintiff_

Address _12 N 3 Dearborn_

City/State/Zip: _Chi_

Telephone: _312_

**ENTERED:**

ENTERED
JUDGE SANJAY TAILOR-1870

Dated:  APR 2 4 2017

DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

Judge  Judge's No.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| BRIAN GALLAGHER, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 17 CH 3707 |
| | ) |
| THOMAS J. DART, *et al.* | ) Hon. Sanjay T. Tailor |
| | ) Calendar 9 |
| Respondents. | ) |

## AGREED ORDER

THIS MATTER coming to be heard upon the Motion to Reinstate Medical Insurance Coverage of Plaintiff, BRIAN GALLAGHER, being agreed upon between Attorney Steven C. Debboli and Assistant State's Attorney John E. Murray, all parties having notice and agree that the Motion shall be heard before the Honorable Sanjay T. Tailor in Room 2008 on Monday, April 24, 2017, at 9:00 a.m., IT IS HEREBY ORDERED:

1. Petitioner's Motion to Reinstate Medical Insurance Coverage shall be heard before the Honorable Sanjay T. Tailor in Room 2008 on Monday, April 24, 2017, at 9:00 a.m.

ENTERED:

Hon. Sanjay JUDGE SANJAY TAILOR - 1870

APR 19 2017

DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL.
DEPUTY CLERK

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

BRIAN GALLAGHER,        )
                              )
          **Plaintiff.**     )
                              )
    vs.                           )     No.: 17 CH 03707
                              )
THOMAS J. DART, SHERIFF OF COOK     )
COUNTY ILLINOIS; THE COOK COUNTY     )
MERIT BOARD; JAMES P. NALLY,        )
CHAIRMAN; VINCENT T. WINTERS,       )
BOARDMEMBER; PATRICK BRADY,       )
BOARDMEMBER; BRAY MATEO-HARRIS, )
KIM R. WIDUP, BOARDMEMBER; BRYON )
T. BRAZTER, BOARDMEMBER; JENNIFER )
E. BAE, BOARDMEMBER and JOHN J.      )
DALICANDRO, BOARDMEMBER,       )
                   **Defendant.**    )

## AGREED ORDER

THIS MATTER, coming to be heard upon the Motion to Reinstate Medical Insurance

Coverage of the Plaintiff, BRIAN GALLAGHER, being agreed upon between attorney Stephen

C. Debboli and attorney Donald Pechous, all parties having notice and agree that matter shall be

heard before the Honorable Sanjay Tailor in Room 2008 on April 21st, 2017 at 9:30 am,

IT IS HEREBY ORDERED THAT:

Brian Gallagher's Motion to Reinstate Medial Insurance Coverage shall be heard by

Judge Sanjay Tailor in Room 2008 on April 21st, 2017 at 9:30 am.

ENTER:

_____

JUDGE

04/17/2017 15:04 FAX 312 603 9818 ⬛004
04/17/2017 13:86 #646 P.002/005

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| BRIAN GALLAGHER, | ) | |
| | ) | CIRCUIT COURT OF COOK COUNTY V. ILLINOIS CHANCERY DIV. |
| Plaintiff, | ) | |
| | ) | SUPRISING DOROTHY BROWN CLERK |
| vs. | ) | No.: 17 CH 03707 |
| | ) | |
| THOMAS J. DART, SHERIFF OF COOK | ) | |
| COUNTY ILLINOIS; THE COOK | ) | |
| COUNTY MERIT BOARD; JAMES P. | ) | |
| NALLY, CHAIRMAN; VINCENT T. | ) | |
| WINTERS, BOARDMEMBER; PATRICK | ) | |
| BRADY, BOARDMEMBER; BRAY | ) | |
| MATEO-HARRIS, BOARDMEMBER; | ) | |
| KIM R. WIDUP, BOARDMEMBER; | ) | |
| BRYON T. BRAZIER, | ) | |
| BOARDMEMBER; JENNIFER E. BAE, | ) | |
| BOARDMEMBER and JOHN J. | ) | |
| DALICANDRO, BOARDMEMBER, | ) | |
| | ) | |
| Defendant. | ) | |

## MOTION TO REINSTATE MEDICAL INSURANCE COVERAGE

NOW COMES the Plaintiff, Brian Gallagher, by and through his attorney, Stephen C.

Debboli, and moves this Court for the entry of an Order compelling the Defendant, Thomas J.

Dart, Sheriff of Cook County to reinstate the Medical Insurance Health Coverage for the

Plaintiff, Brian Gallagher and in support thereof states as follows:

1. Brian Gallagher was appointed a Cook County Court Services Deputy Sheriff on

April 19, 1995.

2. A Complaint was filed with the Cook County Sheriff's Merit Board seeking

termination of Brian Gallagher for alleged violations of the Rules and Regulations and the

General Orders of the Cook County Sheriff's Department regarding unauthorized absences.

3. Brian Gallagher was suspended without pay from the Sheriff's office pending

resolution of the complaint filed with the Sheriff's Merit Board.

1.

04/17/2017 15:04 FAX 312 803 9616      @006

4.     Brian Gallagher contested the allegations in the Complaint and an Evidentiary Hearing on this matter was held on September 20, 2016.

5.     On February 7, 2017, the Cook County Sheriff's Merit Board issued its ruling and ordered that Brian Gallagher be separated from his employment effective October 16, 2015.

6.     On March 14, 2017, Brian Gallagher filed a Petition for Administrative Review with this Court.

7.     On or about March 28, 2017 the Defendants filed their Appearance and Answer to Complaint.

8.     Brian Gallagher suffers from a myriad of medical problems and is under the treatment of several different physicians.

9.     Brian Gallagher has applied for and been granted status under the Family Medical Leave Act every year since 2003 up until his suspension in March of 2016.

10.     Brian Gallagher has been maintaining his and his family's medical insurance coverage by paying the premium to the Sheriff's office.

11.     On April 10, 2017, Brian Gallagher went to his local pharmacy to pick up a renewed prescription and was advised that he would have to contact the Human Resources Department of the Sheriff's office.

12.     When he contacted the Human Resources Department of the Sheriff's office he was advised that his coverage had been canceled as a result of his termination.

13.     Obviously this puts an undo and unnecessary burden on the Plaintiff while he seeks Administrative Review of the Merit Board's decision.

14.     He has been forced to cancel several doctors' appointments and is going to have to go without his necessary and needed medication.

2

15. Brian Gallagher is willing and able to continue to pay the premiums for his and his family's health coverage during the pendency of this suit.

16. At the very least the Plaintiff should be entitled to maintain his health insurance coverage pursuant to the Comprehensive Omnibus Budget Reconciliation Act (COBRA), 29 U.S.C. Section 1161 et seq.

WHEREFORE the Plaintiff, Brian Gallagher, asks this Court to enter an Order compelling the Defendant, Thomas J. Dart, Sheriff of Cook County to reinstitute the Plaintiff's Family Medical Insurance Coverage during the pendency of this suit; and direct the Plaintiff to make the necessary premium payments by reimbursing the Sheriff's office.

Respectfully submitted,

Brian Gallagher

By: _____
One of his attorneys

Stephen C. Debboli
218 N. Jefferson Street S-101
Chicago, IL 60661
Attorney No. 25009
(312) 207-0000

3

**COURT'S COPY • DEPUTY'S MINUTE BOARD**

**DOCKET HEARING RECORD**

**Docket Number** 184/

**Name:** BRIAN SANCASTER
**Star #:** 18372 **Complaint:** Abosenteeism

**Address:** 8128 W. GRTPK RD #401 **Rank:** Dep **Auto:**

Chicago IL 60653 **Position:** Deg. **Code:** Q1

**Phone:**

| Hearing Date | Hearing Officer | Continuance/Reason/Miscellaneous | Reason Code |
|---|---|---|---|
| 10/4/14 | | | |
| 11-4-2015 | JD | Set for Status @ 1:30pm | 8A |
| 1/20/15 | | | |
| 1/05-2016 | JD | Motion for Discovery filed ATM Manual @ 9:30 | 8A |
| 2-11-2016 | JD | Set for Discovery @ 1:00 @ 9:30am | 8A |
| 3-10-2016 | JD | Final Status set for March 10, 2016 @ 8:15am | 8A |
| 4/11/16 | JD | Final Status set for Discovery @ 10:00am | 8A |
| 4/20/16 | JD | Set cont for May 20 @ 9:30a | 8A |
| 6-15-2016 | JD | Shdw set for July 15 @ 9:00 | 8A |
| 6-15-2016 | JD | Trial set for August 25 @ 9:00am | 8A ✓ |
| 8/25/16 | JD | Amy Matthews filed Motion to Continue | 8A |
| 9/24/16 | JD | Motion for continuency granted Trial set for September @ below | |
| 9-30-2016 | JD | Trial over | |
| 3/1/17 | JD | Final Decree Sent out | |
| 2-22-17 | | October 16, 2015 Separate O: updated effective | |
| | | Just Caused filed from Review date to update Castner-Lynch & Reputations | |
| | | Separate all others, then to Tom cargo / conclude Lynch | |

**Attorney/Respondent**

**Firm Name:**
**Atty Name:** MAHONEY
**Address:**
**Phone:**

Assistant State's Attorney

**Name:** MURRAY
**Phone/Ext:** 2381

MB 1





STATE OF ILLINOIS)
          ) SS
COUNTY OF COOK)

<div align="center">

**COOK COUNTY SHERIFF'S
MERIT BOARD**

</div>



IN THE MATTER OF:

COOK COUNTY
SHERIFF'S MERIT BOARD

**DEPUTY SHERIFF** )
**BRIAN V. GALLAGHER** )
**8428 W. CATALPA, #401** )
**CHICAGO, ILLINOIS 60656** )    **DOCKET NO.**
**EMPLOYEE # 380986** )
**STAR # 10509** )       1841

<div align="center">

**COMPLAINT**

</div>

NOW COMES THOMAS J. DART, Sheriff of Cook County, State of Illinois, and complains of and files written charges for cause against Deputy Sheriff Brian Gallagher ("RESPONDENT"), pursuant to 55 ILCS 5/3-7011 & 7012. In support thereof, the Sheriff states as follows:

1.    That on April 19, 1995, the RESPONDENT was appointed a Deputy Sheriff.

2.    That as of 2005, RESPONDENT was assigned to the George N. Leighton Criminal Court Building, located at 2650 South California Avenue, Chicago, Illinois 60608.

3.    That RESPONDENT was absent from scheduled work shifts and the absences were unauthorized for at least six (6) occurrences between August 31, 2012 and October 30, 2014, in violation of Sheriff's Order 11.4.1.1 as set forth below:

    a.    That RESPONDENT'S first occurrence of unauthorized absences occurred on August 31, 2012, consisting of eight (8) hours of No Vacation Time ("NVT").

    b.    That RESPONDENT'S second occurrence of unauthorized absences occurred on September 10, 2012, consisting of eight (8) hours of NVT.

<div align="center">

1

</div>

    c.   That RESPONDENT'S third occurrence of unauthorized absences occurred on January 28, 2013, consisting of eight (8) hours of No Sick Time ("NST").

    d.   That RESPONDENT'S fourth occurrence of unauthorized absences occurred on June 7, 2013, consisting of two (2) hours of NST.

    e.   That RESPONDENT'S fifth occurrence of unauthorized absences occurred on August 18, 19, 20 and 21, 2014, consisting of thirty-two (32) hours of NST.

    f.   That RESPONDENT'S sixth occurrence of unauthorized absences occurred on October 29 and 30, 2014, consisting of sixteen (16) hours of NST.

4.    That RESPONDENT continued to incur unauthorized absences and was absent from scheduled work shifts a total of two (2) additional occurrences, as set forth below:

    a.   That RESPONDENT was absent NVT on December 3 and 4, 2014 (16 hours).

    b.   That RESPONDENT was absent NST on December 8, 2014 (8 hours).

5.    That on September 14, 2012, RESPONDENT attended a counseling session after his first occurrence of unauthorized absences, which occurred on August 31, 2012. At this counseling session, RESPONDENT was counseled on Sheriff's Order 11.4.1.1, Unauthorized Absence Policy, as well as the steps in the levels of progressive discipline and available leave options.

6.    That on September 25, 2012, RESPONDENT received an Unauthorized Absence Disciplinary Action Form ("DAF"), SPR12-2130, recommending a written reprimand for the unauthorized absence that occurred on September 10, 2012.

7.    That on March 22, 2013, RESPONDENT'S grievance #12-U-086 related to SPR12-2130 for the unauthorized absence that occurred on September 10, 2012 was denied after a 3rd Step Grievance hearing.

**MB 4**

8.    That on February 13, 2013, RESPONDENT received an Unauthorized Absence DAF,
      SPR13-0350, recommending a 1-day suspension for the unauthorized absence that
      occurred on January 28, 2013.

9.    That on March 22, 2013, RESPONDENT'S grievance #13-U-042 related to SPR13-0350
      for the unauthorized absence that occurred on January 28, 2013 was denied after a 3rd
      Step Grievance hearing.

10.   That on April 2, 2014, RESPONDENT received an Unauthorized Absence DAF, SPR13-
      1357, recommending a 3-day suspension for the unauthorized absence that occurred on
      June 7, 2013.

11.   That on May 21, 2014, RESPONDENT'S grievance #14-U-049 related to SPR13-1357
      for the unauthorized absence that occurred on June 7, 2013 was denied after a 3rd Step
      Grievance hearing.

12.   That on September 10, 2014, RESPONDENT received an Unauthorized Absence DAF,
      SPR14-2108, recommending a 5-day suspension for the unauthorized absences that
      occurred on August 18, 19, 20 and 21, 2014.

13.   That on January 14, 2015, RESPONDENT'S grievance #14-DI-14910-NYLB related to
      SPR14-2108 for the unauthorized absences that occurred on August 18, 19, 20 and 21,
      2014 was denied after a 3rd Step Grievance hearing.

14.   That by his actions, RESPONDENT violated the Rules and Regulations and General
      Orders of the Cook County Sheriff's Court Services Department, specifically:

3

**MB 5**

SHERIFF'S ORDER 11.4.1.1 (effective date July 1, 2012)
UNAUTHORIZED ABSENCE, in its entirety, including but not limited to, the following subparts:

II.     **POLICY**

It is the policy of the Cook County Sheriff's Office (CCSO) to prohibit CCSO employees from incurring Unauthorized Absences. Unauthorized Absences exacerbate absenteeism problems and strain the operations and employees of the CCSO. CCSO employees receive benefit time and have a variety of leave options available to cover the need for short-term and long-term absences. Therefore, even if an employee is legitimately ill or has some other reasonable excuse for being absent, the employee must obtain an appropriate Authorized Status(es) prior to or immediately after the need for the absence(s).

V.      **DEFINITIONS**

C.      Occurrence – For purposes of determining progressive discipline, an Occurrence as used in this Order is either:

1.      An Unauthorized Absence that lasts from one (1) hour to one (1) single work day and where the employee returns to work the next working day; or

2.      An Unauthorized Absence that lasts between two (2) and five (5) consecutive work days.

For instance, if an employee has one (1) Unauthorized Absence day and returns to work the next work day, then that will be considered one (1) Occurrence; if an employee has five (5)

4

consecutive Unauthorized Absences in a row, that will be

considered one (1) Occurrence; if an employee has thirteen

(13) consecutive Unauthorized Absences, that will be

considered three (3) occurrences.

## VII. DISCIPLINARY PROCEDURES FOR EMPLOYEES WITH UNAUTHORIZED ABSENCE(S)

A. Disciplinary procedure for employees without a Rolling Calendar

clause in their applicable CBA will be progressive and will be in

accordance with the applicable CBA.

**GENERAL ORDER 3401.1 (effective date March 15, 2001)**
**RULES OF CONDUCT, in its entirety, including but not limited to, the following subparts:**

V. RESPONSIBILITY

It is the responsibility of every member of the C.S.D. to conform to the rules

of conduct.

U. Tour of Duty: Attendance, Availability and Reporting

1. Members will report for duty at the time and place required or report

their inability to do so by notifying their supervisor or the appropriate

office one hour prior to the beginning of their tour of duty. No

member shall be absent without leave. Absent without leave shall

mean either a failure to report for duty or leaving their assigned duty

post during a tour of duty without being properly relieved, except

when authorized by proper authority. Members shall be punctual in

reporting for duty; habitual failure to report promptly shall be

deemed neglect of duty. Members will be physically and mentally fit

5

to perform their duties. They will be properly equipped and cognizant of information required for the proper performance of duty so that they may immediately assume their duties. Judicial subpoenas will constitute an order to report for duty under this section.

**SHERIFF'S ORDER 11.2.20.0 (effective date January 25, 2013)**
**RULES OF CONDUCT, in its entirety, including but not limited to, the following subparts:**

VI.   RULES AND REGULATIONS FOR ALL SWORN AND CIVILIAN CCSO EMPLOYEES

   A.   Compliance with Laws, Ordinances, and Regulations

   2.   Employees shall comply with lawful rules, Sheriff's Office written directives, verbal orders, SEAM articles, and political prohibitions issued by the proper authorities.

   E.   Duty functions.

   CCSO employees shall:

   1.   Maintain sufficient competence to properly perform the duties and responsibilities of their positions. Unsatisfactory performance shall not be allowed.

   b.   Unsatisfactory performance may be demonstrated by:

   vi.   Absence without leave.

**SHERIFF'S ORDER 11.2.20.1 (effective date March 12, 2015)**
**CONDUCT POLICY, in its entirety, including but not limited to, the following subparts:**

IV.   COMPLIANCE WITH ALL LAWS, ORDINANCES AND REGULATIONS

   Members shall respect and protect the civil and legal rights of all individuals; uphold the constitutions of the United States and the State of Illinois; obey all

MB 8

applicable federal, state and local laws; comply with court decisions and orders of courts having jurisdiction; and comply with lawful rules, written or verbal orders, SEAM articles, policies and procedures issued by the CCSO or by any supervisor.

VI.     CONDUCT WHICH MAY RESULT IN DISCIPLINE

The following list of causes for disciplinary action constitutes a portion of the disciplinary standards of the CCSO. This list is not intended to cover every possible type of misconduct and does not preclude the recommendation of disciplinary action for specific action or inaction that is detrimental to efficient service. Conduct which may result in discipline includes but is not limited to the following:

A.      Attendance.

    b.      Unexcused or unauthorized absence or tardiness on scheduled day(s) of work.

15.    Furthermore, the RESPONDENT's actions violated the Rules and Regulations of the County Sheriff's Merit Board, specifically:

COOK COUNTY SHERIFF'S DEPARTMENT MERIT BOARD RULES AND REGULATIONS, in its entirety, including but not limited to, the following subparts:

Article X, Paragraph B

No Police Officer of the Cook County Sheriff's Police Department, Correctional Officer of the Cook County Department of Corrections or any Deputy Sheriff of the Cook County Sheriff's Court Services Department shall:

7

3. violate any of the general orders, special orders, directives, or rules and regulations of the Cook County Sheriff's Office.

WHEREFORE, THOMAS J. DART, Sheriff of Cook County, maintains that the RESPONDENT, by his conduct, has violated the Rules and Regulations of the Cook County Sheriff's Merit Board, and respectfully requests this Board to hold a hearing on the charges as set forth in the complaint, pursuant to statute, and on proof of said charges, or any part thereof, the Board shall make a finding of guilty and order the RESPONDENT removed from the Cook County Sheriff's Office.

Dated this __ 16 __ day of _____ October _____, 2015, at Chicago, Illinois

Thomas J. Dart
By: Zelda

Thomas J. Dart

**Sheriff of Cook County**

8

JAMES P. NALLY, Chairman
BYRON BRAZIER, Vice Chairman
JOHN J. DALICANDRO, Secretary
BRIAN RIORDAN,Board Member
KIM WIDUP, Board Member
VINCE WINTERS, Board Member
JENNIFER E. BAE, Board Member
PATRICK BRADY, Board Member

ROSEMARIE NOLAN, Executive Director
JOHN KOCH, Director of Operations
EILEEN GALLAGHER- Disciplinary Hearing Coordinator

TELEPHONE: (312) 603-0170

FAX: (312) 603-9065



# COOK COUNTY
## SHERIFF'S MERIT BOARD
### 69 W. Washington
### Suite 1100
### Chicago, IL 60602

October 19, 2015

Case Docket #: 1841

Brian Gallagher
8428 W. Catalpa #401
Chicago, Illinois 60656

Enclosed herewith is a copy of the complaint filed against you by the Honorable Thomas J. Dart, Sheriff of Cook County. Your Preliminary Hearing on this matter will be held at the Cook County Sheriff's Merit Board as follows:

### Thursday, November 19, 2015 at 9:30 AM

This letter will serve as official notice of the filing of this complaint against you and the official notification of the Status Hearing. If you desire representation, have your attorney file an appearance with the Sheriff's Merit Board using the enclosed form.

FOR THE BOARD

John Koch
Director of Operations
Sheriff's Merit Board

JK/emg

MB 11



COOK COUNTY SHERIFF'S
MERIT BOARD

**RECEIVED**

NOV 20 2015

COOK COUNTY
SHERIFF'S MERIT BOARD

IN THE MATTER OF:                    )
                                     )
DEPUTY SHERIFF                       )
BRIAN GALLAGHER                      )     DOCKET NO. MB 1841
                                     )

## NOTICE OF FILING AND CERTIFICATE OF SERVICE

TO:    ASA John Murray                    John J. Dalicandro
       Assistant States Attorney          Cook County Sheriff's Merit Board
       500 Richard J. Daley               69 West Washington, Suite 1100
       Chicago, Illinois 60602            Chicago, Illinois 60602

       Cook County Sheriff's Merit Board
       69 West Washington, Suite 1100
       Chicago, Illinois 60602

        PLEASE TAKE NOTICE that on November 20, 2015, I filed the attached Motion for
Discovery via personal service with the Cook County Sheriff's Merit Board.

Daniel G. Mahoney
Attorney

        The undersigned attorney affirms he served Hearing Officer John J. Dalicandro via hand
delivery and ASA John Murray via hand delivery.

Daniel G. Mahoney
Attorney

Illinois Fraternal Order of Police Labor Council
5600 S. Wolf Road, Ste. 120
Western Springs, IL 60558-2268
T: 708-784-1010
F: 708-784-0058

MB 13

## COOK COUNTY SHERIFF'S MERIT BOARD

| | |
|---|---|
| IN THE MATTER OF: | ) |
| | ) |
| DEPUTY SHERIFF | ) |
| BRIAN GALLAGHER | )          DOCKET NO. MB 1841 |
| | ) |

### MOTION FOR DISCOVERY

TO:   ASA John Murray
Assistant States Attorney
Labor & Employment Section
500 Richard J. Daley Center
Chicago, Illinois 60602

NOW COMES, Deputy Brian Gallagher, by and through Daniel G. Mahoney, Attorney for the Illinois Fraternal Order of Police Labor Council, based on the due process clauses of the Constitution of the United States and the Constitution of the State of Illinois, and the Illinois Public Labor Relations Act, 5 ILCS 315, and without conceding the jurisdiction of the Sheriff's Merit Commission requests that on or before December 21, 2015, the Sheriff furnish to the undersigned at his office at 5600 South Wolf Road, Suite 120, Western Springs, Illinois 60558-2265, the following:

(a)   The names, addresses and phone numbers of any and all witnesses that the Sheriff may call to testify in the pending matter.

(b)   A list and copy of all exhibits that the Sheriff will introduce at the hearing in the pending matter.

(c)   Complete and accurate copies of any report of any person(s), department or agency which assisted the Employer in preparing its allegations against Deputy Gallagher.

(d)   The names, addresses and phone numbers of anyone who has knowledge of the facts giving rise to the instant charges currently pending against Deputy Gallagher.

**MB 14**

(e)     Complete and accurate copies of any and all documents, films, photographs, tapes, notes, transcripts, recordings, statements, and any other items which the Sheriff or the Sheriff's Office has obtained or utilized, and/or may utilize or that in any way relate to the allegations in this case.

(f)     Complete and accurate copies of all rules, regulations, general orders, policies and procedures allegedly violated by Deputy Gallagher.

(g)     Complete and accurate copy of Deputy Gallagher's personnel file, including but not limited to any complimentary or disciplinary history.

(h)     For the prior five (5) years, the names of any deputy who has been investigated and/or disciplined, including discharge, for similar misconduct for which Deputy Gallagher is accused of engaging in, including the nature of the allegation(s), the disposition of said matter, and the discipline imposed, if any.

Respectfully submitted,
Deputy Brian Gallagher

By: Daniel S. Mahoney

Daniel G. Mahonsy
Attorney
IL FOP Labor Council on behalf of
DEPUTY BRIAN GALLAGHER

Illinois Fraternal Order of Police Labor Council
5600 South Wolf Road, Ste. 120
Western Springs, IL 60558-2265
Tel.   (708) 784-1010

MB 15

JAMES P. NALLY, Chairman

BYRON BRAZIER, Vice-Chairman
JOHN DALICANDRO, Secretary
BRIAN RIORDAN, Board Member
KIM R. WIDUP, Board Member
VINCENT T. WINTERS, Board Member
JENNIFER R. BAE, Board Member
PATRICK M. BRADY, Board Member

Rosemarie Nolan, Executive Director
John Koch, Director of Operations
Brian Gallagher- Disciplinary Hearing Coordinator



TELEPHONE: (312) 603-0170

FAX: (312) 603-0465

# COOK COUNTY
# SHERIFF'S MERIT BOARD
### 69 W. Washington
### Suite 1100
### Chicago, Il. 60602

Brian Gallagher
8428 W. Catalpa #401
Chicago, Illinois 60656

Docket # 1841

DATE: January 5, 2016

Please be advised that your disciplinary hearing has been continued for Status as follows:

Thursday, February 11, 2016 at 9:00 AM

If you fail to make an appearance your case will be subject to a default judgement.

FOR THE BOARD

John Koch, Director of Operations
Cook County Sheriff
Merit Board

JK/eg

MB 16

**BEFORE THE**
**COOK COUNTY SHERIFF'S MERIT BOARD**

IN THE MATTER OF: )
)
DEPUTY SHERIFF )
BRIAN V. GALLAGHER ) DOCKET No. MB 1841
8428 W. CATALPA, #401 )
CHICAGO, ILLINOIS 60656 )
EMPLOYEE #380986 )
STAR #10509, )
)
Respondent. )

RECEIVED
APR 18 2016
COOK COUNTY
SHERIFF'S MERIT BOARD

**NOTICE OF FILING**

To: Daniel G. Mahoney (F.O.P.)
5600 S. Wolf Road
Western Springs, IL 60558
(708) 784-1010

PLEASE TAKE NOTICE that on April 18, 2016, I filed the attached **Petitioner's Motion for Discovery** *and* **Petitioner's Response to Respondent's Motion for Discovery** with the Clerk of the Cook County Sheriff's Merit Board, 69 W. Washington, Suite #1100, via *hand delivery*, a copy of which is included herewith.

ANITA ALVAREZ
State's Attorney of Cook County

**John E. Murray**
Assistant State's Attorney
Cook County State's Attorney's Office
Labor and Employment Division
50 W. Washington Street, Suite 500
Chicago, Illinois 60602
w (312) 603-2381
f (312) 603-3000

1

## CERTIFICATE OF SERVICE

I, John E. Murray, Assistant State's Attorney, depose and state that on April 12, 2016, I caused to be served the attached **Petitioner's Motion for Discovery** *and* **Petitioner's Response to Respondent's Motion for Discovery** via hand delivery upon the Clerk of the Cook County Sheriff's Merit Board and upon counsel of record for Respondent via email delivery.

ANITA ALVAREZ
State's Attorney of Cook County

**John E. Murray**
Assistant State's Attorney
Cook County State's Attorney's Office ·
Labor and Employment Division
50 W. Washington Street, Suite 500 .
Chicago, Illinois 60602
w (312) 603-2381
f (312) 603-3000

2

**MB 18**

**BEFORE THE**
**COOK COUNTY SHERIFF'S MERIT BOARD**

IN THE MATTER OF: )
)
DEPUTY SHERIFF )
BRIAN V. GALLAGHER ) DOCKET No. MB 1841
8428 W. CATALPA, #401 )
CHICAGO, ILLINOIS 60656 )
EMPLOYEE #380986 )
STAR #10509, )
)
Respondent. )

### PETITIONER'S MOTION FOR DISCOVERY

NOW COMES Petitioner, THOMAS J. DART, Sheriff of Cook County ("Petitioner"), by and through undersigned counsel Anita Alvarez, State's Attorney of Cook County, and John E. Murray, Assistant State's Attorney, and for his Motion for Discovery respectfully requests the following information from Respondent DEPUTY SHERIFF BRIAN V. GALLAGHER ("Respondent"):

1. The names and last known addresses of persons having knowledge of facts herein, including character and reputation knowledge, together with their relevant written or recorded statements, including memoranda reporting or summarizing their oral statements, and any record of prior criminal convictions of such witnesses known to the Respondent or his attorney.

2. Written notice of any defenses, affirmative or non-affirmative, which Respondent intends to present.

3. Any books, papers, documents, photographs, or tangible objects the Respondent or his attorney intends to use as evidence at trial, including for impeachment purposes.

4. To notify the State's Attorney's Office of the existence of any material or information

1

**MB 19**

requested herein which is discovered subsequent to compliance with this Request.

5.     Any deposition testimony, statements, affidavits made by Respondent or witnesses who may be called at trial.

Respectfully submitted,

ANITA ALVAREZ
State's Attorney of Cook County

John E. Murray
Assistant State's Attorney
Cook County State's Attorney's Office
Labor and Employment Division
50 W. Washington Street, Suite 500
Chicago, Illinois 60602
w (312) 603-2381
f (312) 603-3000

2

**MB 20**

## BEFORE THE
## COOK COUNTY SHERIFF'S MERIT BOARD

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| DEPUTY SHERIFF | ) | |
| BRIAN V. GALLAGHER | ) | DOCKET No. MB 1841 |
| 8428 W. CATALPA, #401 | ) | |
| CHICAGO, ILLINOIS 60656 | ) | |
| EMPLOYEE #380986 | ) | |
| STAR #10509, | ) | |
| | ) | |
| Respondent. | ) | |

## PETITIONER'S RESPONSE TO MOTION FOR DISCOVERY

NOW COMES Petitioner, COOK COUNTY SHERIFF'S OFFICE ("Petitioner," or "Sheriff's Office"), by and through undersigned counsel Anita Alvarez, State's Attorney of Cook County, and John E. Murray, Assistant State's Attorney, submits the following response to Respondent's First Motion for Discovery:

## GENERAL OBJECTIONS

1. Sheriff objects to Respondent's Discovery Requests to the extent they seek discovery of documents or information protected by the attorney-client privilege, the attorney work product doctrine or any other privilege, doctrine or immunity. By responding to Respondent's Discovery Requests, Sheriff does not waive, intentionally or otherwise, any attorney-client privilege, attorney work product doctrine or any other privilege, doctrine or immunity protecting their communications, transactions or records from disclosure. Accordingly, any response or production of documents inconsistent with the foregoing is wholly inadvertent and shall not constitute a waiver of any such privilege or protection. Sheriff does not intend to identify information or documents withheld as privileged or as attorneys' work product

1

**MB 21**

that were created after the date of the initiation of this action, but will reconsider to the extent that all parties agree to do the same.

2.     By stating that he will produce documents responsive to a particular Request, Sheriff does not represent that responsive documents or information exist, but only that responsive, non-privileged documents or information will be produced to the extent they do exist, Sheriff does not object to their production, and Sheriff is able to produce them.

3.     Sheriff objects to Respondent's Discovery Requests to the extent they request information or documents not in the possession, custody or control of Sheriff, its members, agents or attorneys or that is already in the possession, custody or control of Sheriff, its members agents or attorneys.

4.     Sheriff submits these responses and objections on the basis of information now known to it and without conceding the relevancy or materiality of the subject matter of any Request, or of any information or document, and without prejudice to all objections to the use or admissibility of any information or document at trial, or in any other proceeding in this action.

5.     Sheriff objects to Respondent's Discovery Requests to the extent they seek to impose obligations beyond those imposed by the Cook County Sheriff's Merit Board Rules and Regulations.

6.     Sheriff's investigation is continuing and he reserves the right to supplement and/or amend any and all of these responses.

7.     All individual responses set forth below incorporate, are made subject to, and are made without waiving these general objections.

2

**MB 22**

## RESPONDENT'S DISCOVERY REQUESTS

1.     The names, addresses and phone numbers of any and all witnesses that the Sheriff may call to testify in the pending matter.

**RESPONSE:** Subject to and without waiving the General Objections, Sheriff's Office states:

- **ROSEMARIE NOLAN (c/o CCSO Legal Department)** – Regarding the allegations of the Complaint and consistent with "(*In re: Brian GALLAGHER*, No. MB 1841) 000001-000343."

- **DIR. JOHN HARRINGTON (c/o CCSO Legal Department)** – Regarding the allegations of the Complaint and consistent with "(*In re: Brian GALLAGHER*, No. MB 1841) 000001-000343."

- **SHARON LITTLE (c/o CCSO Legal Department)** – Regarding the allegations of the Complaint and consistent with "(*In re: Brian GALLAGHER*, No. MB 1841) 000001-000343."

- **INV. GEORGIA GARCIA (c/o CCSO Legal Department)** – Regarding the allegations of the Complaint and consistent with "(*In re: Brian GALLAGHER*, No. MB 1841) 000001-000343."

- **RESPONDENT, BRIAN GALLAGHER (c/o Counsel for Respondent)** – Regarding the allegations of the Complaint and consistent with "(*In re: Brian GALLAGHER*, No. MB 1841) 000001-000343."

Investigation continues.

2.     A list and copy of all exhibits that the Sheriff will introduce at the hearing in the pending matter.

3

**MB 23**

**RESPONSE:** Sheriff's Office objects to this Request on the grounds that it is premature and to the extent it requests production of information to which Respondent is not entitled. Subject to these and the General Objections, Sheriff's Office refers Respondent to "(*In re: Brian GALLAGHER*, No. MB 1841) 000001-000343." Investigation continues.

3.      The names, addresses and phone numbers of any report of any person(s), department or agency which assisted the Employer in preparing its allegations against Deputy Gallagher.

**RESPONSE:** *See*, answer to Request No. 1. Further answering, Sheriff's Office refers Respondent to "(*In re: Brian GALLAGHER*, No. MB 1841) 000001-000343." Investigation continues.

4.      Complete and accurate copies of any and all documents, films, photographs, tapes, notes, transcripts, recordings, statements, and any other items which the Sheriff or the Sheriff's Office has obtained or utilized, and/or may utilize or that in any way relate to the allegations of the case.

**RESPONSE:** Subject to and without waiving the General Objections, Sheriff's Office refers Respondent to "(*In re: Brian GALLAGHER*, No. MB 1841) 000001-000343." Investigation continues.

5.      Complete and accurate copies of all rules, regulations, general orders, policies and procedures allegedly violated by Deputy Gallagher.

**RESPONSE:** Subject to and without waiving the General Objections, Sheriff's Office refers Respondent to "(*In re: Brian GALLAGHER*, No. MB 1841) 000001-000343." Investigation continues.

6.      Complete and accurate copy of Deputy Gallagher's personnel file, including but

4

not limited to any complimentary or disciplinary history.

**RESPONSE**: Subject to and without waiving the General Objections, Sheriff's Office refers Respondent to "(*In re: Brian GALLAGHER*, No. MB 1841) 000001-000343." Investigation continues.

7.      For the prior five (5) years, the names of any deputy who has been investigated and/or disciplined, including discharge, for similar misconduct for which Deputy Gallagher is accused of engaging in, including the nature of the allegation(s), the disposition of said matter, and the discipline imposed, if any.

**RESPONSE**: Sheriff objects to this Request to the extent it seeks discovery of information irrelevant to this proceeding and to the extent this Request calls for production of information not likely to lead to discoverable information.

Respectfully Submitted,

ANITA ALVAREZ
State's Attorney of Cook County

John E. Murray
Assistant State's Attorney
Cook County State's Attorney's Office
Labor and Employment Division
50 W. Washington Street, Suite 500
Chicago, Illinois 60602
w (312) 603-2381
f (312) 603-3000
John.Murray@cookcountyil.gov

5

**COOK COUNTY SHERIFF'S**
**MERIT BOARD**



IN THE MATTER OF

DEPUTY SHERIFF
**BRIAN GALLAGHER**

DOCKET NO. MB 1841

**NOTICE OF FILING AND CERTIFICATE OF SERVICE**

TO:  ASA John Murray,                                John J. Dalicandro
     Assistant States Attorney                      Cook County Sheriff's Merit Board
     500 Richard J. Daley                           69 West Washington, Suite 1100,
     Chicago, Illinois 60602                        Chicago, Illinois 60602

Cook County Sheriff's Merit Board
69 West Washington, Suite 1100,
Chicago, Illinois 60602

**PLEASE TAKE NOTICE** that on August 23, 2016, I filed the attached Motion for Continuance via electronic mail with the Cook County Sheriff's Merit Board.

**Daniel G.** Mahoney
**Attorney**

The undersigned attorney affirms he served Hearing Officer John J. Dalicandro via electronic mail and ASA John Murray via electronic mail.

**Daniel G. Mahoney**
**Attorney**

Illinois Fraternal Order of Police Labor Council
5600 S. Wolf Road, Ste. 120
Western Springs, IL 60558-2268
T: 708-784-1010
F: 708-784-0058

## COOK COUNTY SHERIFF'S MERIT BOARD

IN THE MATTER OF:

DEPUTY SHERIFF
BRIAN GALLAGHER

DOCKET NO. MB

## MOTION FOR CONTINUANCE

NOW COMES, Deputy Brian Gallagher, by and through Daniel G. Mahoney, Attorney for the Illinois Fraternal Order of Police Labor Council, and moves the Cook County Sheriff's Merit Board to grant a continuance to the Respondent. In support of this Motion, the Respondent states the following:

1.     The matter is scheduled for trial on August 25, 2016.

2.     The Respondent has a medical procedure scheduled at Lutheran General Hospital on the day of the hearing.

3.     The procedure is for a condition of which the Respondent has sought treatment for over one (1) year. The Employer is aware of the Respondent's medical condition.

4.     Therefore, the Respondent respectfully requests the Hearing Officer to set the August 25, 2016, date as a status date and not a trial date.

Respectfully submitted,

Deputy Brian Gallagher

By: _Daniel S Mahoney_

Daniel G. Mahoney
Attorney
Illinois FOP Labor Council
5600 South Wolf Road, Ste. 120
Western Springs, IL 60558-2265

MB 27

JAMES P. NALLY, Chairman
BYRON BRAZIER, Vice Chairman
JOHN J. DALICANDRO, Secretary
KIM WIDUP, Board Member
VINCE WINTERS, Board Member
JENNIFER B. BAE, Board Member
PATRICK BRADY, Board Member
GRAY MATEO-HARRIS, Board Member

ROSEMARIE NOLAN, Executive Director
JOHN KOCH, Director of Operations
EILEEN GALLAGHER- Disciplinary Hearing Coordinator

TELEPHONE: (312) 603-0170

FAX: (312) 603-9865



## COOK COUNTY
## SHERIFF'S MERIT BOARD

69 W. Washington
Suite 1100
Chicago, Il. 60602

RECEIVED
SEP 08 2016
COOK COUNTY
SHERIFF'S MERIT BOARD

Case   Docket  #: 1887/19/:

**Thomas J. Dart**
**Sheriff of Cook County**

**V.**

Brian Gallagher
**Respondent**

The undersigned, as attorney for the Respondent, enters this notice of appearance on behalf of

Brian Gallagher                        , before the Cook County Sheriff's Merit Board in regard
to the above listed case Docket Number.

Stpt CDill

**Attorney Signature**

NAME: Stephen C. Debboli

LAW FIRM Stephen C. Debholi  Atty at Law.

ADDRESS: 218 N. Jefferson  Suite 101

CITY: Chicago                STATE: Il        ZIP: 60661

TELEPHONE: 312  207  0000

E-Mail sdebboli@snn/aw.com

FAX: 312  207 0775

**MB 28**



1

1  STATE OF ILLINOIS         ) SS:        ☐ ORIGINAL
2  COUNTY OF COOK            )

3.     COOK COUNTY SHERIFF'S MERIT BOARD HEARING

4  THOMAS J. DART,                        )
   SHERIFF OF COOK COUNTY,                )
5                                         )
6      Petitioner,                        )   DOCKET NO. 1841
                                          )
7           vs.                           )
                                          )
8  BRIAN GALLAGHER,                       )
                                          )
9      Respondent.                        )

10     REPORT OF PROCEEDINGS of the hearing had before

11  COMMISSIONER JOHN J. DALICANDRO, COOK COUNTY SHERIFF'S

12  MERIT BOARD, on the 20th day of September, 2016, in the

13  Cook County Administration Building, 69 West Washington

14  Street, Suite 1100, Chicago, Illinois.

15
        APPEARANCES:
16
               HON. ANITA ALVAREZ,
17             State's Attorney of Cook County, by:
               MR. JOHN MURRAY,
18             Assistant State's Attorney, and
               MR. MARK HARA,
19             711 Law Student;
                    and
20             HON. THOMAS J. DART
               Sheriff of Cook County; by
21             MS. MIRIAM SANTIAGO,
               Assistant General Counsel,
22                  appeared on behalf of the
                    Petitioner;
23

24

1   MR. DANIEL J. MAHONEY, and
2   MR. STEPHEN DEBBOLI,
    Attorneys at Law,
3       appeared on behalf of the
        Respondent.
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

1                    I N D E X

2    Opening statement:    By Mr. Hara - Pg. 5
                           By Mr. Mahoney - Pg. 7
3.
                         WITNESSES
4                        Direct    Cross    Redirect    Recross
      For the Sheriff:
5
     Helen Cohn              9        25
6                           20
     John Harrington        32        55         63          65
7                           34
     Georgia Garcia         66        75
8
      For the Respondent:
9
     Brian Gallagher        81       ·100        114
10         .

11                        EXHIBITS

12                  Marked for Identification      In Evidence

13   Sheriff's

14   1                     15                        15
     2                     21                        22
15   3                     41           -            41
     4                     50                        50
16   5                     70                        70
     6                     74                        74
17   7                     78          , ·           78
     8                     79                        79
18   9                     79                        79
     10                    80                        80
19   11                    80                        80

20   Respondent's

21   1                     26                        31
     2                     85                        86
22
     Closing Argument:
23   By Mr. Hara - Pg. 115
     By Mr. Mahoney - Pg. 118
24

MB 32

1          THE COMMISSIONER: Let the record reflect
2  these are proceedings of the Cook County Sheriff's
3  Merit Board. Today is September 20th, 2016. I'm
4  John J. Dalicandro presiding on behalf of the Cook
5  County Sheriff's Merit Board. This is call of Docket
6  1841, Brian Gallagher. We are scheduled for trial
7  today.

8          Let's identify all the parties who are
9  currently present.

10        MR. MURRAY: Good morning. Assistant State's
11  Attorney John Murray on behalf of the Sheriff's Office
12  and seated to my right is Cook County State's
13  Attorney's Office's 711 licensed attorney Mark Hara.

14        MS. SANTIAGO: And also Miriam Santiago,
15  Assistant General Counsel, for the Sheriff's Office.

16        MR. DEBBOLI: Stephen Debboli as co-counsel
17  for Brian Gallagher.

18        MR. MAHONEY: Daniel Mahoney, M-A-H-O-N-E-Y,
19  Illinois FOP Labor Council on behalf of the Respondent,
20  Officer Brian Gallagher. Seated to my right is the
21  Respondent Brian Gallagher.

22        THE COMMISSIONER: Again, we're scheduled for
23  trial. So are there any preliminary motions, anything
24  we need to do at this point?

1          MR. MURRAY: No.

2          THE COMMISSIONER: First witness, gentlemen?

3          MR. MAHONEY: Opening statements, if we could,

4   please?

5          THE COMMISSIONER: If you so choose.

6          MR. MAHONEY: Yes.

7          MR. HARA: Yes.

8          THE COMMISSIONER: Go ahead.

9                  OPENING STATEMENT

10                 BY MR. HARA:

11          This is a very straightforward case.

12  It's a case about a correctional officer, the

13  Respondent Mr. Brian Gallagher, who constantly failed

14  to show up for work. Through this Merit Board trial

15  the evidence will show that the Respondent was

16  continually absent from work on an unauthorized basis

17  for at least six confirmed occurrences between

18  August 2012 through the end of October 2014 and

19  collectively a total of at least eight confirmed

20  occurrences for the two-year period from August 2012 to

21  December 2014, and all of these absences are in

22  violation of Sheriff's Order 11.4.1.1, General

23  Order 3401.1, and Merit Board Rules and Regulations,

24  Article X.

1          In this trial you will hear three
2 witnesses: Helen Cohn, and she will talk about how
3 time is kept and maintained at the Cook County
4 Sheriff's Office, the different leave options available
5 to employees who have a bona fide medical issue that
6 prevents them from working, and how it is the
7 employee's responsibility to understand how much
8 benefit time they have to use, and to ensure that all
9 absences are considered authorized.

10          And the second witness will be John
11 Harrington, who was the Attendance Review Unit
12 supervisor in August 2014 and November 2014. He was
13 involved in the disciplinary process relating to the
14 Respondent's hearings, and he forwarded the case to OPR
15 for the review.

16          And, lastly, you'll hear from Georgia
17 Garcia, who was the lead OPR investigations officer in
18 charge of the Respondent's unauthorized absences, and
19 she also interviewed the Respondent about his absences.

20          And at the close of this trial the
21 evidence will show that the Respondent was in clear
22 violation of the previous orders stated, Sheriff's
23 Order 11.4.1.1, General Order 3401.1, and the Merit
24 Board Rules and Regulations, Article X.

1             The Sheriff's Office will request that

2 the Merit Board find in its favor and against

3 Respondent and will request that Respondent's

4 employment be terminated.

5         THE COMMISSIONER: Mr. Mahoney?

6           OPENING STATEMENT

7            BY MR. MAHONEY:

8         Good morning. My name is Daniel Mahoney,

9 and I'm an attorney with the FOP Labor Council, and I

10 represent the Respondent Brian Gallagher.

11         The issue before the Merit Board is

12 whether Brian Gallagher should be terminated for

13 violation of the Sheriff's attendance policy. He

14 should not be terminated.

15         Deputy Sheriff Brian Gallagher has been

16 with the Sheriff's Department since 1995. While

17 employed by the Sheriff, Brian has served honorably and

18 has never been suspended. Now, the Sheriff wants to

19 terminate his employment.

20         In order to terminate Brian, the Sheriff

21 must prove that Brian abused the Sheriff's medical

22 policy. He did not. For many years Brian has utilized

23 the Family Medical Leave Act, known as FMLA, which he

24 is allowed to do by General Order to take time off for

1    his medical condition.  Under the terms of his approved
2    FMLA, Brian is approved to use FMLA on an intermittent
3    basis.  He is approved to be off for five days per
4    month.  He never exceeded the number of hours that he
5    was allowed under FMLA.  Each year he applied for and
6    was granted FMLA.

7                During his career, the Sheriff -- during
8    Brian's career, the Sheriff has made many errors
9    regarding FMLA.  When he utilizes FMLA, Brian can be
10   carried FMLA vacation, FMLA compensatory time, FMLA
11   personal day, or FMLA 0.  Now, when Brian uses FMLA 0,
12   he would not get paid, but it was still considered an
13   authorized absence.

14               During his career when he utilized FMLA,
15   Brian would usually request FMLA 0.  He knew that he
16   would not get paid, but he also knew that he had the
17   FMLA available.

18               Now, the burden is on the Sheriff to
19   prove that Brian Gallagher violated the General Orders
20   and Merit Board Rules.  The Sheriff just can't say that
21   Brian was absent, he must show an abuse of the policy,
22   and there is no abuse.

23               Further, the Sheriff has failed to follow
24   the concept of progressive discipline as set out in its

1  own General Orders. Brian Gallagher has never been

2  suspended, his discipline has consisted of counseling

3  and a written reprimand, and now the Sheriff is seeking

4  his termination.

5          .      Therefore, at the conclusion of the

6  hearing Brian Gallagher will ask that the Merit Board

7  find him not guilty, return him to his position as a

8  deputy sheriff, and award him back pay for the time he

9  was off, and remove the discipline from his record.

10                 Thank you, your Honor.

11          THE COMMISSIONER:  First witness.

12          MR. HARA:  Sheriff would like to call Helen

13  Cohn.

14                      (Witness sworn.)

15                     HELEN COHN,

16  called as a witness on behalf of the Sheriff herein,

17  having been first duly sworn, was examined and

18  testified as follows:

19                 DIRECT EXAMINATION

20  BY MR. HARA:

21     Q    Can you please state your name?

22     A    Yes, Helen Cohn.

23     Q    And spell the last name for the record,

24  please.

```
 1      A    C-O-H-N.
 2      Q    How are you doing this morning?
 3      A    Very well.  Thank you.
 4      Q    Can I start off by asking where are you
 5  currently employed?
 6      A    Cook County Sheriff's Department.
 7      Q    And for how long?
 8      A    18 years.
 9      Q    And what is your current job title?
10      A    I'm the Director of the Payroll Department.
11      Q    And what was your job title as of 2012?
12      A    I was a payroll supervisor.
13      Q    And are you familiar with how the Cook County
14  Sheriff's Office keeps track of employees' time and
15  attendance for purposes of payroll and benefits?
16      A    Yes, I am.
17      Q    And can you please describe that process?
18      A    So can you just elaborate on that question,
19  please?
20      Q    In terms of recordkeeping.
21      A    Yes, yes.  So we have daily time sheets that
22  are forwarded to the Payroll Department, and those
23  exceptions are taken -- placed on a hard manual card.
24      Q    And are you -- so you said the term is the
```

1    "hard card"?

2         A    Correct.

3         Q    Can you elaborate what a hard card is?

4         A    It's a hard time card of each employee of the

5    Sheriff's Department.  We also have a time grid, it's a

6    visual, that's also another method that we have for an

7    employee to be able to view their record, their

8    balances.

9         Q    And are you familiar with the term a "virtual

10   time card"?

11        A    Yes.

12        Q    Is there a difference between a hard time card

13   and a virtual time card?

14        A    No, what's on the hard card is what you'll see

15   in the virtual.

16        Q    Okay.

17        A    One just is a manual kept, and it's uploaded

18   into our shadow system is what then the employee can

19   see.

20        Q    And between the two, is there an official, I

21   guess, time card that's used?

22        A    The hard card is the official, yes.

23        Q    And are the hard cards the final say as to

24   what the -- as to what the actual attendance of the

1  employee is?

2      A    That is correct.

3      Q    And why is that?  Or, I mean, I'm sorry, let

4  me elaborate.

5              So these hard cards are the only way to

6  track their attendance, or the hard cards are the final

7  way to --

8      A    The hard card is the official record.

9      Q    Okay.  Thank you for that.

10             And does the Cook County Sheriff's Office

11  use any categories to classify different types of

12  unauthorized absences?

13     A    There is -- yes.

14     Q    And if you could describe those categories.

15     A    So we have no sick time 0, no vacation time 0,

16  we have FMLA 0, we have unauthorized FMLA 0, we have no

17  sick time personal.

18     Q    And does the Cook County Sheriff's Office have

19  an established policy in which employees have to call

20  in to request time off for their shifts?

21     A    Yes.

22     Q    And if you can explain that process?

23     A    So an employee must call an hour prior to

24  their start time to the medical call off center.

1     Q    Is there a difference between calling in for

2  medical time off versus non medical?

3     A   .So you can only call in for medical as well as

4  FMLA, but you cannot call in for personal or vacation

5  time.

6     Q    And can you please explain the process for

7  non medical? How do they get that time off or request

8  time off for non medical?

9     A    It's 72 hours in advance based on their CBA.

10     Q    And are you familiar with the term "authorized

11  status"?

12     A    I am.

13     Q    And can you please describe what "authorized

14  status" means?

15     A    That you are in a payable status.

16     Q    And what does "payable status" mean?

17     A    That you're being paid by the Sheriff's

18  Department for the medical time, any benefit time that

19  you have accrued.

20     Q    And are Cook County Sheriff's officers

21  required to maintain this authorized status during

22  employment?

23     A    That is correct.

24     Q    And why is that?

1    A .   To avoid discipline.

2    Q   And what happens if a sheriff is not able to

3  maintain authorized status?

4    A   Then they fall into an unauthorized status.

5    Q   Does the -- to your knowledge, does the

6  Cook County Sheriff's Office have an established policy

7  concerning an unauthorized status -- or unauthorized

8  absences?

9    A   Yes.

10   Q   And can you please explain that policy to us?

11   A   I'm not familiar with the policy,

12  unfortunately.  I know there is a policy, an

13  unauthorized policy, but I'm not versed in the

14  unauthorized policy, so, unfortunately, I can't answer

15  that.

16   Q   Okay, thank you.

17         And then you stated earlier that the

18  process for non medical absences, there is no call-in

19  process for that, but there's a 72-hour -- you have to

20  be notified -- or notify your supervisor 72 hours

21  beforehand, is that correct?

22   A   That is correct.

23   Q   Is there any other way to get approval for a

24  non medical absence?

1       A     That is the only way to get an approval.

2       Q     So non medical is -- vacation time, holiday

3   and personal time is all encompassed under non medical.

4       A     Compensatory time, that is correct.

5             MR. HARA:  So I have a copy of the hard cards.

6             THE COMMISSIONER:  Is this for review, or are

7   we entering this for the record?

8             MR. HARA:  For the record, Mr. Chairman.

9             THE COMMISSIONER:  Mr. Mahoney?

10            MR. MAHONEY:  No objection, your Honor.

11            MR. HARA:  With your permission I'd like to

12  mark this as Sheriff's 1.

13            THE COMMISSIONER:  Feel free.  Admitted.

14                       (Whereupon, Sheriff's Exhibit

15                        No. 1 was marked for identification

16                        and received in evidence.)

17            THE COMMISSIONER:  We'll be specific then,

18  Sheriff's 1 is Cook County Sheriff's Office attendance

19  record for 2012, specifically for Brian V. Gallagher.

20  And it is how many pages?

21            MR. HARA:  It is 8 pages.

22            THE COMMISSIONER:  8 pages.

23  BY MR. HARA:

24      Q     And do you recognize this document?

1      A    I do.

2      Q    And what is it?

3      A    It's a copy of a time card.

4      Q    And how is it that you recognize this

5  document?

6      A    Because this is the internal card that we use

7  in payroll.

8      Q    And who do these time cards belong to?

9      A    The Sheriff's Payroll Department.

10     Q    And which officer do these time cards relate

11 to?

12     A    I'm sorry?

13     Q    Which officer do these time cards relate to?

14     A    Deputy Brian Gallagher.

15     Q    And how do you know this?

16     A    Because his name is on the card.

17     Q    And are these time cards kept in the ordinary

18 course of business in the Sheriff's Department?

19     A    Yes, sir.

20     Q    And if you can turn to Bates stamp Page 337,

21 so it's the second page, and to the date of

22 August 31st, 2012, and in that box -- can you please

23 describe what's in that box?

24     A    A No Vacation Time 0.

1    Q    Or specifically what is in the box?

2    A    NVT 0.

3    Q    And you kind of already stated it, but here

4    what does NVT indicate to you, if anything?

5    A    That the officer does not have any vacation

6    time available.

7    Q    And how many hours for that day of the 31st?

8    A    8 hours.

9    Q    And turning your attention to the same page

10   for September 10th, 2012, can you state for the record

11   what's in that box, too?

12   A    Yes, 8 hours of No Vacation Time 0.

13   Q    And turning to the next page, please, on the

14   date of January 28th, 2013, can you please state what's

15   in that box?

16   A    8 hours of no sick time 0.

17   Q    And turning one more page to Bates stamp 339

18   on the date of June 7th, 2013, can you please state

19   what's in that box?

20   A    8 hours -- excuse me-- 2 hours of no sick

21   time 0.

22   Q    Thank you.  And turning to Page 341, which is

23   two more pages, for the dates of August 18th to

24   August 21st of 2014.

1     A    8 hours for each given day of No Sick Time 0.

2     Q    And on the same page for October 29th and 30th

3  of 2014, please?

4     A    8 hours for each given day of No Sick Time 0.

5     Q    And then finally on the next page, Bates

6  stamp 342, for the dates of December 3rd and 4th,

7  please?

8     A    8 hours for each given day for No Vacation

9  Time 0.

10    Q    And then the last one on the same page at the

11  top, December 8th, 2014?

12    A    8 hours of No Sick Time 0.

13    Q    Thank you for that.

14           And how does an employee know whether

15  they have accrued sick time still or vacation time?

16    A    That's where the virtual time card comes in.

17    Q    And is it stated on the virtual time card how

18  much time they still have for vacation time and sick

19  time?

20    A    That is correct.  It actually mirrors the time

21  card, the hard card.

22    Q    And then moving on to FMLA, are you familiar

23  with the Family Medical Leave Act, or, I guess, FMLA

24  like I stated?

1    A    In the benefits side of it, benefit time side

2  of it, I am, yes.

3    Q    And I guess on the benefits side, can you

4  state your understanding of what the Act is?

5    A    That I cannot, no, I'm sorry.

6    Q    And do you know how employees qualify for

7  FMLA?

8    A    Yes, they have to have 1250 hours.

9    Q    1250 hours of what?

10    A    Working hours to qualify, correct.

11    Q    If an employee runs out of FMLA time, is there

12  -- does he or she have the ability to recertify that

13  FMLA time for a new -- I guess, a new FMLA?

14    A    In the event that they have 1250 hours, then

15  yes.

16    Q    And do you have an understanding as to whether

17  the Respondent Mr. Gallagher was ever approved for FMLA

18  leave?

19    A    No.

20    Q    Would it help you to look at the defendant's

21  -- or sorry,

22           So have you --

23

24

<table>
1 | DIRECT EXAMINATION
2 | BY MR. MURRAY:
3 |    Q   Well, let me ask you this:  The hard cards
</table>

1                    DIRECT EXAMINATION

2 BY MR. MURRAY:

3     Q   Well, let me ask you this:  The hard cards

4 that we've been looking at and the notations

5 specifically that we've been looking at, they don't

6 reference FMLA, right?  For those dates that we have

7 specifically referenced.

8     A   That is correct, no.

9     Q   So the dates that we had gone through with

10 you, are those based on the fact that that's outside of

11 whatever FMLA leave Mr. Gallagher would have had?

12     A   Correct.

13     Q   Okay.  Actually, if you can go to the fourth

14 page.

15     A   Okay.

16     Q   And at the top of it there appears to be some

17 handwriting, it begins with FMLA.  Do you see that?

18     A   Correct.

19     Q   What does that say?

20     A   In the box dated June 3rd, is that correct?

21           Oh, up top.

22     Q   Yes.

23     A   Okay, excuse me.  It says FMLA 9/22 of '12 to

24 9/22 of '13, so by looking at this hard card he was

1   approved for neither date of FMLA time.

2       Q    Just so we're clear for the record, the

3   specific dates that we have referenced with you, those

4   notations are outside of whatever FMLA intermittent

5   accrual he had.

6       A    Correct.

7           MR. HARA:  I'm finished with that.

8           THE WITNESS:  Okay.

9           MR. HARA:  I have a copy of the Respondent

10  Mr. Gallagher's FMLA request form that I would like to

11  admit.

12          THE COMMISSIONER:  We'll call it Sheriff's

13  Exhibit 2.

14          MR. HARA:  Yes.

15                  (Whereupon, Sheriff's

16                   Exhibit No. 2 was

17                   marked for identification.)

18          THE COMMISSIONER:  Mr. Mahoney, any objection

19  to Exhibit 2 for the record?

20          MR. MAHONEY:  No objection, your Honor.

21          THE COMMISSIONER:  Therefore, we'll call this

22  and place it on the record as Sheriff's Exhibit 2,

23  which is the memo dated September 13th, 2012, to Brian

24  Gallagher from Rosemarie Nolan, and that's again

1   Sheriff's Exhibit 2.

2                          (Whereupon, Sheriff's

3                          Exhibit No. 2 was

4                          received in evidence.)

5   BY MR. HARA:

6       Q    And do you recognize this document in front of

7   you?

8       A    I do.

9       Q    And how is it you recognize this document?

10      A    It's an approval of an FMLA.

11      Q    And was Mr. Gallagher approved from FMLA

12  according to this document?

13      A    That is correct.

14      Q    And for what amount of time?

15      A    Intermittent, five days a month.

16      Q    And what does an intermittent basis mean?

17      A    That he's taking time intermittently, not in a

18  block of time, not on an every day basis.

19      Q    And for what time period was that approval?

20      A    September 22nd of '12 to September 22nd of

21  '13.

22      Q    And it states that this FMLA is not approved

23  for hourly increments.  To your knowledge, can you

24  please explain what that means?

1    A    Excuse me, where does it say that?

2    Q    Underneath the intermittent basis.

3    A    Okay, right. So that means that when you are

4    calling in for family medical leave or just requesting

5    FMLA time that you cannot take hourly increments, it's

6    got to be an eight hour block of time.

7    Q    And according to this document and the time

8    card -- the hard cards that you just saw, was

9    Mr. Gallagher abiding by his FMLA terms?

10   A    I would have to review the card to be able to

11   answer that. So in 2012 of January he had exceeded the

12   five days a month, in March of 2012 he had exceeded the

13   five days.

14            MR. MAHONEY: I'm sorry, what was the first?

15            THE COMMISSIONER: January.

16            THE WITNESS: January 2012.

17            MR. MAHONEY: Okay.

18            THE WITNESS: In April he was in compliance,

19   in August of 2012 he's exceeded, in October of '12 he's

20   exceeded, in December of '13 he's exceeded, March of

21   '13, April of '13 he's exceeded, May of '13 he's

22   exceeded, January of '15 he's exceeded.

23            MR. DEBBOLI: Was that '15?

24            MR. MAHONEY: Yes, objection. We're just

1   beyond the period of time that we're discussing, the
2   period of time he was charged with violating, it's the
3   end of December 2014.
4          MR. HARA: That's fine. We'll move on.
5          THE WITNESS: Thank you.
6          MR. HARA: Thank you for that.
7   BY MR. HARA:
8     Q   And can you -- I'm not sure if I already asked
9   this or not, but if an employee has exceeded his FMLA
10   time and has not re-certified to get new FMLA, is there
11   other ways to get approval for time off?
12     A   There are other approvals; correct.
13     Q   And can you explain those other types of
14   approvals you can get?
15     A   Yes, there's a compassionate leave, there is
16   ordinary disability.
17     Q   And do you know if Mr. Gallagher ever applied
18   for these other types of leaves?
19     A   Based on looking on the time cards, I do see
20   that he was on ordinary disability.
21     Q   And ultimately who is responsible for knowing
22   and understanding how much benefit time they have to
23   spend?
24     A   They have to spend?

1  Q    Or how much benefit time they have left.

2  A.   The employee is responsible for their own

3  time.

4         MR. HARA:  Thank you.  No further questions.

5         MR. MAHONEY:  I have a couple questions for

6  this witness, please.

7                   CROSS-EXAMINATION

8  BY MR. MAHONEY:

9  Q    Miss Cohn, you still have the records in front

10 of you there that we just went over?

11 A    Yes, sir.

12 Q    Thank you.  Let's go -- since we have it here,

13 let's look at the memorandum that's marked Sheriff's

14 Exhibit No. 2.  That's the one to Brian Gallagher from

15 Rosemarie Nolan dated September 13th, 2012.  Do you see

16 that one?

17 A    Yes, sir.

18 Q    So then he was effectively approved for FMLA

19 as of September 22nd, 2012, is that correct?

20 A    Yes, sir.

21 Q    And then the other sheet there is

22 December 15th, 2012 -- I'm sorry, December 15th,

23 2014 --

24 A    Yes, sir.

1    Q    -- is that correct?

2              Did he have FMLA dating back prior to

3    that time are you aware of?

4    A    I am not.

5    Q    I'm going to show you what I'm going to mark

6    as Respondent's Exhibit No. 1.  I want to give a copy

7    to opposing counsel and a copy to the Court, and I'm

8    going to give a copy to the witness, Miss Cohn.

9                   (Whereupon, Respondent's

10                   Exhibit No. 1 was

11                   marked for identification.)

12   BY MR. MAHONEY:

13   Q    Miss Cohn, can you take a look at that,

14   please?

15   A    Yes.

16   Q    Okay.  The first one on top, that's marked

17   that Mr. Gallagher was approved for FMLA from

18   December 15th, 2014, is that correct?

19   A    Yes, sir.

20   Q    Okay.  So turning to the second page here,

21   they're just in reverse order, but that is also the one

22   you just looked at from the Sheriff's exhibits,

23   September 22nd, 2012, correct?

24   A    Correct.

1    Q    Then we turn to the next page, September 21st,

2    2011.

3    A    Correct.

4    Q    And then next page is September 20th, 2010?

5    A    Correct.

6    Q    And then the last one is August 18th, 2009.

7         THE COMMISSIONER:  August what?

8         MR. MAHONEY:  August 18th, 2009.

9         THE COMMISSIONER:  How come this one says

10   August 26th?  Am I wrong?

11        MR. MAHONEY:  I don't know how that happened.

12            I'm sorry, the bold there, your Honor.

13        THE COMMISSIONER:  Are we going to enter this

14   for the record then?

15        MR. MAHONEY:  We will be, yes, yes.

16   BY MR. MAHONEY:

17   Q    So Mr. Gallagher has had almost continuous

18   FMLA dating back to August 18th, 2009?

19   A    That is correct.

20   Q    And it appears from these records that each

21   year what happens is he applies for FMLA, and then he

22   is approved for FMLA, is that correct?

23   A    That is correct.

24   Q    Okay, very good.  Thank you.

1          And then if we could go back to Sheriff's

2    Exhibit No. 1 that you were presented with earlier,

3    that is -- is that the hard card that we were talking

4    about earlier?

5        A    Yes, sir.

6        Q    And you were asked about specific dates

7    regarding Mr. Gallagher's time, correct?

8        A    Correct.

9        Q    And one of the dates you were asked about is

10   September 10th, 2012, correct?

11       A    Correct.

12       Q    On September 11th, 2012, what is the

13   designation in that box there?

14       A    8 hours of FMLA Medical.

15       Q    Okay.  And then on the other box there, if you

16   could go a little further down, September 17th, what's

17   marked in that box?

18       A    FMLA 0, 8 hours.

19       Q    8 hours, okay.  So FMLA sick time on

20   September 11th, is that considered an authorized

21   absence?

22       A    Yes, sir.

23       Q    And FMLA 0 on September 17th, is that also

24   considered an authorized absence?

1    A    I am not sure.

2    Q    But it is possible to take an FMLA 0 and have

3    it considered to be an authorized absence.

4    A    Well, it's a 0 absence --

5    Q    Yes.

6    A    -- regardless of what it's associated to, so I

7    would consider that an unauthorized absence.

8    Q    How many hours of FMLA do you -- does an

9    individual have during the course of a year?

10   A    480.

11   Q    And is it indicated on here anywhere that

12   Mr. Gallagher went over that 480 hours at any time?

13   A    I do not believe so.

14   Q    Okay.  If you would turn to what's marked

15   as Bates stamp 339, that's the attendance record for

16   June of 2013.  One of the dates you were asked about by

17   the state's attorney was June 7th, 2013, and could you

18   look at that date again?

19   A    Yes.

20   Q    And you had mentioned that was NST 2, which

21   meant no sick time for two hours?

22   A    Correct.

23   Q    And that is just before Mr. Gallagher went on

24   an ordinary disability?

**MB 58**

1   A   That is correct.

2   Q   And is it a policy of the Sheriff's Department

3   that before you go on a disability you need to burn or

4   exhaust all of your benefit time?

5   A   It is a Pension Board requirement, yes.

6   Q   So that's -- thank you for that.  So it's

7   actually a County policy.

8   A   Yes.

9   Q   So it's a County policy that before you go on

10  an ordinary disability, you must exhaust all of your

11  benefit time.

12  A   That is correct.

13  Q   So then when you come back, as Mr. Gallagher

14  did, you have no benefit time at all.

15  A   That is correct.

16  Q   And then you start earning it again, correct?

17  A   Yes.

18  Q   And then you have to work 1250 hours of work

19  time in order to reapply for FMLA.

20  A   Correct.

21  MR. MAHONEY:  Okay.  Nothing further, your

22  Honor.

23  THE COMMISSIONER:  Redirect?

24  MR. HARA:  No further questions.

1          THE COMMISSIONER:  Okay.  Thank you very much.

2                    (Witness excused.)

3          MR. HARA:  Sheriff would like to call John

4    Harrington next.

5          THE COMMISSIONER:  Sure.

6                While we wait for Mr. Harrington to come

7    in, let's put this on the record then.  Respondent

8    Exhibit 1, which is five pages, specifically memos

9    dated several various dates from Human Resources

10   directly to Brian Gallagher.

11         MR. MAHONEY:  Yes, your Honor.

12         THE COMMISSIONER:  Is that fine?

13         MR. MAHONEY:  Yes.

14         THE COMMISSIONER:  Any objection?

15         MR. MAHONEY:  I mean, I would be submitting

16   them into evidence.

17         MR. MURRAY:  No objection.

18         THE COMMISSIONER:  That's admitted.

19                        (Whereupon, Respondent's

20                         Exhibit No. 1 was

21                         received in evidence.)

22                        (Witness sworn.)

23

24

1                     JOHN HARRINGTON,

2    called as a witness on behalf of the Sheriff herein,

3    having been first duly sworn, was examined and

4    testified as follows:

5                     DIRECT EXAMINATION

6    BY MR. HARA:

7        Q    Good morning.

8        A    Good morning, sir.

9        Q    Can you please state your name for the record?

10       A    John, common spelling, Harrington,

11   H-A-R-R-I-N-G-T-O-N.

12       Q    And are you currently employed?

13       A    Yes, sir.

14       Q    Where at?

15       A    Cook County Sheriff's.

16       Q    And for how long have you been employed there?

17       A    Nine years.

18       Q    And can you please state your current job

19   title?

20       A    Director of Attendance Review.

21       Q    And was that your job title as of 2012 as

22   well?

23       A    As of 2012, sir, no, it was not.

24       Q    What was your job title as of 2012, if you can

1    remember?

2        A    Director of Cook County Sheriff Boot Camp.

3        Q    Can you please explain your duties as a

4    supervisor for the Cook County Sheriff's Office right

5    now?

6        A    Yes.  I enforce the Cook County Sheriff's

7    Office General Order Unauthorized Absence, in which I

8    inform employees of infractions that violate that

9    General Order of Unauthorized Absences.

10       Q    And does the Cook County Sheriff's Office have

11   established policies concerning unauthorized absences?

12       A    Yes, sir.

13       Q    And can you please explain to the best of your

14   abilities those policies?

15       A    Sure.  There are unauthorized absences by

16   definition, cause when a Cook County Sheriff's employee

17   is absent from work and does not have the requested

18   benefit time to support that absence.  And it --

19            THE COMMISSIONER:  Go ahead.

20            THE WITNESS:  -- and when those infractions do

21   occur, then I inform the employee beginning with

22   counseling, and any subsequent unauthorized absences

23   after an employee has been counseled, discipline is

24   initiated.

1    BY MR. HARA:

2        Q    And can you state the reasoning for why these

3    policies were created in the first place?

4        A    I would be speculating as to why the policy

5    was created in the first place.

6                    DIRECT EXAMINATION

7    BY MR. MURRAY:

8        Q    What if any impact does unauthorized absences

9    for correctional officers have on jail operations, if

10   you know?

11       A    Sure.   It would be, once again; my speculation

12   would be to curb absenteeism as a result of overtime

13   that would occur in the event either officers or

14   deputies are mandated to their positions.

15       Q    And how about for officers that are deputies

16   in Court Services, is there an impact for -- is there

17   any impact on that as well for unauthorized absences?

18       A    Yes, deputies or correctional officers, in the

19   same manner, it would be my understanding, too, that it

20   could perhaps curb manpower shortages in any given

21   facility.

22   BY MR. HARA:

23       Q    And just for the record, these orders or these

24   policies apply to who?

1    A    All Cook County Sheriff employees.

2    Q    If an employee has a legitimate medical

3 excuse, do they have options available to correct their

4 unauthorized status?

5    A    Yes, they do.

6    Q    And can you please explain that process?

7    A    Yes, there are a variety of options available

8 to an employee in the Cook County Sheriff's Office in

9 which they could correct their status.  In the event

10 someone had -- I'll give an example.  If someone were

11 to have had a medical catastrophe of such in which they

12 were incapacitated or under a doctor's care in a

13 hospital, they could apply for an FMLA block of time to

14 cover that, in which they perhaps were previously

15 carried during that time in an unauthorized status of,

16 let's say, no sick time.  That would be one option

17 available to them.

18    Q    And do you know what the Attendance Review

19 Unit is?

20    A    The Attendance Review Unit is a unit that is

21 responsible for the statistical recordkeeping of

22 employees who have had unauthorized absences in which

23 they have been both counseled and disciplined.

24    Q    And what is the Attendance Review Unit's role

1    in the disciplinary process relating to employees with

2    unauthorized absences?

3        A    Sure.  There's an administrative process in

4    which myself, being the Director of Attendance Review,

5    issues the employee who has violated the General Order

6.   either a counseling or a Disciplinary Action Form.  At

7    that point the information is sent to the Employee

8    Discipline.  If the matter is grieved by the employee,

9    a grievance hearing will take place with the

10   representing union as well as the employee, and a

11   4th step grievance hearing for -- I'm not quite certain

12   as to the grievance hearing step for the Courts -- will

13   take place with Assistant General Counsel for the

14   Sheriff's Office.

15           In the event there is a -- the grievance

16   is granted, the discipline which is initially issued

17   will be then rescinded.  If it has been denied, then

18   the employee will be issued a disciplinary disposition

19   form by Employee Discipline to fulfill that obligation

20   of a suspension.

21       Q    And can you please explain what progressive

22   discipline is?

23       A    Sure.  There are tiers of progressive

24   discipline in which an employee is first counseled for

1   their first infraction of an unauthorized absence, and
2   then progressively the next unauthorized absence would
3   be a written reprimand, that would be their 2nd
4   Occurrence, followed by a 3rd Occurrence of a one-day
5   suspension, and then progressively leading -- for Court
6   Services a total of 5 occurrences. If a 6th Occurrence
7   occurs, a complaint register is filed for the employee
8   with the Office of Professional Review for the
9   employee's termination.

10      Q     And is this progressive discipline process the
11  same for every employee?

12      A     No, sir, it is not.

13      Q     Can you please explain how it differentiates
14  between employees?

15      A     Yes, sir. By way of contract, Court Services
16  has a total of six occurrences in which a complaint
17  register is filed for their termination. The
18  Department of Corrections differs in that a total of 13
19  occurrences would initiate a complaint register for
20  their termination.

21              There's also another way a complaint
22  register can be filed for an employee's termination on
23  the Department of Corrections side, they have what is
24  referred to as a rolling calendar clause in their

1    contract; if they were to have 80 hours of unauthorized

2    absences in a 365-day rolling calendar, that is also

3    another way a complaint register can be filed for an

4    employee's termination.  I could explain what that is

5    in the event that's where you want to go with it.

6        Q    And you stated before that the first step in

7    this process is counseling.

8        A    Yes, sir.

9        Q    Is that always the first step?

10       A    Yes, it is.

11       Q    And what occurs in this counseling session?

12       A    Sure.  In the counseling session I notify the

13   employee in writing in a counseling form that they have

14   violated the Unauthorized Absence General Order.

15            Additionally, I'm required to do two

16   things per the General Order, the first of which I

17   inform the employee of a variety of options that are

18   available to them to help keep them in an authorized

19   status.  I refer the Bureau of Human Resources contact

20   information sheet, it's a three-page document which

21   lists those variety of options available to the

22   employee to help keep them in an authorized status, and

23   I have them sign the third page.  I make them copies of

24   that three-page document for their record.

1          Additionally, I show them what a

2  Disciplinary Action Form looks like, and the reason I

3  show them that form is for a couple of different

4  reasons.  It lists all the categories of unauthorized

5  absence at the top of that document.  I go over each

6  one of those unauthorized absence categories and

7  explain to them what those -- what those terms mean.

8          Further down that document in a

9  Disciplinary Action Form lists the tiers of progressive

10  discipline, and I inform the employee first, too, going

11  back to counseling one more time, that counseling stays

12  on the record for the duration of your career.  Their

13  representing union, being FOP, so it was their former

14  union that filed an unfair labor practice, my

15  understanding, that the counseling would expire in

16  365 days from the date of the occurrence, and that

17  decision is still pending.

18          So I tell them any subsequent

19  unauthorized absences that they have, the next one

20  will automatically go to a written reprimand,

21  2nd Occurrence.  I explain to them there that should

22  they not have another unauthorized absence after their

23  written reprimand, 2nd Occurrence, that that occurrence

24  will expire in 365 days.

1          In the event that they do not, if they
2    have another unauthorized absence within a year of
3    their 2nd Occurrence, it will go a 3rd Occurrence.  A
4    3rd Occurrence also will expire in a period of 365 days
5    if the employee does not have another unauthorized
6    absence in a year from that occurrence.

7          If they do, it will to go to a
8    4th Occurrence, and I make it clear to the employee
9    that things change from a 4th Occurrence and 5th
10   Occurrence, that the occurrences will not expire now
11   for a period of 18 months.  In the event they have a
12   6th Occurrence, a complaint register will be filed for
13   their termination.

14   Q     Thank you for that.

15         And did you have any involvement with the
16   Respondent in connection with this progressive
17   discipline relating to his unauthorized absences?

18   A     Yes, I did.

19   Q     And do you happen to remember your
20   involvement?

21   A     Yes.  I believe it may have been either the
22   4th or 5th or perhaps the 4th and 5th Occurrence in
23   which I issued a Disciplinary Action Form.

24         MR. HARA:  I have copies of the counseling

1   form and the unauthorized absence disciplinary forms

2   that I'm marking as Sheriff's 3.

3               (Whereupon, Sheriff's

4                 Exhibit No. 3 was

5                 marked for identification.)

6      MR. MAHONEY:  No objection.

7      THE COMMISSIONER:  Entered for the record then

8   as Sheriff's Exhibit 3, which is the counseling record.

9               (Whereupon, Sheriff's

10               Exhibit No. 3 was

11               received in evidence.)

12  BY MR. HARA:

13     Q   Mr. Harrington, do you recognize this form?

14     A   Yes, I do.

15     Q   And can you explain what this form is, please?

16     A   This is a counseling form in which --

17     Q   Well, that's fine.  Let me go on.

18     A   Sure.

19     Q   Whose signature is it at the bottom?

20     A   Sean Heffernan.

21     Q   And do you know who Sean Heffernan is?

22     A   I do.

23     Q   Can you explain who he is?

24     A   He's an employee of the Cook County Sheriff's

Case: 1:17-cv-08028 Document #: 1-1 Filed: 11/06/17 Page 147 of 194 PageID #:152

42

```
 1   Office.  It's my understanding during this time in
 2   September of 2012 he was the one responsible for
 3   issuing counseling.  I believe he is still in the
 4   capacity in the Sheriff's Office, at what exactly his
 5   position is now, I'm uncertain.
 6       Q    And who is this form for, this counseling form
 7   for?
 8       A    Deputy Brian Gallagher.
 9       Q    And how do you know this?
10       A    His name is -- the employee name is titled at
11   the top, and his signature is at the bottom by
12   employee's signature.
13       Q    So this form would be the first step in the
14   disciplinary process, is that correct?
15       A    Yes.
16       Q    And what would occur during this counseling
17   session -- well, actually, strike that.  We already
18   went through that.
19            If you can turn to Bates stamp Page 273,
20   please?  And can you explain what document we're
21   looking at here?
22       A    Yes, this is a Disciplinary Action Form, which
23   is the 2nd Occurrence of September 10th, 2012, no
24   vacation time was the infraction, the unauthorized
```

MB 71

1    absence.

2         Q    And how do you know that this was a no

3    vacation time infraction?

4         A    The box is noted under the type of

5    unauthorized absence, which No Vacation Time is

6    checked, and the date of which the no vacation time had

7    taken place is listed in the Absence Date box.

8         Q    And can you please state what date that is?

9         A    September 10th of 2012.

10        Q    And so this is the second step in the

11   disciplinary process, is that correct?

12        A    That's correct.

13        Q    And is it correct to say that before this

14   September 10th, 2012 unauthorized absence, there was

15   another unauthorized absence before this?

16        A    Yes, that's correct.

17        Q    Can you please state that date?

18        A    The unauthorized absence was August 31st of

19   2012.

20        Q    And who was the officer in charge of this

21   disciplinary form?

22        A    It appears that this Disciplinary Action Form

23   was issued by Sean Heffernan to Deputy Brian Gallagher.

24        Q    And there's check marks in the box that states

1   Grievance Procedure, is that correct?

2       A    Yes.

3       Q    Can you please state what this means to you?

4       A    Yes, the Grievance Procedure box was checked,

5   and this matter was to have been heard -- a grievance

6   hearing was to have taken place to dispute the

7   September 10th of 2012 no vacation time, and that

8   grievance was filed by the -- by Deputy Brian Gallagher

9   and his representing union.

10      Q    And how would a grievance procedure work?

11      A    A grievance procedure -- at this time I can't

12  recall, I believe it was FOP representing the union at

13  the time -- the grievance would have been filed with

14  the Sheriff's legal department in which a future

15  grievance hearing was to have taken place with the

16  representing union, Deputy Gallagher, and the Assistant

17  General Counsel from the Sheriff's Office.

18      Q    And how many times can an officer go through

19  this grievance procedure per unauthorized absence?

20      A    My understanding is one time.

21      Q    And do you know if Officer Gallagher was

22  suspended for this second unauthorized absence

23  occurrence?

24      A    No, he would not have been suspended, because

1   this infraction was -- he was only issued a written

2   reprimand for this infraction, there were no discipline

3   days to have been served for this infraction.

4       Q   Thank you.  Can you move on to the next page,

5   please?

6       A   Yes.

7       Q   And is this still a Disciplinary Action Form?

8       A   Yes, it is, in which he -- now, we're at a 3rd

9   Occurrence, Step 2, for a January 28th of 2013 no sick

10  time.

11      Q   And, again, for the record, how do you know

12  that this is a no sick time unauthorized absence?

13      A   Once again, the box is checked in the top of

14  the unauthorized absence portion of the Disciplinary

15  Action Form, No Sick Time box is checked.

16      Q   And, then again, which attendance review

17  officer reviewed this 3rd Occurrence?

18      A   Appears to be Sean Heffernan again.

19      Q   And to your knowledge, was Officer Gallagher

20  suspended for this?

21      A   I do not have any knowledge.  He was issued a

22  one-day suspension for this.  I don't have any

23  knowledge as to whether or not that he had fulfilled

24  his obligation for the suspension, that I do not -- I

1    cannot tell from this document.

2        Q    Thank you.  And moving on to the next page,

3    please, what is this document in front of you?

4        A    This document is a Disciplinary Action Form

5    which makes reference to a 4th Occurrence unauthorized

6    absence.

7        Q    And can you please state the date for that

8    unauthorized absence?

9        A    June 7th of 2013.

10       Q    And what type of unauthorized absence?

11       A    No sick time.

12       Q    And the officer in charge of this 4th

13   Occurrence?

14       A    Sergeant Callahan.

15       Q    Thank you.  And then moving on to the next

16   page, please.  Is -- this page is Bates stamped 276 for

17   the record.  What document are we looking at here,

18   please?

19       A    This is a Disciplinary Action Form in which a

20   5th occurrence, Absent No Call.

21       Q    And, again, for the record, can you please

22   state the attendance review officer in charge of this

23   form?

24       A    Sergeant Callahan.

1    Q    Thank you. And moving on to the next page,
2    what type of document are we looking at here?
3    A    This is a Disciplinary Action Form for a
4    5th Occurrence.
5    Q    And, Mr. Harrington, you're now involved in
6    this procedure, is that correct?
7    A    That is correct.
8    Q    And how do you know this?
9    A    My name is signed at the bottom of this form.
10   Q    And just for the record to make it clear for
11   the record, there's an X mark in the 5th Occurrence box
12   again, is that correct?
13   A    Yes, sir.
14   Q    Can you please explain why there is still a
15   5th Occurrence check mark, but the dates are different
16   from the previous document that we looked at on Bates
17   stamped Page 276?
18   A    Yes, sir. It's my understanding that the
19   unauthorized absences that were reflected and the
20   Disciplinary Action Form that was issued on April 14th
21   of 2014 making reference to the unauthorized absences
22   from February 24th through 28th of 2014 had been
23   changed to authorized days.
24   Q    And this was in accordance to the grievance

1    process.

2         A    I don't necessarily know; if it was in

3    accordance to the grievance process, it very well could

4    have been a result of him being put in a different

5    status that could have included either disability or

6    FMLA. It's difficult for me to determine at this point

7    from looking at this document as to why those days were

8    removed. I would have to go back and look to see what

9    these days were changed to, but it's my understanding

10   that these days were changed subsequently to authorized

11   absences.

12        Q    And so now this document that you have in

13   front of you for the 5th Occurrence dated August 18th

14   to the 21st of 2014 is now the official 5th Occurrence

15   of unauthorized absences, is that correct?

16        A    That's correct.

17        Q    And then can we turn to -- it's the second to

18   the last page. I'm sorry, for the record, the Bates

19   stamps are out of order, it's Bates stamp 268.

20        A    Okay, yes, sir.

21        Q    What document are we looking at here?

22        A    This is a Disciplinary Action Form, which -

23        Q    And -- sorry.

24        A    Go ahead.

1     Q    What occurrence would this form be referencing

2   to?

3     A    This form references a 6th Occurrence.

4     Q    And did you fill out this form?

5     A    Yes, sir, I did.

6     Q    And how do you know that you filled out this

7   form?

8     A    I signed the bottom of the Disciplinary Action

9   Form.

10    Q    And what type of unauthorized absence is this

11  form relating to?

12    A    No Sick Time.

13    Q    And can you please state the dates for this

14  unauthorized 6th Occurrence?

15    A    Yes, there were two dates, October 29th and

16  30th of 2014.

17    Q    And it states under the progressive discipline

18  that a complaint register shall be submitted to the

19  Office of Professional Review seeking termination.

20  Does this -- does this happen on all 6th Occurrences?

21    A    Yes, sir.

22    Q    And did you submit a complaint to the Office

23  of -- or did you submit a complaint seeking

24  termination?

1    A    Yes.

2    Q    Can you please describe that process?

3    A    Yes, I fill out a complaint register listing

4    all of the unauthorized absences as reflected in this

5    Disciplinary Action Form on this Exhibit 268. I get

6    the complaint register notarized, and I submit it to

7    the Office of Professional Review with a copy of the

8    hard file for the employee in which I'm submitting the

9    complaint register on.

10        MR. HARA: And I have a copy of the complaint

11   submitted, and I would like to mark it as Sheriff's 4.

12                    (Whereupon, Sheriff's

13                    Exhibit No. 4 was

14                    marked for identification.)

15        THE COMMISSIONER: Entered for the record,

16   Mr. Mahoney?

17        MR. MAHONEY: No objection.

18        THE COMMISSIONER: Sheriff's Exhibit 4, which

19   is Sheriff's Cook County Office of Professional Review

20   Complaint Register dated November 17th, 2014, is

21   admitted.

22                    (Whereupon, Sheriff's

23                    Exhibit No. 4 was

24                    received in evidence.)

1          THE COMMISSIONER:  Go ahead.

2     BY MR. HARA:

3          Q     Mr. Harrington, do you recognize this

4     document?

5          A     Yes, sir.

6          Q     And what is this document?

7          A     This is a complaint register.

8          Q     And how do you know this document?

9          A     This document is a document that is used for

10    filing a -- I know this document to be used for filing

11    a -- in which an employee has incurred a total of six

12    unauthorized absences.  The policy states that I file a

13    complaint register, this is a prewritten form in which

14    I fill the information in, and I submit this form to

15    the Office of Professional Review for their

16    investigation.

17         Q     And what is this complaint alleging?

18         A     This complaint is alleging that Deputy Brian

19    Gallagher has had a total of six unauthorized absences.

20         Q     And based on this violation of policy, is

21    termination warranted in your view as the head

22    supervisor?

23         A     Yes, sir.

24               MR. HARA:  Thank you.  No further questions.

1          MR. MURRAY:  Actually, I just have a couple.

2     Sorry.

3     BY MR. MURRAY:

4          Q    So if you would take out Exhibit 3 again,

5     please, Mr. Harrington?  Are you there?

6          A    Yes, sir.

7          Q    If you wouldn't mind going to Bates stamp

8     Page 279?

9          A    Yes.

10         Q    And this is a correspondence from the

11    Sheriff's Office of Cook County, it's dated March 22nd,

12    2013.  Generally speaking, do you know what we're

13    looking at here?

14         A    Yes, this is a grievance response.

15         Q    And what is that?

16         A    A grievance response is a response to the --

17    written by Assistant General Counsel in which they are

18    either denying or granting a grievance, and in this

19    particular -- this particular matter here, this

20    particular grievance response is authored by First

21    Assistant General Counsel Matt Burke.  This is -- he is

22    denying this particular grievance.

23         Q    And with this particular grievance there are

24    dates that are mentioned here.  What dates did this

1  grievance concern?

2      A     August 31st of 2012, September 10th of 2012,

3  January 28th of 2013.

4      Q     And so we're cross referencing here, if you

5  would go to Page 275? Are you there?

6      A     Yes, I am.

7      Q'    And are those dates reflected in the

8  progressive disciplinary step process on 275?

9      A     ⌐ On 275, yes. August -- well, I'll take them.

10 one at a time.  August 13th of 2012 is counseling, that

11 has been referenced in this grievance response;

12 September 10th of 2012 was the written reprimand that

13 has been referenced in this grievance response; the

14 January 28th of 2013, which is a 3rd Occurrence,

15 one-day suspension, has been referenced in this

16 grievance response, all of which have been denied.

17     Q     And, Mr. Harrington, I think you misspoke, you

18 said August 13th, 2012.  Was it August 13th or

19 August 31st?

20     A     I'm sorry, August 31st of 2012.  I apologize.

21     Q     So Mr. Gallagher was aware, obviously, of the

22 grievance process, because he did file grievances about

23 these dates, correct?

24     A     Yes.

54

1     Q    And then on Page 280. Are you there?

2     A    Yes, sir.

3     Q    What is it that we're looking at here?

4     A    This is an acknowledgement in which he has

5  received the grievance response from First Assistant

6  General Counsel Matt Burke in which his grievance was

7  denied.

8     Q    Okay. And then the last thing I have for you,

9  sir, is there was some discussion about the 5th Step

10  Occurrence and that the -- the difference in those two

11  dates. I'm not sure what your testimony was, but

12  ultimately he was given those dates initially, which is

13  the February 24th through February 28th, 2014, he was

14  given credit for those dates, in other words, he was

15  put into an authorized status for those dates, right?

16     A    That's correct.

17     Q.   So whatever the method was that he grieved

18  those, it ultimately worked out in his favor, is that

19  fair to say?

20     A    Yes; it did.

21     Q    And that's because when he incurred the

22  additional unauthorized occurrence, it went right back

23  to the same 5th rung on the ladder?

24     A    That's correct. Had he not been given credit

1   for those days, the 6th Occurrence would have occurred
2   on the 5th Occurrence that I replaced it with, if I'm
3   making sense with my answer.

4      Q    The last question I have for you, sir, is
5   ultimately whose responsibility is it to ensure that a
6   deputy sheriff's -- or a correctional officer -- a
7   Sheriff's employee to make sure that they are in an
8   authorized status?

9      A    Could you repeat the question, please?

10     Q    I'm sorry, probably a bad question on my part.
11          Whose responsibility ultimately is it to
12  ensure that absences are in an authorized status?

13     A    It's the officer's responsibility.

14          MR. MURRAY:  Thank you.  I have nothing
15  further.

16          MR. MAHONEY:  I have a few questions for you
17  as well.

18                  CROSS-EXAMINATION

19  BY MR. MAHONEY:

20     Q    Since we're on it, I will start where
21  Mr. Murray ended it.  We keep talking about this date
22  February 24th to the 28th of '14 on Sheriff's Exhibit
23  No. 3 on Bates stamp No. 276.  First, it appears as a
24  5th Occurrence, and then the 5th Occurrence then

1    becomes August 18th to the 21st of 2014, is that
2    correct?
3         A    Yes, sir.
4         Q    Okay.  And are you familiar with the hard card
5    system in the Sheriff's Department?
6         A    I'm familiar with it.
7         Q    And that's the official record of how time is
8    kept within the department, is that correct?
9         A    I believe so.
10        Q    Okay.  You should have in front of you
11   Sheriff's Exhibit No. 1.  Could you take a look at
12   that, please?
13        A    Okay.
14        Q    If you could turn to Page 5, which is Bates
15   stamp 340.  Are you with me there?
16        A    I'm at 340, yes, sir, I'm there.
17        Q    Let's look at February of 2014.
18        A    Yes.
19        Q    You see initially, let's go to February 10th,
20   and then reading over, it says DIS, DIS, DIS.
21        A    Oh, yes, sir.
22        Q    That means disability, is that correct?
23        A    That is correct, sir.
24        Q    So the dates in question where Mr. Gallagher

1    was initially charged with an unauthorized absence,

2    that was -- he was on disability at that time, correct?

3            MR. MURRAY:  Objection.  What dates are you

4    talking about?

5            MR. MAHONEY:  I'm talking about February 24th,

6    25th, 26th, 27th, and 28th, the dates I asked the

7    witness about earlier.

8            THE COMMISSIONER:  I mean, he can answer the

9    question.  I understand.

10           Do you understand his question?

11           THE WITNESS:  I do understand his question.

12           THE COMMISSIONER:  Okay, go ahead.

13           THE WITNESS:  I can't say at the time if he

14   was actually on disability.  He may have at that time

15   have filed for disability when he was issued this

16   Disciplinary Action Form, and he was yet to be

17   approved, but to answer your question was he on

18   disability at this time, it's difficult for me to

19   determine that.

20           MR. MAHONEY:  Okay, that's fair.  Thank you.

21   I appreciate that.

22   BY MR. MAHONEY:

23       Q    Let's say -- as long as we're on the sheet,

24   though, if we're reading across from the top line

1  there, it's March 3rd, 2014.  What's marked on that
2  date?  The same sheet, I'm sorry, same one.
3      A    Same sheet?
4      Q    Yeah, reading across in there.
5      A    March 3rd.  March 3rd appears to be a holiday.
6      Q    And then March 4th then?
7      A    March 4th, he appears to be on duty.
8      Q    So March 4th is him working on duty, correct?
9      A    That's what it looks like, sir.
10     Q    Okay, great, thanks.
11              A couple of other questions for you,
12  please, sir.  If you would turn again back to Sheriff's
13  Exhibit No. 3, it's towards the end, it's actually the
14  second to the last page, it's marked as Bates stamp
15  268.  Unfortunately, these things aren't in numerical
16  order, but I'm sure you can find it, the second to last
17  page on that.
18     A    Okay, I'm there.
19     Q    And Counsel asked you, you know, what happens
20  after the 6th Occurrence, and he actually read it, it
21  says, "A complaint register shall be submitted to the
22  Office of Professional Review seeking termination," is
23  that correct?
24     A    Yes, sir.

1      Q    So when you prepared your To/From subject

2  report, your sworn affidavit, you knew that this was

3  seeking separation, correct?

4      A    Yes, sir.

5      Q    Okay.  Let's go over some of these sheets.

6  The first counseling sheet you had mentioned, this was

7  Sean Heffernan and not you, correct?

8      A    Yes, sir.

9      Q    The 2nd occurrence on September 10th, 2012,

10  that was also Sean Heffernan and not you, correct?

11     A    That's correct.

12     Q    And you testified that the grievance box was

13  checked on Bates stamp No. 273 and that Mr. Gallagher

14  asked for the Grievance Procedure, correct?

15     A    Yes, sir.

16     Q    And then there was some discussion that

17  Mr. Murray asked you a question about whether the

18  grievance was denied or not.  Is that correct?

19     A    Yes.

20     Q    And when it was denied, that was at the

21  3rd step, if I'm not mistaken, is that correct?

22     A    Yes, I believe it was.

23     Q    Are you familiar with the Collective

24  Bargaining Agreement for the Illinois FOP Labor Council

1   and the Sheriff's Office representing these officers?

2      A   I know that one exists.

3      Q   And do you know there's another step after

4   the 3rd step for arbitration; are you aware of that?

5      A   Yes, sir, I am.

6      Q   So there is not a final decision made until

7   the case goes before an arbitrator, is that correct?

8      A   That's not my understanding of it, sir.

9      Q   Okay, that's fine.

10           And then the next step was 274, Bates

11   stamp 274, Mr. Gallagher opted for the Grievance

12   Procedure in that position as well --

13      A   Yes.

14      Q   -- is that correct?

15      A   Yes.

16      Q   All right. And then on 275 the box is not

17   checked, but it has a grievance number in the line

18   under Mr. Gallagher's signature, it says 14 U 049, so

19   does that appear to you that a grievance was filed on

20   that case as well?

21      A   Yes, it implies a grievance was filed in this

22   matter.

23      Q   Okay. Next we'll go to 277, that's the new

24   5th Occurrence, that's the August 18th through the

1   21st, 2014 dates, and that also indicates that a

2   grievance was obtained on that date, is that correct?

3       A   Yes.

4       Q   And you could see there's a grievance number

5   in that box as well?

6       A   Yes.

7       Q   And as you stated earlier, you weren't sure

8   when the FOP took over from the Teamsters, but it was

9   September of 2014, that's when the FOP took over, just

10  for clarification.

11      A   Okay.

12      Q   Okay, thanks, appreciate that.

13              And then the last -- let's go to back to

14  268, that's the alleged 6th Occurrence of October 29th

15  and October 30th, 2014.  There's no meeting with

16  Mr. Gallagher on that date, is there?

17      A   No, sir.

18      Q   So the 6th Occurrence is alleged, a complaint

19  register is obtained, and we're going to seek the

20  termination of Mr. Gallagher based on this 6th

21  Occurrence, is that correct?

22      A   Yes, sir.

23      Q   Okay.  You had also mentioned that there's

24  different types of authorized absences -- there's

1   unauthorized and authorized absences, correct?

2       A    Yes.

3       Q    Okay.  And if it's an authorized absence, then

4   there's no Disciplinary Action Form completed.

5       A    That's correct.

6       Q    Right, okay.  And if it's an unauthorized

7   absence, that's when we obtain the Disciplinary Action

8   Form.

9       A    Yes, sir.

10      Q    The 1st step is always going to be the

11  counseling?

12      A    Yes.

13      Q    And then the 2nd step is the written

14  reprimand.

15      A    Yes, sir.

16      Q    And you explained the -- I don't need to go

17  over it again, you explained how long it stays on your

18  record and everything; you do recall that, correct?

19      A    Yes, sir.

20      Q    And you also mentioned counseling does not

21  come off of a deputy's record.

22      A    That's correct.

23          MR. MAHONEY:  One minute, your Honor, please.

24

1   BY MR. MAHONEY:

2       Q    Mr. Harrington, I don't know if you know the

3   answer to this, I'm going to ask it anyway. Do you

4   know, was Mr. Gallagher ever suspended for any of these

5   unauthorized absences?

6       A    I don't -- myself I do not know that. That is

7   -- I do -- myself I do not -- the Attendance Review

8   Unit is not responsible for the statistical

9   recordkeeping as to whether or not someone has served

10  suspension time, so I don't know the answer to that.

11          MR. MAHONEY: Okay, I appreciate that. Thank

12  you.

13              No further questions at this time, your

14  Honor.

15          MR. MURRAY: A couple quick follow-ups.

16                  REDIRECT EXAMINATION

17  BY MR. MURRAY:

18      Q    If you go to Page 275.

19          MR. MAHONEY: What are we looking at again?

20          MR. MURRAY: 275.

21          THE WITNESS: Okay.

22  BY MR. MURRAY:

23      Q    This is the DAF for the 4th Occurrence, which

24  is June 7th, 2013, is that right, sir?

1    A    2013, 4th Occurrence, June 7th, yes, sir.

2    Q    Because of the notation on this document, this

3  was another one that Mr. Gallagher grieved, is that

4  right?

5    A    Yes.

6    Q    And if you go to Page 281.

7    A    Yes.

8    Q    After seeing Page 281, do you have any

9  understanding as to what the result of that grievance

10  was?

11    A    Yes, 281 references a grievance response in

12  which this grievance was denied.

13    Q    Okay. And then if you would go please to

14  Page 277, which is the DAF, that references the

15  5th Occurrence, which is August 18th through 21st,

16  2014. Do you see that?

17    A    Yes, sir.

18    Q    And Mr. Gallagher grieved that occurrence as

19  well, is that right?

20    A    Yes.

21    Q    Do you know the results of that grievance?

22    A    I do not know the result of that grievance.

23    Q    If you would go to -- I apologize -- Page 284.

24    A    Okay.

1    Q    Are those for the same grievances, is that for

2    the same grievance?

3    A    Yes, sir, it is.

4    Q    And what was the result of that grievance?

5    A    This grievance was denied.

6    Q    So then, of course, when you get to the

7    6th Occurrence, your role in that process is to put

8    together the complaint register and forward that on to

9    OPR for their further action?

10   A    For investigation, yes, sir.

11        MR. MURRAY: Thank you, sir. Nothing further.

12        MR. MAHONEY: Just a quick follow-ups.

13                    RECROSS-EXAMINATION

14   BY MR. MAHONEY:

15   Q    The denial of grievances that the State just

16   asked you about, that was denied at what step? Was it

17   denied at the 3rd step?

18   A    I believe so, sir.

19   Q    Is there a 4th step, if you know, in the

20   Collective Bargaining Agreement between the Sheriff's

21   Office and the Illinois FOP representing Cook County

22   Sheriff's deputies and Court Services? If you know.

23   A    I don't know. I'd be speculating.

24   Q    Okay. I'm not going to ask you to speculate.

1    Thank you.

2            ·    If Mr. Gallagher was never suspended up

3    till this time, would termination be the appropriate

4    remedy in this case?

5        A    You're asking me an opinion?

6        Q    Yes.

7        A    I would think based on the fact that he had

8    been informed if he were to incur a 6th Occurrence,

9    which would warrant termination, I would say yes, it

10   would warrant termination.

11           MR. MAHONEY:  Okay.  No further questions.

12           THE COMMISSIONER:  Thank you.

13           MR. HARA:  The Sheriff would like to call

14   Georgia Garcia.

15           THE COMMISSIONER:  Thank you for your time.

16           THE WITNESS:  You're welcome.

17                   (Witness excused.)

18           MR. HARA:  The Sheriff would like to call

19   Georgia Garcia.

20                   GEORGIA GARCIA,

21   called as a witness on behalf of the Sheriff herein,

22   having been first duly sworn, was examined and

23   testified as follows:

24

1        DIRECT EXAMINATION

2   BY MR. HARA:

3        Q    Good morning.  Can you please state your name

4   for the record?

5        A    Georgia Garcia.

6        Q    And your last name, spelling it for the

7   record?

8        A    G-A-R-C-I-A.

9        Q    Are you currently employed?

10       A    Yes.

11       Q    Can you state where at?

12       A    Cook County Sheriff's Office, Office of

13  Professional Review.

14       Q    And for how long have you been employed there?

15       A    Since 2004 in that particular department.

16       Q    And can you please state your current job

17  title?

18       A    Investigator.

19       Q    And were you an investigator as of 2012?

20       A    Yes.

21       Q    And can you please state your duties or

22  responsibilities as an investigator?

23       A    To conduct a fair investigation as far as

24  retrieving documents, interviewing witnesses, accused

1    individuals.

2        Q    Are you assigned to any specific area within

3    OPR?

4        A    I'm in Squad 1, which primarily deals with

5    Court Services.

6        Q    Okay, thank you.  To your knowledge, what is

7    an unauthorized attendance case?

8        A    An unauthorized attendance case is any time

9    someone requests a day off or takes a day off using

10   time they have not accrued.

11       Q    And in your service how many of these

12   attendance cases have you investigated?

13       A    Numerous, I'd say more than 20.

14       Q    And are cases assigned to specific

15   investigators within OPR?

16       A    As far as what type of specific cases?

17       Q    Or let me ask a different -- or let me

18   rephrase it in a different way.  How are cases assigned

19   to investigators in OPR?

20       A    The supervisors of the unit.

21       Q    And were you assigned to investigate a case

22   involving Correctional Officer Brian Gallagher?

23       A    Yes.

24       Q    And is Officer Gallagher present here today in

1  the room?

2      A    Yes.

3      Q    Can you please identify him for the record?

4      A    He is the gentleman in the rear of the office,

5  black slacks, nice tie, maybe an orange-ish shirt,

6  dress shirt.

7          THE COMMISSIONER:  For the record, we can say

8  that she identified Mr. Gallagher appropriately.

9  BY MR. HARA:

10     Q    And what type of case was the one involving

11 Officer Gallagher?

12     A    Unauthorized absence.

13     Q    And at some point did you have an opportunity

14 to interview Officer Gallagher?

15     A    Yes.

16     Q    Typically, how do you go about initiating an

17 interview?

18     A    Normally I send out an Order to Appear where

19 he signs and confirms, and I receive it back, and it

20 has the date, and the time, and the place of the

21 interview.

22     Q    And were you able to get Officer Gallagher to

23 appear before you when you notified him of the

24 interview?

1       A    Yes.

2       Q    And can you please state the general process

3    of how an interview works with OPR?

4       A    Well, we do recorded statements now.  Prior to

5    any questioning, they receive documents, they receive

6    three forms, the first one is Notification of

7    Allegations, Administrative Proceedings Rights, and the

8    last one would be a Waiver For Counsel and/or Union

9    Representation.

10           MR. HARA:  I have copies of the Notice of

11   Allegations, Notification of Rights, and Notice of

12   Counsel during this OPR interview that I would like to

13   mark as Sheriff's 5.

14                        (Whereupon, Sheriff's

15                         Exhibit No. 5 was

16                         marked for identification.)

17           MR. MAHONEY:  No objection.

18           THE COMMISSIONER:  Entered and placed in the

19   record.

20                        (Whereupon, Sheriff's

21                         Exhibit No. 5 was

22                         received in evidence.)

23   BY MR. HARA:

24       Q    Miss Garcia, what are the documents in front

1    of you?

2         A    These are administrative forms --

3         Q    And, sorry, go ahead.

4         A    -- in administrative investigations.

5         Q    And how are you familiar with these forms?

6         A    These are provided to the accused prior to any

7    questioning.

8         Q    And is this your signature at the bottom of

9    the form?

10        A    Yes.

11        Q    And can you please explain typically what this

12   form on Bates stamp 293 is?  What would this form

13   entail during the course of your investigation?

14        A    It has the nature of the allegation, who --

15   the officer in charge of the investigation, and the

16   name of the OPR investigators that were present during

17   the interview.

18        Q    And how many OPR investigators were present

19   during this interview with Officer Gallagher?

20        A    Two.

21        Q    And why are there two OPR investigators

22   present?

23        A    You have the primary investigator who is

24   conducting the investigation, then you have the

1    secondary, who is basically a prover as a witness.

2        Q    And during this investigation were you the

3    primary investigator?

4        A    Yes.

5        Q    And turning to the second page, Bates stamp

6    294, can you please explain what this document is in

7    front of you?

8        A    This is explaining the Administrative

9    Proceedings Rights to the accused.

10       Q    And is that your signature at the bottom?

11       A    Yes.

12       Q    And this is one of the forms that would be

13   presented to the officer during the investigation

14   interview?

15       A    Yes.

16       Q    Thank you.  And turning to the last page,

17   Bates stamp 295, what is this document in front of you?

18       A    This is a form to either Waive or Request to

19   Secure Legal Counsel and/or Union Representation.

20       Q    And is that your signature at the bottom?

21       A    Yes.

22       Q    And this form was presented to Officer

23   Gallagher during the interview, is that correct?

24       A    Yes.

1    Q    Thank you.

2          So just trying to visualize what occurs

3    during the interview, you stated before that you notify

4    him, and then he comes in for the interview, and he

5    signs these three forms, is that correct?

6    A    Correct.

7    Q    What happens next?

8    A    Well, it depends on whether or not he requests

9    to reschedule, because he wants either to have union or

10   counsel.

11   Q    Okay.  And if he doesn't reschedule and

12   proceeds with the interview, what happens next?

13   A    Once he signs the forms, then there's a script

14   that we read prior to the questioning also.  Once it's

15   read, and he understands the proceedings, then we

16   proceed with the questioning.

17   Q    And you said that the questions are all on

18   audio now?

19   A    Correct.

20   Q    When you are reading the script to him, what

21   would be the script that you're reading to him?

22   A    Basically advising him of the rules of the

23   interview as far as no speaking when someone else is

24   talking, if you -- if you are asked a question, and

1  then you request to speak to your counsel or union

2  representation, then you have to answer the question

3  prior to leaving the room, so basically the guidelines.

4  　　　　MR. HARA:  Okay.  I have a copy of the audio

5  interview that I would like to mark as Sheriff's 6 for

6  identification.

7  　　　　MR. MAHONEY:  No objection.

8  　　　　THE COMMISSIONER:  Entered for the record.

9  　　　　　　　　　　(Whereupon, Sheriff's

10  　　　　　　　　　　　Exhibit No. 6 was marked and

11  　　　　　　　　　　　received in evidence.)

12  　　　　MR. HARA:  With the Court's permission, I'd

13  like to play the audio.

14  　　　　THE COMMISSIONER:  Yes.

15  　　　　MR. MAHONEY:  Your Honor, for the sake of

16  expediency, the investigator said she reads a script

17  prior to the interview.  The Respondent has no

18  objection to advancing up all the way to his actual

19  statement and getting to the Q and A.

20  　　　　THE COMMISSIONER:  State's attorney agree with

21  that?

22  　　　　MR. MURRAY:  Absolutely.

23  　　　　　　　　　　(Audio played.)

24

1   BY MR. HARA:

2       Q    Miss Garcia, in your view did any of the

3   explanations given by Officer Gallagher during his

4   interview excuse his unauthorized absences?

5       A    No.

6       Q    And why is that?

7       A    Because there was no dispute whether or not he

8   was ill, the issue was he didn't have enough accrued

9   benefit time to cover his absences.

10      Q    And what did you ultimately conclude about

11  Officer Gallagher's unauthorized absences when you

12  completed the investigation?

13      A    That he violated Cook County Sheriff's Office

14  Order 11.4.1.1 on unauthorized absences.

15          MR. HARA:  No further questions.

16          THE COMMISSIONER:  Cross?

17          MR. MAHONEY:  Yes.

18                    CROSS-EXAMINATION

19  BY MR. MAHONEY:

20      Q    Investigator Garcia, you had mentioned that

21  you do a lot of these unauthorized absence

22  investigations, correct?

23      A    Yes.

24      Q    And then in this particular case what you did

1  was you gathered all of the documentation that was

2  presented by the Sheriff's Office, is that correct?

3      A    Correct.

4      Q    Okay.  And then you interviewed Officer

5  Gallagher, is that correct?

6      A    Correct.

7      Q    You didn't interview anyone else, did you?

8      A    Not that I'm aware of.

9      Q    Okay.  You didn't interview the complainant,

10  Mr. Harrington, did you?

11      A    I don't believe so.

12    · Q    And you've seen the Disciplinary Absence Forms

13  that are completed regarding alleged unauthorized

14  absences, correct?

15      A    Correct.

16      Q    You should have in front of you Sheriff's

17  Exhibit No. 3.  If you would, please turn to the second

18  to last page marked as Bates -- I'm sorry, Bates stamp

19  268.  Do you see that one there?

20      A    Yes.

21      Q    That's a form that is submitted by

22  Mr. Harrington, he is the complainant in this case.

23  Where it says 6th Occurrence, do you see that spot

24  there?

1    A    Yes.

2    Q    And then in the Recommended Discipline box --

3  column, rather, the third column on the right, does it

4  say, "A complaint register will be submitted to the

5  Office of Professional Review seeking termination"?

6    A    Yes.

7    Q    And then that's what Mr. Harrington did, he

8  submitted a memorandum, a signed affidavit seeking the

9  termination of Mr. Gallagher, correct?

10    A    Correct.

11          MR. MAHONEY: Okay. No further questions.

12          MR. HARA: No further questions.

13          THE COMMISSIONER: Okay, thank you very much.

14                  (Witness excused.)

15          MR. MURRAY: We have more witnesses, but we

16  have the Sheriff's Orders to get into the record.

17          THE COMMISSIONER: You want to take a break?

18          MR. MURRAY: I would like to, yes.

19          THE COMMISSIONER: Suggestions? Half hour,

20  15, 20 minutes, what do you guys want to do?

21          MR. MAHONEY: I'd prefer a longer if that's --

22          MR. DEBBOLI: I will not be here for the

23  second half.

24          MR. MAHONEY: Okay, then I'd like a half hour

1    at least, if we can do that.

2            THE COMMISSIONER: Let's do that, let's break

3    and come back at 12:30.

4            MR. MAHONEY: Great, wonderful.

5                    (Short recess.)

6            THE COMMISSIONER: Mr. Mahoney, it's your

7    witness. I believe there's -- you wanted some

8    exhibits, I'm sorry, entered for the record.

9            MR. Hara: So Sheriff would like to enter for

10   the record General Order 3401.1 as Sheriff's Exhibit 7.

11                   (Whereupon, Sheriff's

12                    Exhibit No. 7 was

13                    marked for identification.)

14           MR. MAHONEY: No objection.

15           THE COMMISSIONER: 6 was the recording?

16           MR. MAHONEY: 6 was the recording.

17           THE COMMISSIONER: Okay. 7 is entered.

18                   (Whereupon, Sheriff's

19                    Exhibit No. 7 was

20                    received in evidence.)

21           THE COMMISSIONER: 8?

22           MR. HARA: I'd like to enter Merit Board

23   Article X as Sheriff's Exhibit 8.

24

1                          (Whereupon, Sheriff's
2                              Exhibit No. 8 was
3                              marked for identification.)
4          MR. MAHONEY:  No objection.
5          THE COMMISSIONER:  Okay, entered for the
6    record, Sheriff's Exhibit 8.
7                          (Whereupon, Sherif's
8                              Exhibit No. 8 was
9                              received in evidence.)
10         MR. HARA:  I'd like to enter Sheriff's Order
11   11.4.1.1 as Sheriff's Exhibit 9.
12                         (Whereupon, Sheriff's
13                             Exhibit No. 9 was
14                             marked for identification.)
15         MR. MAHONEY:  No objection.
16         THE COMMISSIONER:  Sheriff's 9 is entered for
17   the record.
18                         (Whereupon, Sheriff's
19                             Exhibit No. 9 was
20                             received in evidence.)
21         MR. HARA:  Sheriff would like to enter also
22   Sheriff's Order 11.4.2.0 as Sheriff's Exhibit 10.
23
24

1                      (Whereupon, Sheriff's

2                         Exhibit No. 10 was

3                       marked for identification.)

4       MR. MAHONEY: No objection.

5       THE COMMISSIONER: Sheriff's 10 is entered.

6                      (Whereupon, Sheriff's

7                         Exhibit No. 10 was

8                       received in evidence.)

9       MR. HARA: And Sheriff would like to enter

10  11.2.20.1 as Sheriff's Exhibit 11.

11                    (Whereupon, Sheriff's

12                     Exhibit No. 11 was

13                     marked for identification.)

14       MR. MAHONEY: No objection.

15       THE COMMISSIONER: Okay. Sheriff's Exhibit 11

16  is entered for the record.

17                    (Whereupon, Sheriff's

18                     Exhibit No. 11 was

19                     received in evidence.)

20       THE WITNESS: Anything further?

21       MR. HARA: One moment, your Honor.

22       MR. MURRAY: And Exhibit 6, it's already been

23  entered into evidence?

24       THE COMMISSIONER: Yes, it has.

1          MR. HARA:  Sheriff rests.

2          THE COMMISSIONER:  Mr. Mahoney, your witness.

3          MR. MAHONEY:  I'd like to call the Respondent

4  Brian Gallagher to the stand, please.

5           ·(Witness sworn.)

6           BRIAN GALLAGHER,

7  called as a witness on behalf of the Sheriff herein,

8  having been first duly sworn, was examined and

9  testified as follows:

10          DIRECT EXAMINATION

11  BY MR. MAHONEY:

12     Q   Would you please state your name and spell it

13  for the record?

14     A   Brian V. Gallagher, G-A-L-L-A-G-H-E-R.

15     Q   And who do you work for?

16     A   Cook County Sheriff's Department.

17     Q   And your job title?

18     A   Deputy sheriff.

19     Q   And how long have you worked there?

20     A   April 19th of '95.

21     Q   I'm going to turn your attention to the

22  current matter.  Do you recall when you became aware

23  that there was an OPR investigation against you?

24     A   When I was served with that paper --

1   Q    Okay.

2   A    -- to appear before OPR.

3   Q    And throughout your career you've utilized the

4   Family Medical Leave Act, correct?

5   A    Since 2003.

6   Q    And we'll refer to that going forward as FMLA.

7   A    Correct.

8   Q    I'm going to show you an exhibit that I

9   previously marked as Respondent's Exhibit No. 1.

10         I believe the Court still has it and the

11   State still has it.

12         Can you take a look at it, please?  It's

13   five documents.  They're all concerning FMLA requests.

14   Can you take a look at those for just a minute, please?

15   A    Yes.

16   Q    And so according to these documents, you had

17   applied for and been approved for FMLA since

18   August 18th of 2009, correct?

19   A    Correct.

20   Q    And, actually, you had stated during your

21   statement to OPR that goes back also further than that,

22   correct?

23   A    Yes.

24   Q    When did you first apply for --

1      A    2003.

2      Q    And it's been continuous since that time?

3      A    Yes.

4      Q    Now, if you look at the last document that's

5  -- or the one on top, rather, of the first page of

6  Respondent's Exhibit No. 1, the effective date on there

7  is December 15th, 2014, correct?

8      A    Correct.

9      Q   Okay. And prior to that, those dates were all

10  either in August or September. What happened in 2013

11  that you weren't able to get approval until

12  December 15th, 2014, for your FMLA?

13      A    I had a major surgery.

14      MR. MAHONEY:  Okay. I believe I have already

15  entered this into evidence, your Honor?

16      THE COMMISSIONER:  Yes, you have.

17      MR. MAHONEY:  Okay. Thank you.

18  BY MR. MAHONEY:

19      Q    Have you ever exhausted your FMLA hours?

20      A    I believe in this last year I went over.

21      Q    Okay. I'm talking during the time period in

22  which we're talking about today --

23      A    No.

24      Q    -- which is 2012, 2013, 2014.

1  A  No.

2  Q  And so you're familiar with the FMLA process.

3  A  Yes.

4  Q  And when you would call in to the call-in

5 center for FMLA, what would you normally request?

6  A  I would -- any time I had -- I would just

7 always request FMLA. The call-in center would just

8 say, "What time do you want to use?" and I would say,

9 "Well, this is what I have," they would say, "This is

10 what you have," and they'd say, "You don't have to use

11 FMLA." I said, "No, I'm using FMLA just to cover

12 myself."

13  Q  So there are times you would take FMLA

14 vacation --

15  A  Sick day.

16  Q  -- compensatory time, FMLA sick time, FMLA 0.

17  A  Actually, sometimes I would take FMLA half

18 sick, half personal day, I could split it up.

19  Q  Okay. And these were all considered to be

20 authorized absences, correct?

21  A  Correct.

22  Q  I'm going to show you a document I'm going to

23 mark now as Respondent's Exhibit No. 2.

24

```
1                            .(Whereupon, Respondent's
2                              Exhibit No. 2 was
3                              marked for identification.)
4           MR. MAHONEY:  I'm going to go present a copy
5    to the State, copy to the Court, and a copy to the
6    witness.
7    BY MR. MAHONEY:
8       Q    If you take a look at that form for just a
9    minute, please.
10      A    Okay.
11      Q    Have you had a chance to review it?
12      A    Okay.
13      Q    Okay.  So that's a memorandum that was
14   submitted on your behalf, correct?
15      A    Yes.
16      Q    And it's dated November 5th, 2012?
17      A    Yes.
18      Q    And it's to correct a time and attendance
19   sheet for October 29th, 2012, correct?
20      A    Yes.
21      Q    So initially you were carried as FMLA 0 on
22   that day, and the correct code should have been FMLA
23   vacation time, correct?
24      A    Correct.
```

1    Q.    And this would have happened on occasion from
2    time to time to correct your status on the time card,
3    correct?
4        A    Correct.
5            THE COMMISSIONER:  You want that entered for
6    the record?
7            MR. MAHONEY:  Yes, I want it entered for the
8    record.
9            THE COMMISSIONER:  Any objection?
10           MR. HARA:  No objection.
11           THE COMMISSIONER:  Entered for the record
12   then, this is Respondent's Exhibit 2.
13           MR. MAHONEY:  Okay.
14                        (Whereupon, Respondent's
15                         Exhibit No. 2 was
16                         received in evidence.)
17   BY MR. MAHONEY:
18       Q    Now, much like your OPR statement, there were
19   several questions that you were asked about your time
20   as it relates to this complaint before the Merit Board.
21   I'd like to ask you a few questions about that time
22   now.
23               You should have in front of you Sheriff's
24   Exhibit No. 1.  That's your time card for the period of

1    time here?

2      A    Okay.

3      Q    Okay. Take a look at that, please.

4            So the first thing we're going to look

5    at is August 31st, 2012. Can you see that on the sheet

6    there? It's on the second page, it's the Bates

7    stamp 337.

8      A    Okay.

9      Q    Okay. And how were you marked on that

10    particular day?

11      A    NVT, which means no vacation time.

12      Q    And then you were given a counseling for that,

13    correct?

14      A    Correct.

15      Q    And you were present when Mr. Harrington

16    described the counseling process, correct?

17      A    Yes.

18      Q    Now, if we look at November -- I'm sorry,

19    September 10th, 2012. Do you see that date there,

20    please?

21      A    Yes.

22      Q    What is marked on that date?

23      A    It says No Vacation Time 0.

24      Q    And then on September 11th, 2012, what is

1  marked on that date?

2       A    It says FMLA A, which means absent.

3       Q    So is it possible on September 10th you called

4  in for FMLA, and it was improperly marked by the

5  Sheriff's Department?

6       A    Yes.

7       Q    If you look on September 17th, 2012, what are

8  you carried on that date?

9       A    FMLA 0.

10      Q    So on the 11th it's FMLA Absence and on the

11  17th it's FMLA 0, correct?

12      A    Correct.

13      Q  .  And both of those days are considered to be

14  authorized absences, correct?

15      A    Correct.

16      Q    And in the month of September how many FMLA

17  days did you use that particular month?

18      A    In September, two.

19      Q    Two were shown, and we believe it should have

20  been three, correct?

21      A    Correct.

22      Q    And how many days are you authorized under

23  your FMLA?

24      A    Five.

1    Q    Five, okay.

2            If you turn to the next page of the

3    exhibit, now we're into the year 2013, and please look

4    at the date of January 28th, 2013.  Do you see where

5    that date is?

6    A    Yes.

7    Q    And that date is November -- I'm sorry, that

8    date is marked as NST 0, correct?

9    A    Correct.

10   Q .  And what is that standing for, again, that

11   code?

12   A    No sick time.

13   Q    And then the next -- two days after the 29th

14   and the 30th, can you read those dates?

15   A    Looks like FMLA vacation days.

16   Q    So, again, when you called in, you would

17   always ask for FMLA.

18   A    Correct, always.

19   Q    And if you had benefit time, you would take

20   benefit time.

21   A    Yes.

22   Q    And if you had no benefit time, you would go

23   for FMLA 0.

24   A    Yes.