UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BRIAN GALLAGHER | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 17 C 8028 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| THOMAS J. DART, COOK COUNTY SHERIFF; THE COOK COUNTY MERIT BOARD; JAMES P. NALLY, Chairman; VINCENT T. WINTERS, Board Member, KIM R. WIDUP, Board Member, JENNIFER E. BAE, Board Member, PATRICK BRADY, Board Member, GRAY MATEO-HARRIS, Board Member, JOHN DALICANDRO, Board Member, BYRON BRAZIER, Board Member | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Plaintiff Brian Gallagher filed this lawsuit following his termination from the Cook County Sheriff's Office ("CCSO"), alleging that Defendant Thomas Dart violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), 29 U.S.C. § 1161 *et seq.*, and the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*. Gallagher also petitioned for review of CCSO Merit Board's ("Board's") February 7, 2017 decision to terminate him. The Court dismissed Gallagher's ADA and COBRA claims [33]. Dart now moves for partial summary judgment on Gallagher's claim for violation of the FMLA.[1] Because the record does not suggest that a causal

---

[1] Although the complaint does not specify whether Gallagher's claim involves interference or retaliation under the FMLA, both parties brief it as a retaliation claim. The Court therefore evaluates it as a retaliation claim.

connection exists between Gallagher's protected activity and the adverse action, the Court grants Dart's motion for partial summary judgment [68].

## BACKGROUND[2]

On April 19, 1995, Gallagher began working as a deputy sheriff with CCSO. He worked within Court Services from 2008 until his termination in 2016. Gallagher alleges that Defendants retaliated against him for taking FMLA leave by terminating him and subjecting him to four complaints. The complaints include allowing a detainee to escape, failing to report excessive force, violating secondary employment rules, and violating uniform regulations.

In 2003, Gallagher had gastric bypass surgery and took twelve weeks off from work. Gallagher took a leave of absence for the surgery and applied for FMLA upon his return. Following that surgery, Gallagher annually applied for five days of FMLA leave per month until his termination. In applying for FMLA leave, he did not need to obtain a signature from a direct supervisor. When Gallagher first applied for FMLA leave, he submitted requests to the sheriff who worked at the desk of his department. The process changed during his employment, requiring that Gallagher submit FMLA requests to the Chief of Courts office, which then forwarded requests to the personnel department.

In June 2014, Gallagher underwent adrenalectomy surgery and took approximately ten months off from work. When he returned to work in March 2015, Gallagher exhausted his leave time, and he was not yet eligible for additional FMLA leave because he had not worked the requisite 1250 hours in the previous twelve months. Gallagher alleges that one of his indirect supervisors, Chief Banks, made a number of disparaging remarks "including but not limited to,

---

[2] The Court derives the facts in this section from the Joint Statement of Undisputed Facts and the accompanying exhibits. Because neither side has objected to the consideration of any facts on hearsay or other grounds at the summary judgment stage, the Court considers them admissible for purposes of resolving this motion. The Court considers all facts in the light most favorable to Gallagher, the non-movant.

'thanks for finally coming to work.'" Doc. 70 ¶ 15. Banks testified that he never knew Gallagher took FMLA and had "no idea when Deputy Gallagher took or used FMLA." Doc. 70 ¶¶ 19, 20. Banks conducted an audit of CCSO employees in 2015 and 2016 and noticed that Gallagher had taken a large number of unauthorized absences from work.

In February 2015,[3] the Office of Professional Review ("OPR") charged Gallagher with failure to report an incident of excessive force. Miriam Rentas filed the charge with OPR, and Daniel Cramer investigated. Gallagher does not know whether either person was aware that he took FMLA leave. Gallagher received a twenty-nine day suspension and followed the grievance process for that suspension. After the grievance process, Gallagher received a letter from Chief Deputy Connolly stating that he would be suspended without pay until further notice. Gallagher does not know whether Connolly was aware that Gallagher took FMLA leave. The Board decision terminating Gallagher does not mention this charge.

In October 2015, a detainee escaped from the tenth floor of the court services building while Gallagher was assigned to that floor. Lieutenant Andrew Wodarczyk submitted a charge to OPR, and OPR charged Gallagher with allowing a detainee to escape. Wodarczyk knew that Gallagher had taken FMLA leave because the two were friends, but Wodarczyk did not know any details about Gallagher's leave. CCSO never disciplined Gallagher for this incident. CCSO did not dock his pay, and Gallagher never received a finding.

In December 2015, OPR charged Gallagher with violating CCSO's rules of secondary employment. Based on instructions from his supervisor, Banks, Wodarczyk filed a complaint with OPR alleging that Gallagher had unauthorized secondary employment. Banks testified he did not personally notify Gallagher regarding the denial of his secondary employment request for

---

[3] It is not apparent to the Court how Gallagher was involved in an incident that occurred a month before March 2015, when he returned. Neither party addresses this inconsistency, but it appears in the Joint Statement of Undisputed Facts, so the Court takes this statement as true.

3

2016 but may have notified the watch commander. Gallagher never received a disposition on the charge of unauthorized secondary employment. The Board decision terminating Gallagher does not mention this charge.

On February 4, 2016, Gallagher received a Summary Punishment Action Request ("SPAR") for violating Cook County LEXIPOL Policy 1023.2 Wearing and Condition of Uniform Equipment. Lieutenant James Dillon completed the SPAR, based on Banks' instructions. The SPAR indicates that Gallagher's uniform pants were ripped and torn. Gallagher responded that he would retrieve new pants from his locker and go home for the rest of his uniform. Gallagher failed to return to work that day but returned to work the following day with new pants. Banks told Dillon to place Gallagher on a three-day unpaid suspension for the uniform violation. Dillon did not recall another incident where a uniform violation resulted in a recommendation for suspension. Gallagher did not sign the SPAR. Dillon did not recall whether Gallagher took FMLA leave and Gallagher never discussed taking FMLA leave with Dillon. Banks did not know whether Gallagher ever served a suspension due to the SPAR. Gallagher informed his union representative about the SPAR but did not know whether the union did anything in response. The Board decision terminating Gallagher does not mention this charge.

On November 17, 2014, John Harrington, Director of Attendance Review for CCSO, filed a Complaint Register ("complaint") with the OPR alleging that Gallagher had at least six unauthorized absences between August 31, 2012 and December 8, 2014. Sheriff's Order 11.4.1 provides that all CCSO employees must not incur unauthorized absences. OPR investigated the charge and interviewed Gallagher. Based on its investigation, on June 1, 2015, OPR recommended that Gallagher "be separated from employment." Doc. 70-10 at CCSO_000189.

4

The investigators were Georgia Garcia, Cameron Pon, and Jerome Graber. Dart sought Gallagher's termination in a complaint dated October 16, 2015 and requested that the Board hold a hearing regarding Gallagher's unauthorized absences. Doc. 70-12 at MB 242–45. On September 20, 2016, the Board conducted an evidentiary hearing on the complaint. Gallagher had legal representation at the hearing and testified. Three witnesses testified for Dart: Helen Cohn, Harrington, and Garcia. Harrington testified at the hearing that "by contract, a Complaint Register is filed for termination of Court Services Deputy Sheriffs on the sixth occurrence of unauthorized absence." Doc. 70 ¶ 64. Employees at CCSO had already taken the following actions with respect to Gallagher's unauthorized absences: (1) a counseling session for his first unauthorized absence on August 31, 2012, and (2) disciplinary action forms for his second through fifth unauthorized absences. On October 29-30, 2014, Gallagher took his sixth unauthorized absence, prompting Harrington to— "consistent with CCSO policy"—submit a complaint. Doc. 70 ¶ 70. Gallagher had never discussed his FMLA leave with Harrington until investigation of the complaint, and he does not know whether Harrington was aware that he used FMLA leave. Gallagher did not depose Harrington. The Board decided to terminate Gallagher, effective October 16, 2015. Gallagher did not depose any of the witnesses who testified at the hearing. During his deposition, Banks testified that he neither made the decision to terminate Gallagher nor was consulted about the allegations that led to Gallagher's termination. Doc. 70 ¶¶ 21–22.

**LEGAL STANDARD**

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and

5

assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Although a bare contention that an issue of fact exists does not create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## ANALYSIS

Dart moves for summary judgment on Gallagher's FMLA retaliation claim. The FMLA provides that it is unlawful for an employer "to discharge or in any other manner discriminate against" an employee for opposing any practice that the FMLA makes unlawful. 29 U.S.C. § 2615(a)(2); *see also Goelzer v. Sheboygan Cty., Wis.*, 604 F.3d 987, 995 (7th Cir. 2010). To establish a claim for retaliation, Gallagher must show that: (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there is a causal connection between the two. *Riley v. City of Kokomo*, 909 F.3d 182, 188 (7th Cir. 2018); *King v. Ford Motor Co.*, 872 F.3d 833, 841 (7th Cir. 2017). The Court evaluates FMLA retaliation claims the same way as retaliation claims under other employment statutes. *James v. Hyatt Regency Chicago*, 707 F.3d 775, 781 (7th Cir. 2013). Although courts previously separated evidence into the direct and indirect methods of proof, the Seventh Circuit has instructed that courts must stop this practice

because "all evidence belongs in a single pile and must be evaluated as a whole." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 766 (7th Cir. 2012). Therefore, the Court will "consider the evidence as a whole and ask whether a reasonable jury could draw an inference of retaliation." *King*, 872 F.3d at 842 (citing *Ortiz*, 834 F.3d at 764–66)

Dart does not dispute, and this Court agrees, that Gallagher engaged in a protected activity when he took FMLA leave. *See id.* at 841 (explaining that the plaintiff engaged in a protected activity when she took leave); *Freelain v. Vill. of Oak Park*, 888 F.3d 895, 901 (7th Cir. 2018) (noting that the plaintiff engaged in a protected activity by using FMLA leave). Therefore, the Court will evaluate whether Gallagher suffered an adverse action and if his leave caused the adverse action.

## I. Adverse Employment Action

The parties agree that Gallagher's termination and suspension for failure to report excessive force qualify as adverse employment actions.[4] However, Dart argues that Gallagher's remaining allegations—charges for allowing a detainee to escape, unauthorized secondary employment, and a uniform violation—do not qualify as adverse actions because Gallagher never received punishment for these incidents. Gallagher broadly responds that his "supervisors suggested severe and unfounded punishments that other employees did not face." Doc. 76 at 6. For an action to qualify as materially adverse, "a plaintiff must show that the action would have 'dissuaded a reasonable worker from' engaging in protective activity." *Freelain*, 888 F.3d at

---

[4] In his reply brief, Dart changes his argument, asserting that there was no consequence for Gallagher's failure to report excessive force, Doc. 80 at 2–3, despite initially stating that Gallagher was suspended, *see* Doc. 69 at 3, 8. Further, Gallagher's response brief asserts that "[n]o decision has ever been rendered for this incident." Doc. 76 at 4. The Joint Statement of Undisputed Facts relating to Gallagher's failure to report excessive force states that "Gallagher received a letter from Chief Deputy Connolly that he would be suspended without pay until further notice." Doc. 70 ¶ 29. The Court questions whether this qualifies as an adverse action because it is not apparent whether CCSO actually suspended Gallagher, but there is insufficient information in the record to make such a determination and the parties initially agreed that it was an adverse action, so the Court will accept it as such for purposes of resolving this motion.

901–02 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). The Court applies an objective standard, rather than focusing on a plaintiff's subjective feelings. *See id.* A materially adverse action "must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *James*, 707 F.3d at 782 (quoting *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1120 (7th Cir. 2009)). With respect to a transfer or reassignment, "an action is not materially adverse unless it represents a significant alteration to the employee's duties, which is often reflected by a corresponding change in work hours, compensation, or career prospects." *Stephens v. Erickson*, 569 F.3d 779, 791 (7th Cir. 2009).

First, Gallagher contends that he suffered an adverse action when OPR charged him with allowing a detainee to escape. But Gallagher concedes that CCSO never disciplined him for the incident, he did not lose any pay, and he never received a finding regarding the incident. *See Jones v. Res-Care, Inc.*, 613 F.3d 665, 671 (7th Cir. 2010) ("[T]his Court has previously held that 'unfair reprimands or negative performance evaluations, unaccompanied by some tangible job consequence, do not constitute adverse employment actions.'" (quoting *Grube v. Lau Indus., Inc.*, 257 F.3d 723, 729 (7th Cir. 2001))). In his response, Gallagher claims that CCSO relocated him to a different floor and someone recommended his termination. But Gallagher does not provide support for the alleged recommendation for termination and fails to explain how the relocation was "more disruptive than a mere inconvenience or alteration of job responsibilities." *Nagle*, 554 F.3d at 1120. Therefore, Gallagher has not created a question of fact as to whether he suffered an adverse action after he allowed a detainee to escape.

Second, Gallagher argues that he suffered an adverse action when CCSO denied him secondary employment. Although OPR charged Gallagher with violating CCSO's rules of secondary employment, he never received a disposition on this charge and therefore did not

8

suffer any adverse action. *Chaib v. Indiana*, 744 F.3d 974, 987 (7th Cir. 2014) (affirming summary judgment for the defendant where the plaintiff "made no effort" to show how a reprimand affected her employment nor explained how a reasonable worker would be dissuaded by the reprimand), *overruled on other grounds by Ortiz*, 834 F.3d at 764; *Victor v. Vill. of Hoffman Estates*, No. 13 C 00921, 2016 WL 232420, at *9 (N.D. Ill. Jan. 20, 2016) ("A warning of potential disciplinary action for violating Village policy does not rise to the level of a written reprimand, but even such reprimands—another action about which [the plaintiff] complains—are not considered materially adverse."). Gallagher further claims he was the only employee whom OPR denied secondary employment and was therefore treated less favorably than similarly situated employees. But aside from this broad assertion, Gallagher does not proffer any evidence that he was treated less favorably than similarly situated employees. *See Woods v. City of Berwyn*, 803 F.3d 865, 872 (7th Cir. 2015) (affirming summary judgment where the plaintiff failed to propose the name of any employee who engaged in conduct comparable to the plaintiff, went before the board, and remained employed based on the evidence); *Herrera v. Ill. Bell Tel. Co.*, No. 11 C 5762, 2013 WL 654920, at *15 (N.D. Ill. Feb. 21, 2013) (granting summary judgment for defendant where the plaintiff "failed to identify enough common features between herself and other [employees] to allow for a meaningful comparison"); *cf. Freelain*, 888 F.3d at 905 (concluding that a delay in approving secondary employment was not an adverse action because there was no evidence that it was materially adverse or that the plaintiff was singled out because he exercised his rights under the FMLA). Therefore, Gallagher has not created a question of fact as to whether he suffered an adverse action when CCSO denied him secondary employment.

Third, Gallagher alleges that he suffered an adverse action following a uniform violation. The evidence indicates that Banks instructed Dillon to suspend Gallagher for three days for the uniform violation. However, there is no evidence that CCSO actually suspended Gallagher. Indeed, the facts repeat that a suspension was only "recommended." Doc. 70 ¶¶ 48, 50. A recommended suspension would not dissuade a reasonable worker from taking FMLA leave and does not qualify as an adverse action. *See Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1120 (7th Cir. 2009) ("We have explicitly held that 'a suspension without pay that is never served does not constitute an adverse employment action.'" (quoting *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 647 (7th Cir. 2005))).

Overall, Gallagher seeks to connect the complaints filed against him to his ultimate termination. Taken independently, they do not constitute adverse actions. Gallagher refers to them as disciplinary actions, but there is no evidence that Gallagher suffered tangible consequences as a result of these incidents. It is not apparent that there was even a mere inconvenience or alteration of job responsibilities. *See James*, 707 F.3d at 782. Therefore, these complaints do not qualify as adverse actions. Additionally, Gallagher's response brief includes a single paragraph that broadly alleges a number of additional adverse actions, including that his supervisors suggested severe punishments, he never received a promotion, CCSO moved him from desired positions, and CCSO employees disparaged him. "Assertions at such a high level of generality do not suffice at this stage, though—a party 'must present specific facts showing a genuine issue to survive summary judgment.'" *King*, 872 F.3d at 841 (quoting *Petts v. Rockledge Furniture LLC*, 534 F.3d 715, 722–23 (7th Cir. 2008)); *cf. Bordelon v. Bd. of Educ. of the City of Chicago*, 811 F.3d 984, 991 (7th Cir. 2016) (explaining that the district court properly excluded evidence in considering a motion for summary judgment that "only offered sweeping

generalizations"). Gallagher offers few specific examples of those incidents and does not connect them to his claim. For instance, Gallagher does not explain from which desirable positions CCSO removed him or which promotions he did not receive. Therefore, the Court cannot find any of these allegations sufficient to suggest an adverse employment action at the summary judgment stage.

But given the parties' agreement, the Court finds that Gallagher suffered adverse actions when CCSO terminated him and suspended him due to his failure to report excessive force.

## II. Causation

### A. Termination

Dart argues no causal connection exists between Gallagher's FMLA leave and termination because there is no evidence that the parties who initiated a complaint about Gallagher and decided to terminate him knew he took FMLA leave. Dart asserts that Gallagher must satisfy but for causation; however, the Seventh Circuit has not addressed whether but for causation applies in FMLA retaliation claims. *See Malin v. Hospira, Inc.*, 762 F.3d 552, 562 n.3 (7th Cir. 2014) ("Our circuit has not addressed, and the parties have not briefed, whether but-for causation should apply to FMLA retaliation claims in light of *Gross* and *Nassar*. We need not resolve the question here."). Therefore, the Court continues to apply the motivating factor test to Gallagher's retaliation claim. *See Haworth v. Round Lake Area Schs., Cmty. Unit Sch. Dist. 116*, No. 17 C 7038, 2019 WL 3080928, at *5 n.2 (N.D. Ill. July 15, 2019) (collecting cases applying the motivating factor test after *Nassar*); *Hall v. Bd. of Educ. of City of Chicago*, No. 14-cv-3290, 2018 WL 587151, at *7 (N.D. Ill. Jan. 29, 2018) ("Because the Seventh Circuit has not held that an FMLA plaintiff must prove but-for causation, this Court continues to follow a line of FMLA cases requiring only substantial-factor causation."). To demonstrate a causal connection,

11

Gallagher must "show[] that the protected conduct was a substantial or motivating factor in the employer's decision." *Goelzer*, 604 F.3d at 995 (citing *Lewis v. Sch. Dist. #70*, 523 F.3d 730, 741 (7th Cir. 2008)); *see also Jordan v. Marsh USA, Inc.*, No. 18 C 4327, 2019 WL 5682834, at *6 (N.D. Ill. Nov. 1, 2019) (explaining that to survive summary judgment on a FMLA retaliation claim, the plaintiff must "point to evidence supporting a reasonable inference that [he] was fired because [he] took protected leave" (citing *Tibbs v. Admin. Office of the Ill. Courts*, 860 F.3d 502, 505 (7th Cir. 2017))).

Here, Sheriff's Order 11.4.1.1 provides that all CCSO employees cannot incur unauthorized absences. On November 17, 2014, Harrington filed a complaint with the OPR, "alleging that Gallagher had at least six occurrences of unauthorized absences between August 31, 2012 and December 8, 2014." Doc. 70 ¶ 60. CCSO previously counseled and reprimanded Gallagher for unauthorized absences. OPR subsequently investigated the complaint, and Gallagher informed the investigators that he was unaware that he did not have enough accrued benefit time to cover the unauthorized absences. Gallagher stated that he was unable to report to work on the unauthorized dates due to a medical condition. Gallagher filed grievances for these incidents, which CCSO denied. OPR recommended Gallagher's termination. The Board subsequently conducted an evidentiary hearing and ultimately concluded that Gallagher violated the Sheriff's Rules and Regulations and granted Dart's request to terminate Gallagher. The complaint, as well as the investigation and hearing notes, reveal that CCSO terminated Gallagher because he violated the regulation by taking unauthorized absences. There is no evidence that Harrington or the OPR investigators knew that Gallagher took FMLA leave. Additionally, although the Board's decision acknowledges Gallagher's use of qualified FMLA leave, the decision is based on his unauthorized absences. Gallagher cannot show that the Board

terminated him for taking FMLA leave because the evidence indicates Gallagher's unauthorized absences led to his termination. *See Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 221 (7th Cir. 2015) ("Summary judgment for the employer is proper where the employer provides undisputed evidence that the adverse employment action is based upon the employee's poor job performance."); *Hall*, 2018 WL 587151, at *8 (granting summary judgment where the "[d]efendant's unrebutted evidence shows that it would have fired Plaintiff for unsatisfactory performance regardless of any retaliatory intent"). Additionally, there is no evidence that the Board acted with discriminatory animus. The Board conducted an evidentiary hearing with attorneys, opening and closing statements, and witnesses, including Gallagher. *See Woods*, 803 F.3d at 870 ("[T]he Board's formal and adversarial procedures and the evidence that the Board relied on to support its decision to terminate [the plaintiff] broke the chain of causation."). The record does not contain any evidence that the Board fired Gallagher because he took FMLA leave. Instead, CCSO had a clear regulation about unauthorized absences, and the facts indicate the Board terminated Gallagher pursuant to that regulation. *See Stelter v. Wis. Physicians Serv. Ins. Corp.*, No. 18-3689, 2020 WL 829862, at *2 (7th Cir. Feb. 20, 2020) (concluding that the plaintiff could not show that her disability was the but for cause of her termination in part because her termination was due to her absenteeism); *Lutes v. United Trailers, Inc.*, No. 19-1579, 2020 WL 746232, at *7 (7th Cir. Feb. 13, 2020) (affirming summary judgment for the defendant in part because the plaintiff did not dispute the defendant's proffered reason for firing him—that he did not show up to work and failed to report absences).

Moreover, to demonstrate a causal connection, "a plaintiff must provide direct or circumstantial evidence that the *decisionmaker* has acted for a prohibited reason. A decisionmaker is the person responsible for the contested decision." *Long v. Teachers Ret. Sys.*

*of Ill.*, 585 F.3d 344, 351 (7th Cir. 2009) (emphasis in original) (quoting *Rogers v. City of Chicago*, 320 F.3d 748, 754 (7th Cir. 2003), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965, 967 n.1 (7th Cir. 2013)). "Statements by subordinates normally are not probative of an intent to retaliate by the decisionmaker." *Long*, 585 F.3d at 351 (quoting *Willis v. Marion Cty. Auditor's Office*, 118 F.3d 542, 546 (7th Cir. 1997)); *see Davidson v. Evergreen Park Cmty. High Sch. Dist. 231*, No. 15 C 0039, 2017 WL 2243096, at *8 (N.D. Ill. May 23, 2017) (explaining that the plaintiff did not provide evidence that the individuals who made statements about his leave were involved in the decision to terminate his employment); *see also King*, 872 F.3d at 843 (affirming grant of summary judgment for the defendant on a FMLA retaliation claim in part because the plaintiff offered no comments by decisionmakers in reference to the plaintiff's protected activities that could suggest retaliatory animus); *Ammons v. Cook Cty. of Ill.*, No. 11 CV 5010, 2014 WL 4116956, at *10 (N.D. Ill. Aug. 20, 2014) (explaining that the conduct of the Chief of Court Services at the Sheriff's Department was irrelevant to the retaliation claim where there was no evidence that she participated in the decision of whether to promote the plaintiff). Here, Harrington and Dart filed complaints, OPR investigated, and the Board conducted a hearing regarding Gallagher's unauthorized absences. Gallagher "does not know" whether Harrington knew that he used FMLA leave and did not discuss his FMLA leave with Harrington until after Harrington filed the complaint. Doc. 70 ¶ 71. Gallagher did not depose Harrington in this case and so the record does not include any evidence to suggest Harrington acted based on a prohibited reason.

Instead of pointing to actions taken by these individuals, Gallagher seeks to connect his leave and termination by focusing on Banks' remarks, including "thanks for finally coming to work." Doc. 70 ¶ 15. He argues there is a causal connection because "[the] complaint was not

14

brought until the middle of 2015, when Banks was Mr. Gallagher's direct supervisor." Doc. 76 at 11. To support this argument, Gallagher contends that the unauthorized absences occurred between 2012 and 2014, and Banks continuously disparaged Gallagher for his weight and had access to Gallagher's timecard. However, Harrington filed the complaint in 2014 before Banks became Gallagher's supervisor. Doc. 70 ¶ 60, Doc. 70-7 at MB 183. The related OPR investigation occurred in 2015, and the Board conducted a hearing in 2016. Gallagher does not connect Banks to the complaint, investigation, or hearing. Instead, Gallagher broadly alleges that "[a]ll of the adverse employment actions taken against Mr. Gallagher and the disparagement that he faced from supervisors led to his termination." Doc. 76 at 12. But Gallagher fails to directly link Banks to the termination decision and a jury could not conclude that Banks was the decisionmaker responsible for Gallagher's termination.

The only circumstance in which Banks' conduct might be relevant to Gallagher's claim is if Banks exerted significant influence over the decision to terminate Gallagher. *Long*, 585 F.3d at 351 ("[C]ourts have imputed the retaliatory intent of a subordinate to an employer in situations where the subordinate exerts significant influence over the employment decision."); *see also Jajeh v. Cty. of Cook*, 678 F.3d 560, 572 (7th Cir. 2012) (explaining that under the "cat's paw" theory of liability, an employer may be liable "if a nondecision-maker performs an act motivated by [retaliatory] animus that is intended to cause an adverse employment action, and that act is a proximate cause of the ultimate employment action" (citation omitted)). But Gallagher does not argue for application of the cat's paw doctrine here, and the evidence fails to demonstrate its applicability. Banks was not Gallagher's supervisor at the time of the complaint. Banks testified that he did not know that Gallagher took FMLA leave and he did not make the decision to terminate Gallagher. The Board did not consult Banks regarding Gallagher's termination, and

Banks did not testify at the hearing. Doc. 70-6 at 52:2–54:7; Doc. 70-12. Overall, there is no evidence that Banks was involved in the decision to terminate Gallagher, and therefore, there is no causal connection. *See Woods*, 803 F.3d at 871 (explaining that the hearing broke the chain of causation because the Board did not rely on facts from the presumably biased investigator); *Taleyarkhan v. Trs. of Purdue Univ.*, 607 F. App'x 548, 551 (7th Cir. 2015) (concluding summary judgment for the defendant was appropriate where the investigation committee independently substantiated a non-decisionmaker's claims, so his motive was irrelevant); *Long*, 585 F.3d at 351 (affirming summary judgment for the employer where the individual who terminated the plaintiff did not know that she took FMLA leave and the individual who arguably held retaliatory animus towards the plaintiff recommended that the employer fire the plaintiff).

Finally, Gallagher loosely argues that he "was treated less favorably than everyone at CCSO, but especially similarly situated employees who were not protected by FMLA." Doc. 76 at 9. Gallagher contends that Dillon could not recall another person who received a three-day unpaid suspension for a uniform violation and the others involved in the failure to report excessive force received a lesser recommended punishment. "To be a sufficiently similar comparator, the individual ordinarily should have dealt with the same supervisor, been subject to the same standards, and engaged in similar conduct of comparable seriousness." *Woods*, 803 F.3d at 872. Gallagher does not point to anything to show that these alleged comparators were similarly situated or that they were outside his protected class. *See Guzman*, 884 F.3d at 640 (explaining that the plaintiff did not establish that her comparators were similarly situated because she did not identify when other employees were late, their supervisor, or their disciplinary history); *King*, 872 F.3d at 842 (rejecting the plaintiff's similarly situated argument

where the plaintiff did not say how or attempt to show that they were similarly situated or that they were outside her protected class).

Therefore, Gallagher has failed to create a dispute as to whether his FMLA leave was a substantial or motivating factor in the Board's decision to terminate him; thus, no causal connection exists.

### B. Suspension

Dart also argues that no causal connection exists between Gallagher's FMLA leave and his suspension for failing to report excessive force because none of the individuals involved in the charge or decision to suspend him were aware of his FMLA leave. As discussed, Gallagher must show that a decisionmaker acted for a prohibited reason.

Here, Connolly sent a letter stating CCSO would suspend Gallagher without pay until further notice. Gallagher does not point to anything to show that Connolly was aware of Gallagher's FMLA leave. Gallagher does not even mention Connolly in his response brief, and it does not appear that he deposed Connolly. *See Roger Whitmore's Auto. Servs., Inc. v. Lake Cty.*, 424 F.3d 659, 669 (7th Cir. 2005) (to defeat summary judgment, a plaintiff must present something beyond "bare speculation or a scintilla of evidence"); *see also Woods*, 803 F.3d at 869 ("[W]e need not draw inferences that are supported by 'only speculation and conjecture.'" (quoting *Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 599 (7th Cir. 2014))). Even if the Court considers the individuals who filed and investigated the charge in this analysis, there is no evidence that either Rentas or Cramer knew Gallagher took FMLA leave. Thus, again, Gallagher has failed to create a dispute as to whether his FMLA leave was a substantial or motivating factor in the decision to suspend him. Therefore, the Court grants summary judgment for Dart on the FMLA claim.

## CONCLUSION

For the foregoing reasons, the Court grants Dart's partial motion for summary judgment [68]. The Court enters judgment for Dart on Gallagher's FMLA claim (Count III).

Dated: March 11, 2020

_____
SARA L. ELLIS
United States District Judge